IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LONGMEADOW ONE SOLAR LLC; LONGMEADOW TWO SOLAR LLC; BWAY PLYMOUTH SOLAR LLC; BWAY DY HS SOLAR LLC; SELF STORAGE SOLAR 22 LLC; SELF STORAGE SOLAR 24 LLC; SR SOLAR 1 LLC; SR SOLAR 2 LLC; SR SOLAR 3 LLC;<br><br>Plaintiffs,<br><br>v.<br><br>TRINA SOLAR CO., LTD. F/K/A CHANGZHOU TRINA SOLAR ENERGY CO., LTD; TRINA SOLAR (U.S.), INC.,<br><br>Defendants. | CIVIL ACTION NO.<br>No. 3:24-cv-03223-GC-JBD |

## SECOND AMENDED COMPLAINT

Plaintiffs, Longmeadow One Solar LLC ("Longmeadow 1"), Longmeadow Two Solar LLC ("Longmeadow 2"), Bway Plymouth Solar LLC ("Plymouth North"), Bway DY HS Solar LLC ("DY HS"), Self Storage Solar 22 LLC ("Self Storage 22"), Self Storage Solar 24 LLC ("Self Storage 24"); SR Solar 1 LLC ("SR 1"), SR Solar 2 LLC ("SR 2"), and SR Solar 3 LLC ("SR 3")(collectively, the "Plaintiffs" or the "Systems"), through its counsel, Eckert, Seamans, Cherin & Mellott, LLC, by way of Amended Complaint against Defendants, Trina Solar Energy Co., Ltd. f/k/a Changzhou Trina Solar Energy Co., Ltd. ("Trina Ltd.") and Trina Solar (U.S.), Inc. ("Trina U.S.") (collectively, the "Defendants" or "Trina"), complain and say, as follows:

### THE PARTIES

1. Longmeadow 1 is a limited liability company organized under the laws of the State of Delaware. Longmeadow 1 owns a solar array system, with the project being located at 40

Cragwood Road, South Plainfield, NJ, Middlesex County. SunRay Power LLC ("SunRay") is the manager of Longmeadow 1.

2. Longmeadow 2 is a limited liability company organized under the laws of the State of Delaware. Longmeadow 2 owns a solar array system, with the project being located at 188 Summer Street, Kingston, MA, Plymouth County. SunRay is the manager of Longmeadow 2.

3. Plymouth North is a limited liability company organized under the laws of the State of Delaware. Plymouth North owns a solar array system, with the project being located at 41 Obery Street, Plymouth, MA, Plymouth County. SunRay is the manager of Plymouth North.

4. DY HS is a limited liability company organized under the laws of the State of Delaware. DY HS owns a solar array system, with the project being located at 210 Station Avenue, South Yarmouth, MA, Barnstable County. SunRay is the manager of DY HS.

5. Self Storage 22 is a limited liability company organized under the laws of the State of Delaware. Self Storage 22 owns a solar array system, with the project being located at 1 Independence Way, Princeton, NJ, Mercer County. SunRay is the manager of Self Storage 22.

6. Self Storage 24 is a limited liability company organized under the laws of the State of Delaware. Self Storage 24 owns a solar array system, with the project being located at 175 New Canton Way, Robbinsville, NJ, Mercer County. SunRay is the manager of Self Storage 24.

7. SR 1 is a limited liability company organized under the laws of the State of Delaware. SR 1 owns a solar array system, with the project being located at 5 Independence Way, Princeton, NJ, Mercer County. SunRay is the manager of SR 1.

8. SR 2 is a limited liability company organized under the laws of the State of Delaware. SR 2 owns a solar array system, with the project being located at 3 Becker Farm Road, Roseland, NJ, Essex County. SunRay is the manager of SR 2.

9.  SR 3 is a limited liability company organized under the laws of the State of Delaware. SR 3 owns a solar array system, with the project being located at 305 Mount Hope Ave., Rockaway, NJ, Morris County. SunRay is the manager of SR 3.

10. Defendant Trina Ltd. is a foreign corporate entity organized and existing under the laws of China, having a principal place of business at No. 2 Tianhe Road, Trina PV Industrial Park, Xinbei District, Jiangsu Province 213031, China.[1]

11. Defendant, Trina U.S. is a corporate entity with an address of 7100 Stevenson Blvd., Fremont, California 94538.

## JURISDICTION AND VENUE

12. For purposes of diversity, Trina U.S. is a citizen of, and domiciled in, the States of Delaware and California; Trina Ltd. is a foreign corporation, without any lawful permanent residence or domicile in any of the United States; and Plaintiffs are each limited liability companies organized under the laws of the State of Delaware, with operations located in the Commonwealth of Massachusetts and the State of New Jersey. Plaintiffs do not have any members that are citizens of Delaware or California. Complete diversity exists between the parties.

13. This Court may maintain personal jurisdiction over Defendants because this action relates to Defendants' contacts within the State of New Jersey specific to the Systems in that this

---

[1] On February 14, 2024, Plaintiffs' First Amended Complaint was served on Trina Ltd.'s agents in California and New Jersey. Affidavits of service were filed while this matter was still pending in state court. (*See* Affidavits of Service at ECF 1-1, p. 62. And 150). Of note, in *1985 Rutgers Solar LLC v. TSL and TUS,* Civil Action No: 22-cv-6689-MAS-TJB (State Court Docket: MON-L-2122-22), another matter involving Defendants in this district, Trina Ltd.'s registered agent was served at the same address in California as done by Plaintiffs here. Additionally, in *Apex Nevada Solar, LLC v. Changzhou Trina Solar Energy Co., Ltd*, Case No. 1:22-cv-03241-AT, the plaintiff filed a motion to serve process on Trina Ltd. by alternative means. (ECF No. 18). Once counsel for Trina Ltd appeared, the Court required a joint letter be submitted with respect to service of process. (ECF No. 24). Trina Ltd's counsel ultimately accepted service of process following the court-required meet and confer. (ECF No. 25).

matter involves an alleged breach of warranty by the Defendants as to parts of the Systems. Moreover, on information and belief, Defendants have conducted business in this District, purposely availing themselves of the benefits of doing business in the State of New Jersey.

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

15. Venue properly lies in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTS

16. This case is brought by virtue of Defendants' failure to fulfill its warranty obligations. As articulated below, nearly a year after Plaintiffs received power declines to five of their solar array systems listed below, Defendants attempted to rewrite the warranty and fabricated a theory to replace the solar modules installed at the above sites in contradiction of the existing warranty.

17. SunRay is the manager of nine solar array systems, identified as projects Longmeadow 1, Longmeadow 2, Plymouth North, DY HS, Self Storage 22, Self Storage 24, SR 1, SR 2, and SR 3.

18. In April of 2014 and March of 2015, SunRay's contractor, G&S Solar Installers, LLC ("G&S"), purchased, on behalf of Plaintiffs, solar modules, with connectors and other parts, for the Systems from Trina U.S. at a total cost of $1,697,404 (the "Modules"). Plaintiffs also expended significant costs to contractors associated with the Modules. Copies of the relevant sales orders are collectively attached as **Exhibit "A."**

19. Along with this purchase, the Modules were covered by "an industry-leading 25-year lifetime warranty" which was issued by Trina Ltd. *See* https://www.trinasolar.com/au/our-company/quality. A copy of this warranty is attached as **Exhibit "B."**

20. Additionally, the Modules were covered by a ten-year warranty affirming that the Modules would be "free from defects in design, material, workmanship or manufacture." **Exhibit "B,"** Limited Warranty at p. 2.

21. Trina Ltd.'s warranty requires all warranty claims to be submitted to Trina U.S. **Exhibit "B,"** at p. 5.

22. The Modules were a significant part of the Systems as the primary components of a solar array system are the modules, inverters, and racking system.

23. On or about August 12, 2022, SunRay received an alert that production of power to one of the Systems (DY HS), rapidly declined.

24. Subsequent to that initial notification, in August of 2022, SunRay received further notifications that power had rapidly declined with respect to the Longmeadow 1, Longmeadow 2, Plymouth North, Self Storage 22 Systems, (the "Initial Systems").

25. Thereafter, shortly prior to the middle of November 2024, and while claims were already filed against Trina related to the Initial Systems, SunRay received notifications that power had rapidly declined with respect to the Self Storage 24, SR 1, SR 2, and SR 3 Systems (the "Remaining Systems").

26. After investigation, SunRay discovered that the cause of the rapid declines in power to the Initial Systems were defects in the Modules that were purchased from Defendants in April of 2014 and March of 2015. Specifically, there was both fine-type and linear-type cracking in the Modules caused by (i) Backsheet Cracking; and (ii) Busbar Corrosion. After a notification of a decline in power was received as to the Remaining Systems, Plaintiffs discovered that similar issues occurred as to the Trina modules installed on the Remaining Systems.

27.     The declines in power to the Systems caused by defects in the Modules resulted in physical damage to products other than the Modules, including corrosion, loss of function, and damage to the Systems' inverters, and racking system.[2]  Exemplar photographs showing the physical damage are attached as **Exhibit "C."**

28.     After discovering the cause of the rapid declines in power, and pursuant to Trina Ltd.'s warrant, SunRay submitted warranty claims to Trina U.S., which can be represented in the following chart:

| Claim | Project |
|---|---|
| R20220929024C | Longmeadow 2 |
| R20230208029C | DY HS |
| R20230208030C | Plymouth North |
| R20230224021C | Longmeadow 1 |
| R20230914031C | Self Storage 22 |
| R20241114033C | Self Storage 24 |
| R20241115016C | SR 1 |
| R20241114031C | SR 2 |
| R20241114030C | SR 3 |

29.     Pursuant to the terms of Trina Ltd.'s warranty, Trina U.S. acts on behalf of Trina Ltd. in handling the subject warranty claims. **Exhibit 'B,"** at p. 5. As such, both Trina Ltd. and Trina U.S. have adequate notice to defend this lawsuit and to identify the nature of Plaintiffs' claims.[3]

---

[2] The New Jersey Supreme Court has recognized, multiple times, that conduct resulting in physical harm to property is the type of behavior that subjects an actor to tort liability. *See e.g., Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 295 (2010); *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 318 (2002); *People Express Airlines v. Consol. Rail Corp*., 100 N.J. 246, 251 (1985).

[3] Plaintiffs, at times, collectively refer to Trina Ltd. and Trina U.S. as "Defendants." Such reference does not constitute impermissible group pleading. *Sheeran v. Blyth Shipholding S.A.,* Civ. A. No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (finding that while defendants were grouped together in the complaint, such grouping did not constitute an "impermissible group pleading" where the exact relationship between a corporate entity and an agent could not be ascertained by a plaintiff before discovery "but c[ould] easily be explored in discovery"); *see also D. W. by Renaud v. N.J. Div. of Child Prot. & Permanency*, No. 21-15789, 2023 WL 3626266, at *5 (D.N.J. May 24, 2023) (finding

Defendants subjected SunRay to an overly detailed investigation into its warranty claims. This detailed investigation caused an unreasonable delay and expense in the disposition of SunRay's claims.

30. For example, Defendants, as part of SunRay's warranty claims, would require that SunRay submit hundreds of unnecessary photographs time and again.

31. Trina Ltd.'s warranty provides that Trina Ltd. must elect one of three remedies with respect to claims:

> 5) Repair, Replacement or Refund Remedy
>
> a) As [Plaintiffs'] sole and exclusive remedy under this Limited Warranty (though [Plaintiffs] should note paragraph 5(d) below regarding the potential existence of other statutory rights), **[Trina Ltd.] will, in its sole discretion**, either, with regard to the applicable Product (or component thereof in the case of Mounting Product):
>
>   i) refund the historical purchase price of the relevant Product(s) annually reduced by a linear depreciation, taking into account an anticipated life time of 25 years; or
>   ii) repair the defective Product(s) at no charge (subject to the following paragraph); or
>   iii) replace the defective Product(s) or part thereof by a **new or remanufactured equivalent** at no charge (subject of the following paragraph). [**Exhibit "B,"** ¶ 5, at p. 3] [Emphasis added.]

32. After much delay and expense, Defendants finally responded to SunRay's warranty claims with a proposal on June 19, 2023 suggesting that the manufacturer could replace the defective parts by providing 410W DE15M(II) modules or DD09M5C modules. Trina did not indicate that it was making a formal election under its warranty obligations owed to Plaintiffs.

---

that while plaintiff did at times summarily refer to defendants the court could still rely on "group pleadings that inferentially implicate" individual defendants such that the individual defendants "are on notice of the allegations against them").

33. On July 11, 2023, SunRay advised Defendants that neither proposed replacement would be a "new or remanufactured equivalent" of what was originally installed. For the DD09M5C module, it was a completely different module which is incompatible with the existing system and, would essentially require a complete reconstruction of the system, a very expensive endeavor. SunRay has already received an estimated cost of $1,049,887 to complete the necessary replacement and racking work with respect to DY HS. Similar costs on a per watt bases would apply to all Systems. A copy of the engineering quotes and report is attached as **Exhibit "D."**

34. As to the DE15M(II) module, it would also require extensive work to the racking system because there are significant differences between this replacement module and the defective ones. SunRay has already received estimated costs of up to $250,000.00 to complete the necessary racking work with respect to DY HS and expects that these costs will only rise because updated electrical permitting may be necessary and additional components of the Systems may also need to be replaced to accommodate the DE15M9(II) module. Similar costs on a per watt basis would apply to all the Systems.

35. On July 31, 2023, through counsel, SunRay demanded that Defendants provide alternative options. A copy of this letter demand is attached as **Exhibit "E."**

36. Despite being previously advised that the replacements modules offered as part of Trina's prior "proposal" were not equivalent to what was originally installed, on August 14, 2023, Trina notified Plaintiffs that it was electing, under the warranty, to offer the replacement modules above, concluding that the modules offered satisfied the requirement under the warranty of a "new or remanufactured equivalent" of the damaged modules. **Exhibit "F,"** Aug. 14, 2023 Letter.

37. On August 23, 2023, SunRay, through counsel, disputed that Defendants satisfied their warranty obligations. SunRay reiterated that the alternative modules offered are not equivalent to the

modules originally installed, that the cash compensation was inadequate to address the problems created by the defective products, and awaiting actual replacements until sometime in "early 2024" was nothing more than a vague promise. A copy of this letter is attached as **Exhibit "G."**

38. SunRay requested Defendants specify a particular delivery date for the actual replacement modules. **Id. at p. 2.**

39. On August 30, 2023, Defendants, through counsel, again offered to replace the defective parts by providing SunRay with the DD09M5C module—a module that Defendants knew was incompatible and non-equivalent to what was installed on the Initial Systems. A copy of this letter is attached as **Exhibit "H."**

40. During September 2023 through December 2024, Plaintiffs and Defendants attempted to resolve their dispute.

41. At Defendants' request, SunRay obtained quotes from its engineer to replace the defective modules with the incompatible modules being offered by Defendant.

42. For the DY HS System, replacement of the defective Modules with the incompatible DD09M5C module offered by Defendants would cost $1,049,887. However, if Defendants were to provide SunRay with equivalent replacement modules for the DY HS System, the replacement cost would be $449,587. A copy of the engineering quotes and report are attached as **Exhibit "D."**

43. Additionally, Plaintiffs inquired about the repair option early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for Trina U.S.'s North America region, represented that the Modules installed could not be repaired.

44. Despite Mr. Rowland's representation, Plaintiffs have identified and utilized a vendor whose business model is to repair the Modules. Plaintiffs delayed in seeking a vendor to retain to address this issue for more than thirteen months based upon Mr. Rowland's representation about the

condition of the Modules. A copy of the Statement of Work and Invoices are attached as **Exhibit "I."**

45. Plaintiffs are currently exploring completing repairs themselves, at this point, as to the Initial Systems and Remaining Systems. If Plaintiffs are forced to complete the repairs themselves, then Defendants will be responsible for the full cost of all repair work done, plus the value difference between what they have received for the last two-plus years and what they would have received had fully functioning modules.[4]

46. At this juncture, it has been over two years since SunRay first experienced a decline in power related to issues with the Modules as to the Initial Systems. This delay is directly attributable to Defendants' slow response to the claims process, failure to provide alternatives that work for Plaintiffs for the existing systems, failure to timely elect a remedy pursuant to the terms of the warranty in Trina's discretion, and/or making an election under their warranty that they know would fail to present an equivalent to what is currently installed.

47. Without the Modules fully operating, the Systems do not fully function, do not fully generate power, and have caused a loss of substantial revenue for Plaintiffs.

48. Also, because of Defendants' failure to provide alternative solutions, the remedies afforded under Trina's warranty have failed their essential purpose because Plaintiffs are no longer able to fully generate power from the Systems and it has been over a two years and eight months since Plaintiffs first witnessed the decline in power to the first set of Systems. *See N.J.S.A.* § 12A:2-719.

---

[4] *See Kearney & Trecker Corp. v. Master Engraving Co.,* 107 N.J. 584, 595 (1987) (stating that "[t]he commonly-applied formula to compute a buyer's damages for breach of any warranty, including the repair or replacement warranty, is the difference between the value of the goods accepted and the value they would have had if they had been as warranted"); *see also,* N.J.S.A. § 12A:2-714(3) (indicating that a buyer can recover incidental damages).

49. Despite the passage of time and Plaintiffs' compliance with Defendants' lengthy and expensive claims process, Plaintiffs do not have fully functioning modules for the Systems and the Systems continue to operate far below the expected production.

50. Plaintiffs are not the only customer of Trina who has experienced cracking patterns on backsheets manufactured by Trina. On August 4, 2022, a company identified as 1985 Rutgers Solar, LLC filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County, alleging similar issues with cracking patterns as SunRay here. **See Exhibit "J,"** 1985 Rutgers' Complaint at ¶ 27.

51. In their prior complaint (filed before SunRay experienced a loss), 1985 Rutgers alleges that it observed "the form of cracking patterns that had developed on the backsheet material, burn marks visible from the front and back, and corroded metallic connections visible from the front of the modules." *Id.* at ¶ 27.

52. Similar to SunRay, 1985 Rutgers also experienced substantial delays in the processing of their warranty claims due to laborious requests from Defendants. (*Id.* at ¶¶ 30 – 44.

53. On January 13, 2023, Defendants filed an answer to the complaint filed by 1985 Rutgers and this separate action remains pending. **See Exhibit "K,"** Answer.

54. Like 1985 Rutgers, the cash compensation offered to Plaintiffs would have resulted in roughly twenty percent of its warranty claims being honored.

55. Besides being low, the cash compensation offered would still defeat the purpose of the warranty because, despite substantial effort, replacements modules could not be located from another vendor as there was, and remains, a shortage of used modules of the kind installed on the systems above in the marketplace for purchase. Thus, in relation to cash compensation, if this option were

actually elected by Trina during the claims process, Plaintiffs would have received meaningless cash because they would not be able to acquire equivalent replacement modules on the open market.

56. As of today, Plaintiffs have not been presented a workable solution for its warranty claims and all the the systems identified above are significantly underproducing.

57. As a result, Plaintiffs and SunRay have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

## COUNT ONE

## BREACH OF WARRANTY VS. DEFENDANTS

58. Plaintiffs incorporate the allegations outlined above, as if stated here at length.

59. Trina entered into an agreement with Plaintiffs to provide functional solar panel systems to Plaintiffs, and warranty protection in the event of a defect with those solar panel systems.

60. By its express terms, Trina's warranty provides that they "will" make an election of three potential responses in relation to a warranty claim submitted by Plaintiffs.

61. The options available to Trina include to "replace the defective Product(s) or part thereof by a **new or remanufactured equivalent** at no charge." (**Exhibit "B,"** ¶ 5, at p. 3)(Emphasis added).

62. The solar panel systems provided by Trina U.S. did not work as intended and Plaintiffs have experienced a loss in power production to all the systems identified above.

63. Defendants failed to perform under the warranty issued and have offered replacement modules to Plaintiffs that Trina knows are not equivalents of what are currently installed on the systems identified above.

64. To the extent that Trina would argue that its communications to Plaintiffs do not constitute an election under their warranty, then Trina would have separately breached their warranty obligations due to a failure to exercise the discretion granted to them under their warranty, especially given that two years and eight months having elapsed since Plaintiffs first notified a power decline in any of the systems noted above.

65. Trina's actions constitute a breach under their warranty because they either have: (1) expressly breached the terms of their warranty in failing to provide a "new or remanufactured equivalent" under section 5(a)(iii) of their warranty; or (2) failed to make any election under their warranty at all and, instead, making a serious of untenable "proposals" to Plaintiffs outlined above.

66. As a result and direct proximate cause of Trina's conduct, Plaintiffs have been damaged and sustained a total loss of the Modules with a value of up to $1,697,404, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs; (b) a finding that Plaintiffs have been damaged in the amount of $1,618,802.40 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

## COUNT TWO

## NEGLIGENCE VS. DEFENDANTS

67. Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

68. Defendants had a duty to provide functional solar panel systems to Plaintiffs.

69. The solar panel systems provided by Defendants did not work as intended due to a manufacturing or other defect that resulted in, among other problems, backsheet cracking.

70. Defendants already have one case pending in New Jersey relating to these same defects. (**Exhibit "J,"** Complaint); (**Exhibit "K,"** Answer).

71. That case was filed prior to Plaintiffs' power losses. Therefore, Defendants were aware of these problems prior to Plaintiffs' power losses.

72. Because of Defendants' breach, Plaintiffs have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs; (b) a finding that Plaintiffs have been damaged in the amount of $1,697,404 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

## COUNT THREE

## BREACH OF GOOD FAITH AND FAIR DEALING VS. DEFENDANTS

73. Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

74. Trina entered into an agreement with Plaintiffs to provide functional solar panel systems to Plaintiffs, and warranty protection in the event of a defect with those solar panel systems.

75. As a result of Defendants' actions and inactions listed above and the types of issues identified in the complaint filed by 1985 Rutgers, Defendants breached the covenant of good faith and fair dealing by subjecting Plaintiffs to an unnecessarily long claims process which end result was potential resolutions that were not viable for the Systems. This detailed investigation caused an unreasonable delay and expense in the disposition of Plaintiffs' claims.

76. Further, Defendants breached the covenant of good faith and fair dealing by attempting to rewrite the warranty's terms and wrongly exercising discretion granting to them under the warranty by electing to replace the modules currently installed on the systems identified above with modules that were not equivalents of what was currently installed on those systems.

77. At the time that Trina made this election on August 14, 2023, Trina knew that the modules that they were offering were not an equivalent. Plaintiffs' evidence related to the fact that the modules being offered were not equivalents included a report from a solar engineering firm explaining the differences between the modules being offered as replacements and those already installed on the systems. (*Exhibit "D,"* Engineering Report).

78. By electing to provide Plaintiffs modules that Trina knew were not equivalents to those currently installed, Trina acted in a manner to destroy or injury Plaintiffs' expected fruits of Trina's warranty because Plaintiffs would not receive what was intended under that warranty (equivalent

modules) and Trina knew, at the time that they made their election to provide replacement modules, that those being offered were not equivalent to what was installed.

79. Trina's conduct was done with malice or bad faith because Trina was knowingly offering incompatible and non-equivalent modules to resolve Plaintiffs' longstanding warranty claims, some of which the power loss was initially experienced back in August of 2022, and conducting itself as if Plaintiffs had to accept non-equivalent modules.

80. Alternatively, in the event that Trina argues that it did not make an election of remedies under their warranty, Trina's failure to make an election is, in and of itself, a breach of the terms of their warranty and the covenant of good faith and fair dealing. Under that warranty, Trina is provided the discretion to make an election of the remedy to be afforded to Plaintiffs. Trina must exercise that discretion in good faith and offering non-equivalent modules is, *per se* not good faith conduct.

81. If Trina does not view its August 14, 2023 letter as an election, then Trina has never actually made an election under its warranty. Trina's failure to make an election despite the passage of two years and eight months after Plaintiffs first experienced a power loss on one of their systems would, in and of itself, be evidence of bad faith and malice because Trina's discretion to elect a remedy under their warranty is not limitless. *See Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 250 (2001)(stating that "the discretion afforded to Hess is not unbridled discretion" and "Hess's performance under the contract is tempered by the implied covenant of good faith and fair dealing and the reasonable expectations of the parties"). A failure to act is, therefore, also a violation of the covenant of good faith and fair dealing.

82. By yet further alternative pleading, should Trina argue that its August 14, 2023 was not an election and just offering alternative proposals to Plaintiffs, such a position by Trina would also violate the covenant of good faith and fair dealing and the terms of Trina's warranty. The word

"or" is noted after the first and second options available to Trina under their warranty to address Plaintiffs' claims. Because of the presence of the word "or" at these locations, Trina is required to view the listed options as a menu from which it can select only one. Trina cannot properly exercise the discretion granted to it under their warranty by submitting an endless number of alternative "proposals" to Plaintiffs, none of which resolve Plaintiffs' claims. At some point, Trina must make an election. Trina's failure to make such an election would be a further breach of the covenant of good faith and fair dealing.

83. As a result and direct proximate cause of Trina's conduct, Plaintiffs have been damaged and sustained a total loss of the Modules with a value of up to $1,697,404, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs and SunRay; (b) a finding that Plaintiffs have been damaged in the amount of $1,697,404 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

## COUNT FOUR

## NEGLIGENT MISREPRESENTATION VS. TRINA U.S.

84. Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

85. Plaintiffs inquired about the repair option early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for Trina U.S.'s North America region, represented that repairing the Modules was not feasible.

86. Mr. Rowland is an employee, agent and/or representative of Trina U.S., as evidenced by the signature block on his e-mails. It is within the scope of Mr. Rowland's responsibilities to evaluate warranty claims and communicate information about those claims to persons in a position like Plaintiffs.

87. The information provided by Mr. Rowland was false because there exists a vendor who has provided invoices and estimates for repairing the systems. A copy of the Statement of Work and Invoices from this vendor are attached as **Exhibit "I."**

88. Plaintiffs reasonably relied on Trina U.S.'s representation that the Modules were not repairable as Trina U.S. is the warranty servicer for Trina Ltd. and had Plaintiffs known that a repair of the Systems was even plausible, they would have inquired further with Trina U.S. about accepting cash compensation and pursuing repairs utilizing that cash. Plaintiffs declined to pursue this potential avenue because of Mr. Rowland's false information that the Modules were not repairable.

89. In July of 2024, more than thirteen months after Mr. Rowland provided false information, Plaintiffs identified a vendor who is willing to repair the Modules. A copy of the Statement of Work and Invoices from this vendor are attached as **Exhibit "I."**

90. Plaintiffs were accordingly damaged by relying on Trina U.S.'s representation that the Modules were not repairable.

- 19 -

91. Mr. Rowland's provision of false information has proximately caused Plaintiffs substantial damages, including lost production for the thirteen months that Plaintiffs believed that repairs were not potential or at all feasible.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Plaintiffs have been damaged in the amount of $1,697,404; (b) a finding that Plaintiffs have been damaged in an amount to compensate for lost production, with such amount being determined at trial; (c) for an award of attorneys' fees and costs incurred in pursing this action; and (d) the award of any other relief that the Court deems just and equitable under the circumstances.

                **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
                *Attorneys for Plaintiffs*

      By:  */s/ Nicholas M. Gaunce*
          Nicholas M. Gaunce, Esq.
          NJ Id. No. 012032007
          2000 Lenox Drive, Suite 203
          Lawrenceville, New Jersey 08648
          609.392.2100
          E-mail: ngaunce@eckertseamans.com

          Karlee M. Martin, Esquire
          NJ Id. No. 240742018
          2000 Lenox Drive, Suite 203
          Lawrenceville, New Jersey 08648
          609.392.2100
          E-mail: kmartin@eckertseamans.com

Dated: January 6, 2025