IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| **LONGMEADOW ONE SOLAR LLC,** et al. )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**TRINA SOLAR CO., LTD. et al.,** )<br>)<br>**Defendants.** )<br>)<br>)<br>)<br>) | **Civil Action No: 3:24-cv-03223-GC-JBD** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT TRINA SOLAR (U.S.), INC.'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

I.     PLAINTIFFS ALLEGE THAT A THIRD PARTY CONTRACTED WITH TUS TO PURCHASE PRODUCT .......................................................................... 3

II.    PLAINTIFFS' ALLEGATIONS ARE CONTRARY TO THE LIMITED WARRANTY UPON WHICH THEY RELY. ................................................. 4

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ................................................................................................................... 7

III.    PLAINTIFFS IMPROPERLY RELY ON "GROUP PLEADING" TO ASSERT CLAIMS AGAINST BOTH DEFENDANTS. ........................................ 7

IV.    PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL, BECAUSE TUS DID NOT ISSUE THE LIMITED WARRANTY OR ANY OTHER WARRANTY. .................................................................................................. 8

V.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENCE, BECAUSE THEY SEEK ONLY ECONOMIC LOSSES. ............................................... 11

VI.    PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING ............................ 14

      A.    PLAINTIFFS DID NOT CONTRACT WITH TUS OR TSL. ............ 14

      B.    PLAINTIFFS' CLAIMS FOR BREACH OF THE IMPLIED COVENANT DUPLICATE THEIR CLAIMS FOR BREACH OF WARRANTY. ................................................................................ 15

VII.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION. ...................................................................... 17

      A.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM IS BARRED BY THE ECONOMIC LOSS RULE AND PLAINTIFFS CANNOT IDENTIFY A DUTY INDEPENDENT OF THE LIMITED WARRANTY ........................................................................ 18

      B.    PLAINTIFFS FAIL TO ALLEGE A FALSE STATEMENT OF FACT UPON WHICH THEY JUSTIFIABLY RELIED ............................. 20

VIII.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES ............................................................ 21

IX.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE. ....................... 22

CONCLUSION ............................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*,
  No. CA 11-720(JAP), 2011 WL 6756973 (D.N.J. Dec. 23, 2011)...................................................2, 12

*Alexander v. CIGNA Corp.*,
  991 F. Supp. 427 (D.N.J. 1998)..........................................................................................................20

*Alloway v. Gen. Marine Indus., L.P.*,
  695 A.2d 264 (N.J. 1997).............................................................................................................11, 14

*Alpine E. Elec., LLC v. Mod. Grp. Ltd.*,
  No. 17-5726-FLW-DEA, 2018 WL 3159881 (D.N.J. Mar. 19, 2018)................................................22

*Atlas Acquisitions, LLC v. Porania, LLC, et al.*,
  No. 18-Cv-17524, 2019 WL 6130774 (D.N.J. Nov. 19, 2019)..........................................................18

*Badalamenti v. Resideo Techs., Inc.*,
  No. 22-CV-05592 (MEF)(CLW), 2024 WL 4661010 (D.N.J. Nov. 4, 2024)....................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................................6

*BH 329 NB LLC v. CBRE, Inc.*,
  No. 16-CV-8141, 2017 WL 3641566 (D.N.J. Aug. 24, 2017) ..........................................................20

*Bullard v. Jaguar Land Rover Auto. PLC*,
  No. CV 20-14464, 2023 WL 4841610 (D.N.J. July 28, 2023)..........................................................10

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
  489 F. Supp. 3d 282 (D.N.J. 2020).....................................................................................................21

*Chen v. Wang*,
  No. CV 22-4708 (MAS) (JBD), 2024 WL 4771305 (D.N.J. Nov. 12, 2024) .....................................19

*Demorato v. Carver Boat Corp.*,
  304 F. App'x 100 (3d Cir. 2008).........................................................................................................10

*Demorato v. Carver Boat Corps.*,
  No. CIV.A.06 240 JAP, 2007 WL 1456207 (D.N.J. May 16, 2007) ..................................................10

*Fabricatore v. ADT LLC*,
    2018 WL 3696581 (D.N.J. Aug. 3, 2018) ......................................................................... 10

*Feldman v. Mercedes-Benz USA, LLC*,
    No. 2:11-CV-00984 WJM, 2012 WL 6596830 (D.N.J. Dec. 18, 2012)............................... 16

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ......................................................................................... 6, 7

*George v. Jaguar Land Rover N. Am. LLC*,
    No. 2:20-CV-17561 (WJM), 2021 WL 5195788 (D.N.J. Nov. 8, 2021) ................................ 2, 14, 16

*Greene v. BMW of North America*,
    No. CIV. 2:11-04220 WJM, 2013 WL 5287314, at *4 (D.N.J. Sept. 17, 2013). ........................... 15, 23

*Hahn v. OnBoard LLC*,
    No. 09-3639, 2009 WL 4508580 (D.N.J. Nov.16, 2009) .................................................... 15

*Heyman v. Citimortgage, Inc.*,
    No. 14-1680-KM-MAH, 2019 WL 2642655 (D.N.J. June 27, 2019) ...................................... 18

*Jannarone v. Sunpower Corp.*,
    No. CV 18-9612-MAS-TJB, 2018 WL 5849468 (D.N.J. Nov. 7, 2018) .................................. 9

*Johnson v. State Farm Fire & Cas. Co.*,
    No. 18-15209-RBK-KMW, 2019 WL 2285491 (D.N.J. May 29, 2019) ................................. 22

*Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*,
    No. 22-06530-KM-MAH, 2023 WL 6141237 (D.N.J. Sept. 20, 2023) ................................. 21, 22

*Levari Enterprises, LLC v. Kenworth Truck Co., Paccar Inc.*,
    No. 1:20-CV-06210-NLH-AMD, 2022 WL 4445404, at *3 (D.N.J. Sept. 23, 2022)........................ 13

*Luppino v. Mercedes-Benz USA, LLC*,
    No. 09-CV-5582 DMC JBC, 2013 WL 6047556 (D.N.J. Nov. 12, 2013) ................................ 9

*Mason v. Roman Catholic Archdiocese of Trenton*,
    No. 18-10733, 2019 WL 1320299 (D.N.J. Mar. 22, 2019) .................................................. 16

*MHA, LLC v. Amerigroup Corp.*,
    539 F. Supp. 3d 349 (D.N.J. May 17, 2021) ................................................................... 1, 7

*Mills v. Ethicon, Inc.*,
    406 F. Supp. 3d 363 (D.N.J. Aug. 27, 2019)..................................................................... 7

*MJF Elec. Cont., Inc. v. Toms River Bd. of Ed.*,
    No. 20-7336, 2021 WL 1168962 (D.N.J. Mar. 26, 2021) ................................................... 19

*Montclair State Univ. v. Oracle USA, Inc.*,
No. CIV.A. 11-2867 FLW, 2012 WL 3647427 (D.N.J. Aug. 23, 2012)........................................ 3, 18

*Park v. M & T Bank Corp.*,
2010 U.S. Dist. LEXIS 24905 (D.N.J. Mar. 16, 2010) ...................................................................... 18

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993) .............................................................................................................. 7

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020)................................................................................................... 2, 9

*Power v. Bayonne Bd. of Educ.*,
No. 16-5091 (KM), 2017 WL 1536221 (D.N.J. Apr. 26, 2017)......................................................... 14

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
71 F. Supp. 3d 492 (D.N.J. 2014)................................................................................... 3, 11, 18, 22

*Saltiel v. GSI Consultants, Inc.*,
788 A.2d 268 (N.J. 2002) ................................................................................................................. 18

*Sheeran v. Blyth Shipholding S.A.*,
No. CV 14-5482, 2015 WL 9048979 (D.N.J. Dec. 16, 2015)............................................................ 8

*Spring Motors Distributors, Inc. v. Ford Motor Co.*,
489 A.2d 660 (N.J. 1985) ............................................................................................................... 2, 11

*T.J. McDermott Transp. Co. v. Cummins, Inc.*,
No. CIV. 14-04209 WHW, 2015 WL 1119475 (D.N.J. Mar. 11, 2015)............................................ 16

*Taylor v. New Jersey*,
No. 13-6594 (PGS)(DEA), 2014 WL 4215440 (D.N.J. Aug. 25, 2014) ............................................ 22

*Travelers Indem. Co. v. Dammann & Co.*,
592 F. Supp. 2d 752 (D.N.J. 2008).................................................................................................. 13

*Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*,
No. CV 15-7105(MLC), 2017 WL 1752951 (D.N.J. May 4, 2017)............................................. 18, 19

*Wade v. Kessler Institute*,
798 A.2d 1251 (N.J. 2002) ............................................................................................................... 15

In their First Amended Complaint ("FAC"), Plaintiffs asserted claims for breach of express warranty, negligence, breach of the covenant of good faith and fair dealing against both Trina Solar Co., Ltd. (f/k/a Changzhou Trina Solar Energy Co. Ltd.) ("TSL"), and Trina Solar (U.S.), Inc. ("TUS"). On January 6, 2025, Plaintiffs filed a Second Amended Complaint ("SAC") reasserting the same claims, but also added a claim for negligent misrepresentation against TUS. *See* Declaration of Ruofei Xiang ("Xiang Decl."), Exhibit B, SAC. Plaintiffs' claims all arise from purportedly defective solar modules manufactured by TSL, a foreign entity, which Plaintiffs purchased from a non-party downstream distributor through their managing member. Because Plaintiffs fail to state any claim for which relief may be granted, the Court should dismiss the SAC as to TUS without leave to amend under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

As Plaintiffs acknowledge in the SAC, TSL and TUS are two distinct entities. SAC ¶¶ 10-11.[1] Nevertheless, Plaintiffs improperly lump TSL and TUS together, and generally assert the same allegations and causes of action against them collectively. In doing so, Plaintiffs improperly resort to "group pleading" in the SAC, which fails to provide notice of claims against *each* Defendant as required under Rule 8 of the Federal Rules of Civil Procedure. *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 365 (D.N.J. May 17, 2021). All claims should be dismissed for this threshold reason alone.

For similar reasons, Plaintiffs' breach of express warranty claims against TUS are woefully misplaced, because TUS did not issue the manufacturer's limited warranty (or any warranty), under which Plaintiffs purport to bring claims. Indeed, the manufacturer's limited warranty—which Plaintiffs incorporate and attach to their SAC—unequivocally states that TSL is the sole entity issuing the limited warranty. It is axiomatic that a party that did not issue a warranty cannot be held liable under it, even where that party's affiliate did issue the warranty. *E.g.*, *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 882 (D.N.J. 2020).

---

[1] As discussed in TSL's Motion to Dismiss, which is filed contemporaneously herewith, Plaintiffs sought to avoid proper service on TSL in China by purporting to serve TSL via TUS's registered agents in California and New Jersey.

Plaintiffs' negligence claims are equally deficient, and are barred by the economic loss rule, which prohibits Plaintiffs from pursuing claims and damages sounding in tort based only on economic losses that do not involve harm to persons or property other than the solar modules and solar systems into which the modules were integrated. *Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, No. CA 11-720(JAP), 2011 WL 6756973, at *4 (D.N.J. Dec. 23, 2011); *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985). Rather, as New Jersey courts repeatedly hold, a plaintiff's sole recourse to recover economic losses based on a purportedly defective product is to make a valid warranty claim under the Uniform Commercial Code ("U.C.C"). *E.g.*, *Spring Motors*, 489 A.2d at 663. Because Plaintiffs seek only economic losses—for alleged contracting costs, replacement costs, and diminution of the product's value— they cannot state a claim for negligence.

Plaintiffs likewise fail to state a claim for breach of the covenant of good faith and fair dealing. By their own admission, Plaintiffs did not enter into any direct contracts with TUS (or TSL). Accordingly, there is no implied covenant under which they can assert claims. *George v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-17561 (WJM), 2021 WL 5195788, at *9 (D.N.J. Nov. 8, 2021). Moreover, Plaintiffs' claims for breach of the duty of good faith and fair dealing are entirely duplicative of their claims for breach of warranty, which separately defeats their implied covenant claims. *Id.*

Finally, Plaintiffs' negligent misrepresentation claim against TUS also falls flat. As their sole support, Plaintiffs allege that a TUS technician advised Plaintiffs that "repairing the Modules was not feasible." SAC ¶ 85. After rejecting TSL's attempts to replace or partially refund the modules consistent with the limited warranty, Plaintiffs claim they relied on the technician's statement to wait for over a year to determine if *any third party vendor* would try to repair the modules. Plaintiffs allege that they have now found one third party vendor willing to attempt repairs. By Plaintiffs' misplaced logic, this somehow means that TUS negligently misrepresented that repairing the modules "was not feasible."

Plaintiffs' claim rests on their unreasonable assumption that the alleged statement meant

that *no third party vendor* would ever *attempt* to repair the modules, a statement they do not allege the technician made. Moreover, Plaintiffs admit (as they must) that the limited warranty provides the warranty provider, TSL, with the <u>sole</u> discretion to refund, repair, or replace a defective product. SAC ¶ 31, Ex. B ¶ 5. Consistent with the statement that repair was "not feasible," Plaintiffs allege that TSL opted not to repair the modules, and instead offered to replace or partially refund the product under the terms of the limited warranty. The alleged statement thus falls squarely within the confines of the limited warranty. Accordingly, the negligent misrepresentation claim fails under the economic loss rule, because the purported "misrepresentation" is not extraneous to the limited warranty, and neither TSL or TUS had any independent duty beyond the terms of the limited warranty. *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505-07 (D.N.J. 2014); *Montclair State Univ. v. Oracle USA, Inc.*, No. CIV.A. 11-2867 FLW, 2012 WL 3647427, at *10–11 (D.N.J. Aug. 23, 2012).

For these reasons, and the reasons set forth herein, each of Plaintiffs' claims against TUS fail and cannot be remedied. Thus, the Court should respectfully dismiss all claims against TUS with prejudice and without leave to amend.

## **FACTUAL BACKGROUND**

## I.    **PLAINTIFFS ALLEGE THAT A THIRD PARTY CONTRACTED WITH TUS TO PURCHASE PRODUCT.**

Plaintiffs allege that in April of 2014 and March of 2015, G&S Solar Installers, LLC ("G&S")—a non-party to this suit—contracted with TUS to purchase solar modules that were manufactured by TSL. ECF No. 31, Second Amended Complaint ("SAC") ¶ 18. Plaintiffs attach to the SAC a sales order issued to G&S by TUS for solar modules for the total price of $2.9 million. *Id.*, Ex. A. Plaintiffs also attach an invoice issued by still another third party, Hudson Renewables LLC, to G&S for a total of $1.079 million. *Id.* Plaintiffs allege that G&S paid TUS $1.69 million for the modules at issue in the litigation. SAC ¶ 18. According to Plaintiffs, their managing member, SunRay Power, LLC ("SunRay"), procured the modules from G&S, which Plaintiffs allegedly used as "primary components of a solar array system," which includes "the

modules, inverters, and racking system." SAC ¶¶ 17-18, 22.

What Plaintiffs do not (and cannot) allege is the existence of a contract between TUS (or TSL), on the one hand, and any of the Plaintiffs, on the other hand. Nor do any of the contract documents attached to the SAC mention any Plaintiff. *See* SAC ¶¶ 18-20, Exs. A-B. Based on Plaintiffs' allegations, and the documents they attach to the SAC, Plaintiffs are at least three parties removed from G&S, the party that allegedly contracted with TUS to purchase the modules. *Id.*

## II.    PLAINTIFFS' ALLEGATIONS ARE CONTRARY TO THE LIMITED WARRANTY UPON WHICH THEY RELY.

According to Plaintiffs, on or about August 12, 2022, "SunRay received an alert that production of power to one of the Systems (DY HS), rapidly declined." SAC ¶ 23. Later in August 2022, "SunRay received further notifications that power had rapidly declined" for four other solar systems. SAC ¶¶ 24. Plaintiffs further allege that in November 2024, SunRay received notification that power had declined for four remaining systems. SAC ¶ 25. Plaintiffs allege that, sometime later, "SunRay discovered that the cause of the rapid declines in power to the Initial Systems were defects in the Modules that were purchased from Defendants in April of 2014 and March of 2015." SAC ¶ 26. Plaintiffs claim that the alerts as to the remaining solar systems resulted from "similar issues." SAC ¶ 26. Plaintiffs allege that "SunRay submitted warranty claims" at an unspecified later date. SAC ¶ 28.

Plaintiffs further allege that the modules were covered by a 25-year power output warranty, and a 10-year workmanship warranty. SAC ¶¶ 19-20. Plaintiffs attach as Exhibit B to the SAC a manufacturer's limited warranty ("Limited Warranty") under which they purport to assert claims. *Id.* ¶¶ 19-20, Ex. B. In the SAC, Plaintiffs allege that Trina Solar Co., Ltd. (TSL) issued the Limited Warranty. *Id.* Indeed, the first sentence of the Limited Warranty makes clear that it is issued only by TSL: "Changzhou Trina Solar Energy Co. Ltd [now known as Trina Solar Co. Ltd.] ('Trina Solar') hereby grants the following Limited Warranty to the first customer installing (for its own use) (the 'Buyer') . . . ." *Id.*, Ex. B at 1. The heading of the Limited Warranty

provides, in bold and capitalized letters: "**CHANGZHOU TRINA SOLAR ENERGY CO., LTD LIMITED WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES PS-M-0020 REV. M Nov. 29th, 2011.**" *Id.*, Ex. B.

TUS is mentioned only once in the Limited Warranty, and only as a customer support provider for warranty claims. *Id.*, Ex. B at 4-6 ¶ 7 (stating "Buyer shall notify Trina Solar immediately after discovery of any claim under this Limited Warranty by letter, facsimile or e-mail to the customer support center in your region," and identifying TUS as the North America Customer Support provider). Paragraph 11 of the Limited Warranty further provides that there is "No other Warranty" for the products, and that "the Limited Warranty set forth herein is the only express warranty (whether written or oral) by Trina Solar [defined as TSL] applicable to the Products and no one is authorized to restrict, expand or otherwise modify this Limited Warranty." *Id.*, Ex. B, at ¶ 11.

The Limited Warranty further provides that TSL has "sole discretion" to issue a partial refund, repair, or replace any defective modules with product that is new or remanufactured and equivalent to new. SAC ¶ 31, Ex. B, ¶ 5. This is a Buyer's "sole and exclusive remedy" under the Limited Warranty. *Id.* Moreover, the Limited Warranty expressly places all "costs and expenses for [product] removal, installation, or reinstallation" solely with the Buyer. SAC, Ex. B ¶ 5(a)(iii). The Limited Warranty further provides that "[a]ll other claims under this Limited Warranty against Trina Solar shall be excluded," and expressly disclaims any "special incidental or consequential damages (including loss of profits, harm to goodwill or business reputation, or delay damages) whether such claims are based in contract, warranty, negligence, or strict tort." *Id.* ¶ 5(c). The Limited Warranty's disclaimer "applies to the extent permissible by law, and even if the remedies set forth below herein are deemed to have failed of their essential purpose." *Id.*

As Plaintiffs admit in the SAC, they rejected TSL's attempts to provide replacement modules or a partial refund under terms of the Limited Warranty, and now seek damages to which they are not entitled. SAC ¶¶ 32-39. As the sole reason for rejecting replacement modules, Plaintiffs claim that it would cost them money to deinstall the original modules and install the

replacement modules and that the partial refund offered under the Limited Warranty is not enough. SAC ¶¶ 33-34.

Specifically, notwithstanding the Limited Warranty's clear bar on such damages, Plaintiffs allege that they "have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules." SAC ¶ 57. For each of the claims for breach of warranty, breach of the covenant of good faith, and negligence, Plaintiffs seek the same judgment against both Defendants, including a finding that "Defendants have breached a contract," damages of $1.6 million "in relation to this breach," damages for "costs expended to contractors for the Modules," and damages for "costs for redesigning the existing racking to accommodate replacement modules." SAC at 13, 14, 17. Plaintiffs seek the same damages for their negligent misrepresentation claim against TUS. SAC at 19. Plaintiffs do not allege any damages resulting from injuries to persons or other property, and they seek only consequential economic losses. *See* SAC at 13, 14, 17, 19.

Because the SAC is fatally flawed in ways that cannot be remedied, and fails to state any plausible claim for relief against TUS, the Court should respectfully dismiss all claims against TUS with prejudice and deny leave to amend.

## **LEGAL STANDARD**

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court will "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A "complaint must do more than allege the plaintiff's entitlement to relief." *Id.* Plaintiffs' "obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). After stripping away the legal conclusions, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009)). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). For the reasons set forth herein, Plaintiffs fail to state any claim against TUS.

## **ARGUMENT**

### III. **PLAINTIFFS IMPROPERLY RELY ON "GROUP PLEADING" TO ASSERT CLAIMS AGAINST BOTH DEFENDANTS.**

While Plaintiffs correctly identify TSL and TUS as two distinct entities (SAC ¶¶ 10-11), Plaintiffs indiscriminately lump both Defendants together and plead every allegation and the first three causes of action for breach of warranty, negligence, and breach of the duty of good faith and fair dealing against them collectively. *See generally* SAC. This will not do. "[C]ourts in this District generally do not allow 'group pleading,' because the complaint must allege 'sufficient facts to identify each defendant's role.'" *MHA, LLC*, 539 F. Supp. 3d at 365 (quoting *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020)). Group pleadings thus fail to meet the standards required under Federal Rule of Civil Procedure 8, which requires fair notice of the claims against *each* defendant. *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. Aug. 27, 2019).

In *MHA, LLC*, for example, the court held that "claims against [a] parent corporation (Amerigroup Corp.) should be dismissed because MHA only dealt and contracted with the subsidiary entity (Amerigroup New Jersey, Inc.)." 539 F. Supp. 3d at 364-65. Although the defendants were two separate affiliated entities, the "Complaint lump[ed] Amerigroup Corp. and Amerigroup New Jersey together and attribute[d] all the conduct alleged in the Complaint to them both." *Id.*

The court found that such pleadings are deficient for at least two reasons. "For one, separate corporate forms must be respected and will not be disregarded to impose liability on an entity for the acts of a related entity except in limited circumstances." *Id.* "Second, the Rule 12(b)(6) standard requires the plaintiff to plausibly allege that each 'defendant is liable for the misconduct alleged.'"

*Id.* (quoting *Iqbal*, 556 U.S. at 678). "Putting those principles together, courts dismiss claims alleged indiscriminately against multiple corporate defendants without factual allegations warranting an inference that each could be liable." *Id.* (citing *Glob. Fresh Produce, Inc. v. Epicure Trading, Inc.*, Civ. No. 11-01270, 2012 WL 924326, at *6 (D.N.J. Mar. 16, 2012)). Thus, in *MHA, LLC*, because only one entity, the subsidiary, had contracted with plaintiff, the complaint failed to "allege any facts to permit an inference that Amerigroup Corp. should equally be liable" for its subsidiary's contractual or quasi-contractual relationships. *Id.*

The same is true here. In the SAC, Plaintiffs fail to distinguish between TUS and TSL or their individual acts that purportedly give rise to claims. *E.g.*, SAC ¶ 16 ("This case is brought by virtue of *Defendants'* failure to fulfill its [sic] warranty obligations."); *id.* ¶ 26 ("SunRay discovered the cause of the rapid decline sin power to the Initial Systems were defects in the Modules that were purchased from *Defendants* . . . ."); *id.* ¶ 29 ("*Defendants* subjected SunRay to an overly detailed investigation into its warranty claims."); *id.* ¶¶ 58-72 (referring repeatedly to "*Defendants'*" purported actions rather than TSL's or TUS's specific acts) (emphasis added). This deficiency plagues all of Plaintiffs' causes of action. *Id.* (alleging the same causes of action and prayer for relief wholesale against both "Defendants").

For this reason alone, Plaintiffs fail to state a claim against either Defendant. *Sheeran v. Blyth Shipholding S.A.*, No. CV 14-5482 (JBS/AMD), 2015 WL 9048979, at *5 (D.N.J. Dec. 16, 2015) (dismissing complaint based on group pleadings because "it is not sufficient to fail to identify each defendant's role and function or say that each of the defendants is responsible for everything").

## IV.    PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL, BECAUSE TUS DID NOT ISSUE THE LIMITED WARRANTY OR ANY OTHER WARRANTY.

For similar reasons, Plaintiffs' breach of warranty claims against TUS fail from the outset, because TUS did not issue the Limited Warranty or any other warranty. It is a "fundamental, settled tenet of contract law 'that non-parties to a contract cannot be held liable for a breach of that agreement.'" *Powell*, 502 F. Supp. 3d at 882 (quoting *Taylor v. New Jersey*, No. 13-6594

(PGS)(DEA), 2014 WL 4215440, at *10 (D.N.J. Aug. 25, 2014)). It follows that a warranty issued by one party, like TSL, does not extend to its affiliates, like TUS. *Id.*

In *Powell*, for example, the court rejected plaintiff's allegations that a foreign manufacturer was liable under a limited warranty that was issued only by its affiliated American distributor. There, the limited warranty explicitly stated that "[t]hese warranties are made by Subaru of America, Inc. ('SOA')." *Id.* (quoting warranty). The warranties made "no reference to [SOA's affiliate] SBR *as a warrantor.*" *Id.* (emphasis added). The court rejected plaintiff's argument that "by virtue of their agency relationship, SBR is bound by the provisions of the new vehicle express warranty" issued only by SOA. *Id.* (quoting plaintiff's brief). Based on the plain language of the warranty, the court held that "SBR is not a party to it," and that "Plaintiffs entirely fail to refer the Court to any case law . . . that would render SBR liable for a breach of the [limited warranty]" issued solely by its affiliate. *Id.* Accordingly, the court dismissed the claims against SBR. *Id.*

The court reached the same conclusion in *Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582 DMC JBC, 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013). There, as here, plaintiffs parroted the same breach of warranty allegations against Daimler, a parent company, and Mercedes-Benz USA (MBUSA), Daimler's American subsidiary and distributor. *Id.* Daimler moved to dismiss, arguing that "Plaintiffs have not alleged valid warranty claims against Daimler because the warranty was issued by MBUSA, not Daimler." *Id.* The court agreed, finding that the "language of the [agreement] itself even describes the warranty as obligating MBUSA, as opposed to Daimler or Defendants collectively." *Id.* The court found "that the warranty claims made against Daimler are based on conclusory and speculative allegations," and that "Plaintiffs have failed to provide facts to support the allegation that Daimler warrants the vehicles." *Id.*

The *Luppino* court also flatly rejected that Daimler was responsible for MBUSA's warranties as its alter ego. The court reasoned that even if Daimler "sets the warranty terms, approves marketing plans and has general control of other business aspects of MBUSA," those allegations do not "dominate MBUSA into non-existence." *Id.*; *see also Jannarone v. Sunpower Corp.*, No. CV 18-9612-MAS-TJB, 2018 WL 5849468, at *3 (D.N.J. Nov. 7, 2018) ("Plaintiff's

assertion that GeoGenix provided it with Sunpower's 'limited manufacturer's warrant[y]' further fails to demonstrate an agency relationship.").

Likewise, in *Bullard v. Jaguar Land Rover Auto. PLC*, No. CV 20-14464, 2023 WL 4841610, at *7–8 (D.N.J. July 28, 2023), the court held that affiliates were not liable for Jaguar Land Rover North America LLC's (JLRNA) warranties, which stated that "the Land Rover warranties detailed in this booklet are issued by Jaguar Land Rover North America, LLC." The court had little trouble finding that the "express warranties . . . by their own terms, only obligate JLRNA." *Id.* The court rejected plaintiffs' "allegations which characterize the warranties as being provided by 'Defendants' collectively," because they were "legal conclusions . . . belied by the [warranty] itself." *Id.* Thus, the court dismissed warranty claims brought against JLRNA's affiliates. *Id.*; *Demorato v. Carver Boat Corp.*, 304 F. App'x 100, 102 (3d Cir. 2008) (upholding dismissal of warranty claims against boat distributor where the warranty's "language channels any warranty through the manufacturer."); *see also Demorato v. Carver Boat Corps.*, No. CIV.A.06 240 JAP, 2007 WL 1456207, at *4–5 (D.N.J. May 16, 2007).

These cases are on all fours and require dismissal of Plaintiffs' claims against TUS. Notwithstanding Plaintiffs' conclusory allegations that both Defendants are liable under the Limited Warranty, the Limited Warranty attached to the SAC plainly provides that it is issued solely by the manufacturer, TSL. *Fabricatore v. ADT LLC*, 2018 WL 3696581, at *5 (D.N.J. Aug. 3, 2018) ("Nor must the District Court accept conclusory allegations set forth in a complaint [ ] when those allegations are belied by the complaint's remaining factual allegations."). Indeed, the first sentence of the Limited Warranty explicitly states that "Changzhou Trina Solar Energy Co. Ltd. ('Trina Solar') hereby grants the following Limited Warranty . . . ." FAC, Ex. B at 1. Likewise, the heading of the Limited Warranty provides in bold, capitalized letters that it is issued solely by TSL. *Id.* Thus, because TUS "never obligated [itself] to the express warranties in the first place," Plaintiffs fail to state a claim for breach of warranty against TUS. *See Bullard*, 2023 WL 4841610, at *7.

## V.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENCE, BECAUSE THEY SEEK ONLY ECONOMIC LOSSES.

Plaintiffs' negligence claims fare no better and are barred by the economic loss rule. It is well-settled that "a seller's duty of care generally stops short of creating a right in a commercial buyer to recover a purely economic loss." *Spring Motors Distributors, Inc.*, 489 A.2d at 663. Rather, "economic losses inflicted by a seller of goods are better resolved under principles of contract law." *Id.* Thus, "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., *but not in strict liability or negligence*." *Id.* (emphasis added); *id.* at 673 (recognizing the U.C.C. as the "exclusive source" for "damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself") (citation and internal quotation marks omitted).

"Economic loss can take the form of either direct or consequential damages." *Id.* A "direct economic loss includes the loss of the benefit of the bargain, i.e., the difference between the value of the product as represented and its value in its defective condition." *Id.* "Consequential economic loss includes such indirect losses as lost profits." *Id.* Economic losses also include "actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits" as well as "the diminution of value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264 (N.J. 1997). Thus, in *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, the court dismissed negligence claims under the economic loss rule where plaintiffs alleged damages in the form of "repeated delays and lost production time, costly replacement, and a repeated inability to meet delivery schedules and an attendant loss of customers." 71 F. Supp. 3d 492, 507 (D.N.J. 2014) (quoting complaint).

Here, all of Plaintiffs' alleged damages constitute economic losses related to the purportedly defective solar modules and "solar systems," rather than any injury to persons or

"other property." Tellingly, Plaintiffs simply incorporate by reference their prior allegations supporting their breach of warranty claims. SAC ¶ 67. Plaintiffs then allege that both Defendants had "a duty to provide functional solar panel systems," and the solar panels "did not work as intended"—issues that are squarely addressed in TSL's Limited Warranty. SAC ¶¶ 68-69. Plaintiffs then claim that they experienced a "loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules." SAC ¶¶ 72.

Plaintiffs make no effort to disguise their negligence claims as anything other than a recast claim for breach of warranty. For example, to support their *negligence* claims, Plaintiffs request a judgment that "Defendants have *breached a contract* with Plaintiffs," and seek damages "*in relation to this breach*" in the amount of costs to pay "contractors for the Modules," and "costs for redesigning the existing racking." SAC at 14 (emphasis added). These are precisely the same remedies Plaintiffs seek for their breach of warranty claims, and constitute economic losses that Plaintiffs cannot recover in tort as a matter of law.

In the SAC, Plaintiffs now allege for the first time that the "declines in power to the Systems caused by the defects in the Modules resulted in physical damage to products other than the Modules, including corrosion, loss of function, and damage to the Systems' inverters, and racking system." SAC ¶ 27. However, in their cause of action for negligence, Plaintiffs still seek only economic damages for the solar modules and racking redesign, rather than purported damage to "other property." SAC at 14.

Notwithstanding Plaintiff's nebulous claims of damage to other parts of their solar systems, the economic loss rule still bars Plaintiffs' negligence claims under the "integrated product doctrine." That doctrine expands the economic loss rule to "preclud[e] strict liability and negligence remedies when a defective product is incorporated into another product that is then damaged." *Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, No. CIV.A. 11-720 JAP, 2011 WL 6756973, at *4 (D.N.J. Dec. 23, 2011). Courts limit such claims to the Commercial Code, particularly where, as here, the injuries are commercial and the parties are sophisticated:

Although the economic loss rule generally does not apply where other property damage is proven, courts have tended to focus on the circumstances and context giving rise to the injury in determining whether alleged losses qualify as "other property" damage. Specifically, in the context of a commercial transaction between sophisticated parties, injury to other property is not actionable in tort if the injury was or should have been reasonably contemplated by the parties to the contract. In such cases the failure of the product to perform as expected will necessarily cause damage to other property, rendering the other property damage inseparable from the defect in the product itself.

*Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 760–763 (D.N.J. 2008), *aff'd*, 594 F.3d 238 (3d Cir. 2010) (quoting *Palmetto Linen Service, Inc. v. U.N .X., Inc.*, 205 F.3d 126, 129-30 (4th Cir. 2000)).

Thus, in *Levari Enterprises, LLC v. Kenworth Truck Co., Paccar Inc.*, plaintiff brought negligence claims for damage to their trucks when suspension systems failed in the trucks. No. 120CV06210NLHAMD, 2022 WL 4445404, at *3 (D.N.J. Sept. 23, 2022). The court had little trouble holding that the suspension systems were products integrated into the trucks themselves, such that the trucks were not "other property" that "would allow for the exception of the economic loss doctrine." *Id.* The truck owners were thus confined to claims under the Commercial Code rather than tort law. *Id.*

The integrated product doctrine bars Plaintiffs' negligence claims. Plaintiffs allege that "the Modules were a *significant part of the Systems* as the primary components of a solar array system are the *modules, inverters, and racking system*." SAC ¶ 22 (emphasis added). Plaintiffs also allege that Defendants had a "duty to provide functional *solar panel system* to Plaintiffs." SAC ¶ 68 (emphasis added). And again, Plaintiffs do not seek damages based on any alleged harm caused to other solar system components. Even if they did, the alleged damage to other parts of the solar system, including the modules, inverters, and racking, remain subject to the economic loss rule for this separate reason.

In short, Plaintiffs' negligence claims are hopelessly defective. Neither the purported

13

"duty" to provide operable solar modules, nor the alleged economic losses Plaintiffs seek, plausibly supports a negligence claim. As the New Jersey Supreme Court has repeatedly held, Plaintiffs' "tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive." *E.g.*, *Alloway*, 695 A.2d at 275. The Court should so hold and should dismiss Plaintiffs' negligence claims with prejudice.

## VI.   PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING.

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing suffer from at least two fatal afflictions: First, there is no contract between any Plaintiff and TUS (or TSL), which means that there is no attendant implied duty of good faith and fair dealing. Second, Plaintiffs' implied covenant claims are entirely duplicative of the breach of warranty claims, which separately requires dismissal. Each of these defects is addressed in turn below.

### A.   PLAINTIFFS DID NOT CONTRACT WITH TUS OR TSL.

"The implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*." *Power v. Bayonne Bd. of Educ.*, No. 16-5091 (KM), 2017 WL 1536221, at *8 (D.N.J. Apr. 26, 2017) (emphasis in original). Thus, absent a direct contract between Plaintiffs and Defendants, "there can be no breach of an implied covenant of good faith and fair dealing." *Id.* (quoting *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990)). Likewise, without a direct sales contract between plaintiffs and defendants, a standalone express warranty does not give rise to an implied duty of good faith and fair dealing. *George*, 2021 WL 5195788, at *9.

In *George*, for example, plaintiff alleged that an auto manufacturer violated the implied covenant attending the manufacturer's warranty, which was provided to plaintiff at the point of sale by the manufacturer's affiliate and authorized dealer. *Id.* The court dismissed plaintiff's implied covenant claims because "the Complaint contains no allegations from which the Court can infer that Defendant, as the manufacturer, was a party to the sale and lease agreements between Plaintiffs and the authorized dealers." *Id.*

14

Similarly, in *Greene v. BMW of North America*, the court dismissed claims against BMW, because plaintiff had contracted solely with BMW's affiliated dealership, Paul Miller BMW, "and Paul Miller BMW assigned the lease to BMW Financial, not BMW." No. CIV. 2:11-04220 WJM, 2013 WL 5287314, at *4 (D.N.J. Sept. 17, 2013). Accordingly, "[b]ecause BMW is a not party to Greene's lease, Greene has not stated a claim for breach of contract. For the same reason, Greene has not stated a claim for breach of the implied covenant of good faith and fair dealing." *Id.*

The principles underlying *George* and *Greene* apply with even greater force here. As Plaintiffs admit, they did not contract with *either* TUS, the distributor, or TSL, the manufacturer. This is clear from Plaintiffs' own allegations. Rather, Plaintiffs allege that a non-party, G&S Solar Installers, LLC, purchased the solar modules from TUS. SAC ¶ 18 & Ex. A. Plaintiffs attach to the SAC a sales order between G&S and TUS for the purchase of product. SAC, Ex. A. Plaintiffs also attach an invoice between G&S and yet another non-party, Hudson Renewables LLC. *Id.* Critically, none of these agreements are between any Plaintiff and any Defendant; nor do the agreements so much as reference any Plaintiff. Plaintiffs' claims under the implied covenant thus fail, because they do not (and cannot) allege that any Plaintiff contracted with TLS or TUS.

Even if the Limited Warranty were to provide a sufficient basis to imply a duty of good faith and fair dealing as to TSL (and it does not), the implied covenant claim necessarily must fail against TUS, because TUS did not issue the Limited Warranty. *Wade v. Kessler Institute,* 798 A.2d 1251, 1262 (N.J. 2002) ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law."). The implied covenant claims fail for this reason alone.

### B.    PLAINTIFFS' CLAIMS FOR BREACH OF THE IMPLIED COVENANT DUPLICATE THEIR CLAIMS FOR BREACH OF WARRANTY.

A "[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Hahn v. OnBoard LLC,* No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov.16, 2009); *Wade v. Kessler Inst.,* 798 A.2d 1251, 1262 (N.J. 2002). Nor may a plaintiff "maintain a claim for breach of the

implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the breach of contract." *Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-10733, 2019 WL 1320299, at *8 (D.N.J. Mar. 22, 2019) (quoting *Elite Pers. Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015)). The same rule holds true for claims for breach of the implied covenant of good faith that duplicate claims for breach of warranty. *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. CIV. 14-04209 WHW, 2015 WL 1119475, at *12–13 (D.N.J. Mar. 11, 2015).

In *T.J. McDermott Transportation Co.*, for example, plaintiffs alleged that defendants breached the covenant of good faith and fair dealing by "fail[ing] to repair defects in Plaintiff's tractors," concealing problems with the tractors, and replacing bad parts with similar bad parts. 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015). The court dismissed the implied covenant claims, because "Plaintiff does not allege any basis for breach of the implied covenant of good faith and fair dealing that is different from the bases for its breach of express warranty claims." *Id.* ("Because Plaintiff's breach of implied covenant claims are duplicative of their breach of express warranty claims, allowing them to move forward would improperly provide Plaintiffs with two paths to recovery for breach of warranty.").

Likewise, in *George*, the court dismissed plaintiffs' good faith claims because they were duplicative of the express warranty claims: "To the extent that Plaintiffs' argument is that the implied covenant is attached to or arises from Defendant's express warranty, such argument renders Plaintiffs' breach of the implied covenant claim duplicative of their breach of express warranty claim, as both claims are premised on Defendant's alleged failure to fully and properly repair the InControl Defect." *George*, 2021 WL 5195788, at *9; *see also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("Plaintiffs' good faith and fair dealing claim is based on precisely the same conduct alleged to support their other contract claims and fails for the same reasons [and] Plaintiffs fail to allege any contractual relationship with Daimler.").

16

So, too, here. To support their defective claim for breach of the implied covenant, Plaintiffs simply incorporate by reference all of their allegations supporting their breach of warranty claims, as well as "Defendants' actions and inactions listed above." SAC ¶¶ 73. They also seek the same damages verbatim as their breach of warranty and negligence claims. *Compare* SAC at 13-14, *with* SAC at 17.

Plaintiffs' allegations that TSL's required proof of Plaintiffs' claims under the Limited Warranty, and that Defendants offered replacement modules that Defendants allege were not "equivalents" also fail to distinguish the claims from a *breach of warranty* claim. SAC ¶¶ 75-80. TSL's Limited Warranty both specifies a process through which Plaintiffs must submit claim, and sets forth TSL's options to provide a partial refund, replace the modules with "new or remanufactured equivalent," or repair the modules at its sole election. SAC ¶ 31, Ex. B at 4 ¶ 7 (specifying notice procedures and requiring "evidence of the claims and the serial numbers of the Product(s) at issue"). Plaintiffs cannot rest bad faith claims on conduct expressly governed by the terms of the Limited Warranty, particularly as to TUS, which did not issue the Limited Warranty or any other warranty.

Plaintiffs' implied covenant claims are thus doomed because they are entirely duplicative of Plaintiffs' breach of warranty claims. The Court should so hold, and dismiss Plaintiffs' implied covenant claims for this separate reason.

## VII. PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION.

In a last ditch effort to salvage their claims against TUS, Plaintiffs add a new claim for negligent misrepresentation in the SAC. As their sole support, Plaintiffs allege that a technician, Dave Rowland, purportedly stated in May of 2024 that "repairing the Modules was not feasible." SAC ¶ 85. By Plaintiffs' logic, this statement constitutes a negligent misrepresentation because "*there exists a vendor*" who submitted an invoice and statement of work agreeing to *attempt* to repair a fraction of the modules for which Plaintiffs assert claims. SAC ¶ 87 (emphasis added). For the reasons discussed below, Plaintiffs' claim is not plausible or actionable and would expand the

theory of negligent misrepresentations beyond all cognizable bounds.

### A. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM IS BARRED BY THE ECONOMIC LOSS RULE AND PLAINTIFFS CANNOT IDENTIFY A DUTY INDEPENDENT OF THE LIMITED WARRANTY

To plead a claim of negligent misrepresentation, a plaintiff must allege "[a]n incorrect statement, negligently made and justifiably relied upon" and damages sustained as a consequence of that reliance. *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505–07 (D.N.J. 2014) (internal quotes and cites omitted). Plaintiffs' claim falters from the outset, because they cannot identify any duty independent of TSL's Limited Warranty, and the claim is barred by the economic loss rule.

As discussed above, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). Courts repeatedly hold that "the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort." *Park v. M & T Bank Corp.*, 2010 U.S. Dist. LEXIS 24905, at * 19 (D.N.J. Mar. 16, 2010) (quoting another source).

Likewise, a "claim for negligent misrepresentation is barred where a plaintiff has not identified a duty owed independent of the contractual relationship." *Heyman v. Citimortgage, Inc.*, No. 14-1680-KM-MAH, 2019 WL 2642655, at *31 (D.N.J. June 27, 2019); *Montclair State Univ. v. Oracle USA, Inc.*, No. CIV.A. 11-2867 FLW, 2012 WL 3647427, at *10–11 (D.N.J. Aug. 23, 2012) (a claim for negligent misrepresentation must be premised on "an independent duty imposed by law.") (internal quotes and cites omitted)

To allege a duty independent from any duty imposed under the Limited Warranty, Plaintiffs must plausibly allege that the "allegedly tortuous conduct [was] extraneous to the contract." *Atlas Acquisitions, LLC v. Porania, LLC, et al.*, No. 18-Cv-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019). "An alleged misrepresentation is extraneous to an agreement when it breaches a duty separate and distinct from the performance of the agreement[']s terms." *Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. CV 15-7105(MLC), 2017 WL 1752951, at

*2–3 (D.N.J. May 4, 2017). "In other words, an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be." *Id.* "Hence, an alleged misrepresentation that involves a nonfulfillment of a warranty or guarantee contained within the contract itself cannot be said to be extraneous to the contract." *Id.*

The same rule applies where, as here, Plaintiffs seek to assert negligent misrepresentation claims for statements made by a defendant that are plainly governed by the terms of a warranty or contract with *a co-defendant. See MJF Elec. Cont., Inc. v. Toms River Bd. of Ed.*, No. 20-7336, 2021 WL 1168962, at *5-6 (D.N.J. Mar. 26, 2021) (barring plaintiff's tort claim against a defendant—who was not party to the contract with plaintiff—because the claim was governed by terms of contract between plaintiff and a co-defendant); *Chen v. Wang*, No. CV 22-4708 (MAS) (JBD), 2024 WL 4771305, at *16–17 (D.N.J. Nov. 12, 2024) (same).

Here, although TUS did not issue the Limited Warranty, its co-defendant, TSL, did. SAC ¶ 19, Ex. B. The Limited Warranty provides TSL with the sole discretion to replace, refund, or repair defective modules. SAC ¶ 31, Ex. B, at 3 ¶ 5. TUS was identified solely as customer support for the North American region in the Limited Warranty. SAC, Ex. B, at 4-5 ¶ 7. Thus, TUS's and TSL's only duty to Plaintiffs, if any, arises from the terms of the Limited Warranty issued by TSL.

Accordingly, the purported statement that TSL would not repair the modules because repair "was not feasible" (i.e. for *TSL*) is not actionable as a negligent misrepresentation. *Chen*, 2024 WL 4771305, at *16–17 (dismissing negligent misrepresentation claims because "Plaintiff failed to allege an independent duty imposed by law," where "Plaintiff is alleging that Wang and CENN breached only a duty of care arising out of Plaintiff's and [a co-defendant's] contractual relationship—not a duty of care arising from an independent source."). As courts routinely hold, Plaintiffs cannot conceal their warranty claims "in [an unintentional] tort claim clothing" to "enhance the benefit of the bargain" in TSL's Limited Warranty. *Id.* at *16 (internal quotes and cites omitted). The negligent misrepresentation claims should respectfully be dismissed with prejudice for this reason alone.

### B.    PLAINTIFFS FAIL TO ALLEGE A FALSE STATEMENT OF FACT UPON WHICH THEY JUSTIFIABLY RELIED

The SAC reveals that Plaintiffs' claim rests on a statement that they do not allege Mr. Rowland made. For instance, Plaintiffs do not (and cannot) allege that Mr. Rowland stated that "*no vendor* would *ever agree to attempt* to repair the modules." Rather, they allege Mr. Rowland said that repairing the modules was "not feasible." SAC ¶ 85. Plaintiffs cannot genuinely contend that they are justified in relying on this alleged statement to mean that no vendor in the world would attempt to profit by trying to repair the modules.

Indeed, the only plausible interpretation of the alleged statement Mr. Rowland made is that repairing the modules was "not feasible" *for TSL*, and that TSL instead intended to exercise its right under the Limited Warranty to refund or replace any defective modules at its sole discretion, rather than repair them. SAC, Ex. B, at 3 ¶ 5.  As courts recognize "it is unclear how Defendant could negligently misrepresent its own intent." *BH 329 NB LLC v. CBRE, Inc.*, No. 16-CV-8141, 2017 WL 3641566, at *5 (D.N.J. Aug. 24, 2017). As the court put it:

> "At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions. Therefore, for a claim of negligent misrepresentation there is no exception to the rule that a misrepresentation must be of a present fact and not a future intention[.]"

*Id.* (quoting *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 480 (E.D. Pa. 2010)). If a negligent misrepresentation cannot be premised on defendant's own future intention, such a claim clearly cannot be based on the future intent of an unknown third party vendor. *See id.*

Likewise, a false statement must be one of fact, rather than opinion. An action for negligent misrepresentation "must be predicated on a statement of present or past fact." Pai v. DRX Urgent Care LLC, Nos. 13–4333, 13–3558, 2014 WL 837158, at *12 (D.N.J. Mar. 4, 2014). "[P]redictions of the future and mere opinion, rather than statements of fact[,]" are thus not actionable as negligent misrepresentation. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 440–41 (D.N.J. 1998). *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J.), *aff'd*, 172 F.3d 859 (3d Cir. 1998) ("Statements

as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong."). Such statements may constitute "puffery" or "vague and ill-defined opinions," but are not "assurances of fact and thus do not constitute misrepresentations." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 305 (D.N.J. 2020), *reconsideration denied*, No. 15-3103, 2021 WL 1187123 (D.N.J. Mar. 30, 2021). (internal quotations and cites omitted).

Accordingly, even if Plaintiffs alleged that Mr. Rowland said that no vendor would ever attempt to repair the modules (and they do not), that still would not be an actionable misrepresentation. Instead, it would constitute a "predictions of the future and mere opinion" that no third party would ever attempt the repairs in the future, whether based on cost, futility, or otherwise. *Badalamenti v. Resideo Techs., Inc.*, No. 22-CV-05592 (MEF)(CLW), 2024 WL 4661010, at *11 & n.17 (D.N.J. Nov. 4, 2024) (holding that a company's statement that its product is third party certified does not expose the company to suit if the third party made the wrong decision in issuing certification).

The statement is not "false" for still another reason. To demonstrate that module repairs were "feasible," Plaintiffs rely on a third party vendor's "estimates" for repairs that Plaintiffs do not allege have either been undertaken or successfully completed. SAC ¶ 87, Ex. I.  Tellingly, the statement of work upon which Plaintiffs rely states that "[c]ertain modules may not be repairable." SAC Ex. I, at 2.

Plaintiffs' negligent misrepresentation fails are hopelessly flawed, and cannot survive a facial challenge. The Court should respectfully so order.

## VIII. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES

Even if the Court does not dismiss Plaintiffs' SAC in its entirety, it should at a minimum dismiss Plaintiffs' claims for attorney's fees for each cause of action. "It is well-settled that New Jersey courts, long adhering to the so-called 'American Rule', do not generally award attorneys' fees to prevailing litigants." *Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 22-06530-KM-

MAH, 2023 WL 6141237, at *5 (D.N.J. Sept. 20, 2023). "Thus, counsel may be awarded fees only in certain circumstances; most commonly where expressly authorized by contract, rule or statute." *Id.* Courts in this district commonly dismiss claims for attorney's fees where a plaintiff fails to adequately allege any basis under which they are entitled to such fees. *See, e.g.*, *id.* (dismissing plaintiffs' request for attorney's fees where "[t]he source of plaintiffs' claimed entitlement to attorneys' fees [was] unclear"); *Alpine E. Elec., LLC v. Mod. Grp. Ltd.*, No. 17-5726-FLW-DEA, 2018 WL 3159881, at *1 (D.N.J. Mar. 19, 2018) (dismissing plaintiff's request for attorney's fees when plaintiff failed to "assert any cause of action under which a statutory basis for attorneys' fees exists," "cite[] any court rule permitting the recovery of attorneys' fees," or "identif[y] any provision in the Contract authorizing an award of attorneys' fees"); *Johnson v. State Farm Fire & Cas. Co.*, No. 18-15209-RBK-KMW, 2019 WL 2285491, at *2 (D.N.J. May 29, 2019) (same).

Although Plaintiffs request attorney's fees in connection with all of their causes of action, (SAC at 13, 14, 17, 19), they provide no basis under which they are entitled to attorney's fees. Indeed, they have not identified any statute, rule, or contract provision that would entitle them to attorney's fees. Nor can they, as attorney's fees are not recoverable in connection with Plaintiffs' common law claims, and no contractual provision exists that would entitle them to attorney's fees. Accordingly, the Court should dismiss all Plaintiffs' requests for attorney's fees with prejudice.

## IX.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.

Plaintiffs cannot massage the pleadings to change the basic facts that undermine their claims against TUS. Specifically, Plaintiffs cannot accurately plead that TUS issued the Limited Warranty, because the plain language of the Limited Warranty belies that assertion. *Taylor*, 2014 WL 4215440, at *10 (dismissing breach of contract claims *with prejudice* against defendants who were not parties to the contract). Nor can Plaintiffs make out a claim for negligence, because they admit that all of their purported damages constitute economic losses, as opposed to injuries to persons or other property. *Rapid Models & Prototypes, Inc.*, 71 F. Supp. 3d at 507 (dismissing negligence claims *with prejudice* "[b]ecause Plaintiffs seeks to recover in tort for an allegedly defective product and their economic consequences, not for damage to persons or to other

property"). Plaintiffs also cannot salvage their deficient claims for breach of good faith and fair dealing. No alterations to the pleadings can change the fact that TUS did not contract with any Plaintiff, or that Plaintiffs' implied covenant claims wholly duplicate their breach of warranty claims. *Greene*, 2013 WL 5287314, at *4 (dismissing implied covenant claims with prejudice). Finally, Plaintiffs' negligent misrepresentation claim is woefully misplaced, because any purported "feasibility" of repairs is governed by the terms of the TSL Limited Warranty, which provides TSL the sole discretion to choose whether to repair, replace, or partially refund any defective product.

## **CONCLUSION**

For the foregoing reasons, TUS respectfully requests that this Court dismiss all of Plaintiffs' claims against it with prejudice, and without leave to amend.

Dated: February 17, 2025

Respectfully submitted,

s/Ruofei Xiang_____

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
Ruofei Xiang
ruofei@mazzolalindstrom.com
347.280.8432

-and-

JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Richard J. Grabowski (admitted *pro hac vice*)
949.553.7514
rgrabowski@jonesday.com

555 South Flower Street, 50th Floor
Los Angeles, California 90071-2300

David A. Ciarlo (admitted *pro hac vice*)
213.243.2769
dciarlo@jonesday.com

100 High Street, 21st Floor
Boston, Massachusetts 02110-1781
Ryan D. Class (admitted *pro hac vice*)
617.449.6804
rclass@jonesday.com

*Attorneys for TRINA SOLAR (U.S.), INC. and*
*TRINA SOLAR CO., LTD. f/k/a CHANGZHOU*
*TRINA SOLAR ENERGY CO., LTD.*