**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)**

| | | |
|---|---|---|
| **LONGMEADOW ONE SOLAR LLC, et al.** | ) ) ) | **Civil Action No: 3:24-cv-03223-GC-JBD** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **DECLARATION OF RUOFEI XIANG IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| **TRINA SOLAR CO., LTD. et al.,** | ) ) | |
| **Defendants.** | ) ) ) ) ) | |

Ruofei Xiang, being duly sworn, deposes and says:

1. I am an attorney admitted to practice before this Honorable Court, and I am with the law firm Mazzola Lindstrom LLP, attorneys for Trina Solar (U.S.), Inc. ("TUS") and Trina Solar Co. Ltd. ("TSL").

2. I am familiar with the facts, pleadings, and procedural history of this matter. This declaration is made in support of TUS and TSL's respective motions to dismiss Plaintiffs' Second Amended Complaint.

3. Plaintiffs initiated the action on August 11, 2023, later amended on February 14, 2024, in the Superior Court of New Jersey, Mercer County under Docket No. MER-L-1546-23 ("State Court Action").

4. TUS received notice of the State Court Action on February 14, 2024 through service on Trina U.S.'s registered agent.

5. As attested to in an Affidavit of Service filed in the State Court Action on February 15, 2024, Plaintiffs assert that on February 14, 2024, it also purportedly effectuated

service of the Summons and Complaint in the State Court Action upon TSL via TUS's registered

agent.

6.      Annexed hereto as **Exhibit A** is a true and correct copy of the filed Affidavit of

Service.

7.      Defendants removed this action to the United States District Court for the District

of New Jersey on March 15, 2024.

8.      Plaintiffs amended the complaint for the second time on January 6, 2025.

9.      Annexed hereto as **Exhibit B** is a true and correct copy of Plaintiffs' Second

Amended Complaint.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: February 17, 2025

                              Respectfully submitted,


                              **MAZZOLA LINDSTROM LLP**

                              ___*s/ Ruofei Xiang*_____
                              Ruofei Xiang
                              **MAZZOLA LINDSTROM LLP**
                              1350 Avenue of the Americas, 2nd Floor
                              New York, New York 10019
                              Ruofei Xiang
                              347-280-8432
                              ruofei@mazzolalindstrom.com

# EXHIBIT A

## AFFIDAVIT OF SERVICE

| Case:<br>DOCKET NO.: MER-L-1546-23 | Court:<br>SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: LAW DIV | County:<br>MERCER | Job:<br>10451602 (2024-6887) |
|---|---|---|---|

| Plaintiff / Petitioner:<br>LONGMEADOW ONE SOLAR LLC; LONGMEADOW TWO SOLAR LLC; BWAY PLYMOUTH SOLAR LLC; BWAY DY HS SOLAR LLC; SELF STORAGE SOLAR 22 LLC, | Defendant / Respondent:<br>TRINA SOLAR CO., LTD. F/K/A CHANGZHOU TRINA SOLAR ENERGY CO., LTD; TRINA SOLAR (U.S.), Inc., |
|---|---|
| Received by:<br>Rush Intel Services | For:<br>ECKERT SEAMANS CHERIN & MELLOTT, LLC Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007) Karlee M. Martin, Esq. (N.J. Attorney ID No. #240742018) Physical Address: 2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648 Mailing Address: P.O. Box 5404, Princeton, NJ 08543 Telephone: (609) 392-2100 Facsimile: (609) 392-7956 |

| To be served upon:<br>Trina Solar Co., LTD. F/K/A Changzhou Trina Solar Energy Co., Ltd |
|---|

I, Brian Weller, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Trina Solar Co., LTD. F/K/A Changzhou Trina Solar Energy Co., Ltd c/o CT Corporation Systems, Registered Agent, Sarahine Marine , Company: 330 North Brand Boulevard 700, Glendale, CA 91203

**Manner of Service:** Registered Agent, Feb 14, 2024, 12:17 pm PST

**Documents:**
1. Summons;
2. Amended Complaint;
3. Case Information Statement;
4. Track Assignment Notice; and
5. Complaint

### Additional Comments:

1) Successful Attempt: Feb 14, 2024, 12:17 pm PST at Company: 330 North Brand Boulevard 700, Glendale, CA 91203 received by Trina Solar Co., LTD. F/K/A Changzhou Trina Solar Energy Co., Ltd c/o CT Corporation Systems, Registered Agent, Sarahine Marine .

_____          02/16/2024
Brian Weller                              **Date**
2018084386 Los Angeles County

Rush Intel Services
254 N lake Ave Suite 124
PASADENA, CA 91101
6263858662

## AFFIDAVIT OF SERVICE

| Case: DOCKET NO.: MER-L-1546-23 | Court: SUPERIOR COURT OF NEW JERSEY MERCER COUNTY: LAW DIV | County: | Job: 10451602 (2024-6887) |
|---|---|---|---|

| Plaintiff / Petitioner: LONGMEADOW ONE SOLAR LLC; LONGMEADOW TWO SOLAR LLC; BWAY PLYMOUTH SOLAR LLC; BWAY DY HS SOLAR LLC; SELF STORAGE SOLAR 22 LLC, | Defendant / Respondent: TRINA SOLAR CO., LTD. F/K/A CHANGZHOU TRINA SOLAR ENERGY CO., LTD; TRINA SOLAR (U.S.), Inc., |
|---|---|
| **Received by:** Rush Intel Services | **For:** ECKERT SEAMANS CHERIN & MELLOTT, LLC Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007) Karlee M. Martin, Esq. (N.J. Attorney ID No. #240742018) Physical Address: 2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648 Mailing Address: P.O. Box 5404, Princeton, NJ 08543 Telephone: (609) 392-2100 Facsimile: (609) 392-7956 |

| **To be served upon:** Trina Solar (US) Inc |
|---|

I, Brian Weller, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Trina Solar (US) Inc c/o CT Corporation Systems, Registered Agent, Sarahine Marine , Company: 330 North Brand Boulevard 700, Glendale, CA 91203

**Manner of Service:**   Registered Agent, Feb 14, 2024, 12:17 pm PST

**Documents:**
1. Summons;
2. Amended Complaint;
3. Case Information Statement;
4. Track Assignment Notice; and
5. Complaint

**Additional Comments:**

1) Successful Attempt: Feb 14, 2024, 12:17 pm PST at Company: 330 North Brand Boulevard 700, Glendale, CA 91203 received by Trina Solar (US) Inc c/o CT Corporation Systems, Registered Agent, Sarahine Marine .

_____                    02/22/2024
Brian Weller                                        **Date**
2018084386 Los Angeles County

Rush Intel Services
254 N lake Ave Suite 124
PASADENA, CA 91101
6263858662

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LONGMEADOW ONE SOLAR LLC; LONGMEADOW TWO SOLAR LLC; BWAY PLYMOUTH SOLAR LLC; BWAY DY HS SOLAR LLC; SELF STORAGE SOLAR 22 LLC; SELF STORAGE SOLAR 24 LLC; SR SOLAR 1 LLC; SR SOLAR 2 LLC; SR SOLAR 3 LLC;<br><br>Plaintiffs,<br><br>v.<br><br>TRINA SOLAR CO., LTD. F/K/A CHANGZHOU TRINA SOLAR ENERGY CO., LTD; TRINA SOLAR (U.S.), INC.,<br><br>Defendants. | CIVIL ACTION NO.<br>No. 3:24-cv-03223-GC-JBD |

## SECOND AMENDED COMPLAINT

Plaintiffs, Longmeadow One Solar LLC ("Longmeadow 1"), Longmeadow Two Solar LLC ("Longmeadow 2"), Bway Plymouth Solar LLC ("Plymouth North"), Bway DY HS Solar LLC ("DY HS"), Self Storage Solar 22 LLC ("Self Storage 22"), Self Storage Solar 24 LLC ("Self Storage 24"); SR Solar 1 LLC ("SR 1"), SR Solar 2 LLC ("SR 2"), and SR Solar 3 LLC ("SR 3")(collectively, the "Plaintiffs" or the "Systems"), through its counsel, Eckert, Seamans, Cherin & Mellott, LLC, by way of Amended Complaint against Defendants, Trina Solar Energy Co., Ltd. f/k/a Changzhou Trina Solar Energy Co., Ltd. ("Trina Ltd.") and Trina Solar (U.S.), Inc. ("Trina U.S.") (collectively, the "Defendants" or "Trina"), complain and say, as follows:

## THE PARTIES

1.      Longmeadow 1 is a limited liability company organized under the laws of the State of Delaware. Longmeadow 1 owns a solar array system, with the project being located at 40

- 1 -

Cragwood Road, South Plainfield, NJ, Middlesex County. SunRay Power LLC ("SunRay") is the manager of Longmeadow 1.

2.      Longmeadow 2 is a limited liability company organized under the laws of the State of Delaware. Longmeadow 2 owns a solar array system, with the project being located at 188 Summer Street, Kingston, MA, Plymouth County. SunRay is the manager of Longmeadow 2.

3.      Plymouth North is a limited liability company organized under the laws of the State of Delaware. Plymouth North owns a solar array system, with the project being located at 41 Obery Street, Plymouth, MA, Plymouth County. SunRay is the manager of Plymouth North.

4.      DY HS is a limited liability company organized under the laws of the State of Delaware. DY HS owns a solar array system, with the project being located at 210 Station Avenue, South Yarmouth, MA, Barnstable County. SunRay is the manager of DY HS.

5.      Self Storage 22 is a limited liability company organized under the laws of the State of Delaware. Self Storage 22 owns a solar array system, with the project being located at 1 Independence Way, Princeton, NJ, Mercer County. SunRay is the manager of Self Storage 22.

6.      Self Storage 24 is a limited liability company organized under the laws of the State of Delaware. Self Storage 24 owns a solar array system, with the project being located at 175 New Canton Way, Robbinsville, NJ, Mercer County. SunRay is the manager of Self Storage 24.

7.      SR 1 is a limited liability company organized under the laws of the State of Delaware. SR 1 owns a solar array system, with the project being located at 5 Independence Way, Princeton, NJ, Mercer County. SunRay is the manager of SR 1.

8.      SR 2 is a limited liability company organized under the laws of the State of Delaware. SR 2 owns a solar array system, with the project being located at 3 Becker Farm Road, Roseland, NJ, Essex County. SunRay is the manager of SR 2.

115229117.1

9.      SR 3 is a limited liability company organized under the laws of the State of Delaware. SR 3 owns a solar array system, with the project being located at 305 Mount Hope Ave., Rockaway, NJ, Morris County. SunRay is the manager of SR 3.

10.     Defendant Trina Ltd. is a foreign corporate entity organized and existing under the laws of China, having a principal place of business at No. 2 Tianhe Road, Trina PV Industrial Park, Xinbei District, Jiangsu Province 213031, China.[1]

11.     Defendant, Trina U.S. is a corporate entity with an address of 7100 Stevenson Blvd., Fremont, California 94538.

## JURISDICTION AND VENUE

12.     For purposes of diversity, Trina U.S. is a citizen of, and domiciled in, the States of Delaware and California; Trina Ltd. is a foreign corporation, without any lawful permanent residence or domicile in any of the United States; and Plaintiffs are each limited liability companies organized under the laws of the State of Delaware, with operations located in the Commonwealth of Massachusetts and the State of New Jersey. Plaintiffs do not have any members that are citizens of Delaware or California. Complete diversity exists between the parties.

13.     This Court may maintain personal jurisdiction over Defendants because this action relates to Defendants' contacts within the State of New Jersey specific to the Systems in that this

---

[1] On February 14, 2024, Plaintiffs' First Amended Complaint was served on Trina Ltd.'s agents in California and New Jersey. Affidavits of service were filed while this matter was still pending in state court. (*See* Affidavits of Service at ECF 1-1, p. 62. And 150). Of note, in *1985 Rutgers Solar LLC v. TSL and TUS*, Civil Action No: 22-cv-6689-MAS-TJB (State Court Docket: MON-L-2122-22), another matter involving Defendants in this district, Trina Ltd.'s registered agent was served at the same address in California as done by Plaintiffs here. Additionally, in *Apex Nevada Solar, LLC v. Changzhou Trina Solar Energy Co., Ltd*, Case No. 1:22-cv-03241-AT, the plaintiff filed a motion to serve process on Trina Ltd. by alternative means. (ECF No. 18). Once counsel for Trina Ltd appeared, the Court required a joint letter be submitted with respect to service of process. (ECF No. 24). Trina Ltd's counsel ultimately accepted service of process following the court-required meet and confer. (ECF No. 25).

matter involves an alleged breach of warranty by the Defendants as to parts of the Systems.  Moreover, on information and belief, Defendants have conducted business in this District, purposely availing themselves of the benefits of doing business in the State of New Jersey.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

15.     Venue properly lies in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## **FACTS**

16.     This case is brought by virtue of Defendants' failure to fulfill its warranty obligations. As articulated below, nearly a year after Plaintiffs received power declines to five of their solar array systems listed below, Defendants attempted to rewrite the warranty and fabricated a theory to replace the solar modules installed at the above sites in contradiction of the existing warranty.

17.     SunRay is the manager of nine solar array systems, identified as projects Longmeadow 1, Longmeadow 2, Plymouth North, DY HS, Self Storage 22, Self Storage 24, SR 1, SR 2, and SR 3.

18.     In April of 2014 and March of 2015, SunRay's contractor, G&S Solar Installers, LLC ("G&S"), purchased, on behalf of Plaintiffs, solar modules, with connectors and other parts, for the Systems from Trina U.S. at a total cost of $1,697,404 (the "Modules").  Plaintiffs also expended significant costs to contractors associated with the Modules. Copies of the relevant sales orders are collectively attached as **Exhibit "A."**

19.     Along with this purchase, the Modules were covered by "an industry-leading 25-year lifetime warranty" which was issued by Trina Ltd.  *See* https://www.trinasolar.com/au/our-company/quality.  A copy of this warranty is attached as **Exhibit "B."**

115229117.1

20.    Additionally, the Modules were covered by a ten-year warranty affirming that the Modules would be "free from defects in design, material, workmanship or manufacture." **Exhibit "B,"** Limited Warranty at p. 2.

21.    Trina Ltd.'s warranty requires all warranty claims to be submitted to Trina U.S. **Exhibit "B,"** at p. 5.

22.    The Modules were a significant part of the Systems as the primary components of a solar array system are the modules, inverters, and racking system.

23.    On or about August 12, 2022, SunRay received an alert that production of power to one of the Systems (DY HS), rapidly declined.

24.    Subsequent to that initial notification, in August of 2022, SunRay received further notifications that power had rapidly declined with respect to the Longmeadow 1, Longmeadow 2, Plymouth North, Self Storage 22 Systems, (the "Initial Systems").

25.    Thereafter, shortly prior to the middle of November 2024, and while claims were already filed against Trina related to the Initial Systems, SunRay received notifications that power had rapidly declined with respect to the Self Storage 24, SR 1, SR 2, and SR 3 Systems (the "Remaining Systems").

26.    After investigation, SunRay discovered that the cause of the rapid declines in power to the Initial Systems were defects in the Modules that were purchased from Defendants in April of 2014 and March of 2015.  Specifically, there was both fine-type and linear-type cracking in the Modules caused by (i) Backsheet Cracking; and (ii) Busbar Corrosion.  After a notification of a decline in power was received as to the Remaining Systems, Plaintiffs discovered that similar issues occurred as to the Trina modules installed on the Remaining Systems.

115229117.1

27.     The declines in power to the Systems caused by defects in the Modules resulted in physical damage to products other than the Modules, including corrosion, loss of function, and damage to the Systems' inverters, and racking system.[2]   Exemplar photographs showing the physical damage are attached as **Exhibit "C."**

28.     After discovering the cause of the rapid declines in power, and pursuant to Trina Ltd.'s warrant, SunRay submitted warranty claims to Trina U.S., which can be represented in the following chart:

| Claim | Project |
|---|---|
| R20220929024C | Longmeadow 2 |
| R20230208029C | DY HS |
| R20230208030C | Plymouth North |
| R20230224021C | Longmeadow 1 |
| R20230914031C | Self Storage 22 |
| R20241114033C | Self Storage 24 |
| R20241115016C | SR 1 |
| R20241114031C | SR 2 |
| R20241114030C | SR 3 |

29.     Pursuant to the terms of Trina Ltd.'s warranty, Trina U.S. acts on behalf of Trina Ltd. in handling the subject warranty claims. **Exhibit 'B,"** at p. 5. As such, both Trina Ltd. and Trina U.S. have adequate notice to defend this lawsuit and to identify the nature of Plaintiffs' claims.[3]

---

[2] The New Jersey Supreme Court has recognized, multiple times, that conduct resulting in physical harm to property is the type of behavior that subjects an actor to tort liability. *See e.g., Dean v. Barrett Homes, Inc*., 204 N.J. 286, 295 (2010); *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 318 (2002); *People Express Airlines v. Consol. Rail Corp*., 100 N.J. 246, 251 (1985).

[3] Plaintiffs, at times, collectively refer to Trina Ltd. and Trina U.S. as "Defendants." Such reference does not constitute impermissible group pleading. *Sheeran v. Blyth Shipholding S.A.,* Civ. A. No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (finding that while defendants were grouped together in the complaint, such grouping did not constitute an "impermissible group pleading" where the exact relationship between a corporate entity and an agent could not be ascertained by a plaintiff before discovery "but c[ould] easily be explored in discovery"); *see also D. W. by Renaud v. N.J. Div. of Child Prot. & Permanency*, No. 21-15789, 2023 WL 3626266, at *5 (D.N.J. May 24, 2023) (finding

Defendants subjected SunRay to an overly detailed investigation into its warranty claims. This detailed investigation caused an unreasonable delay and expense in the disposition of SunRay's claims.

30.     For example, Defendants, as part of SunRay's warranty claims, would require that SunRay submit hundreds of unnecessary photographs time and again.

31.     Trina Ltd.'s warranty provides that Trina Ltd. must elect one of three remedies with respect to claims:

> 5) Repair, Replacement or Refund Remedy
>
> a)  As [Plaintiffs'] sole and exclusive remedy under this Limited Warranty (though [Plaintiffs] should note paragraph 5(d) below regarding the potential existence of other statutory rights), **[Trina Ltd.] will, in its sole discretion**, either, with regard to the applicable Product (or component thereof in the case of Mounting Product):
>
>> i)    refund the historical purchase price of the relevant Product(s) annually reduced by a linear depreciation, taking into account an anticipated life time of 25 years; or
>> ii)   repair the defective Product(s) at no charge (subject to the following paragraph); or
>> iii)  replace the defective Product(s) or part thereof by a **new or remanufactured equivalent** at no charge (subject of the following paragraph). [**Exhibit "B,"** ¶ 5, at p. 3] [Emphasis added.]

32.     After much delay and expense, Defendants finally responded to SunRay's warranty claims with a proposal on June 19, 2023 suggesting that the manufacturer could replace the defective parts by providing 410W DE15M(II) modules or DD09M5C modules. Trina did not indicate that it was making a formal election under its warranty obligations owed to Plaintiffs.

---

that while plaintiff did at times summarily refer to defendants the court could still rely on "group pleadings that inferentially implicate" individual defendants such that the individual defendants "are on notice of the allegations against them").

33.    On July 11, 2023, SunRay advised Defendants that neither proposed replacement would be a "new or remanufactured equivalent" of what was originally installed.  For the DD09M5C module, it was a completely different module which is incompatible with the existing system and, would essentially require a complete reconstruction of the system, a very expensive endeavor. SunRay has already received an estimated cost of $1,049,887 to complete the necessary replacement and racking work with respect to DY HS. Similar costs on a per watt bases would apply to all Systems. A copy of the engineering quotes and report is attached as **Exhibit "D."**

34.    As to the DE15M(II) module, it would also require extensive work to the racking system because there are significant differences between this replacement module and the defective ones.  SunRay has already received estimated costs of up to $250,000.00 to complete the necessary racking work with respect to DY HS and expects that these costs will only rise because updated electrical permitting may be necessary and additional components of the Systems may also need to be replaced to accommodate the DE15M9(II) module. Similar costs on a per watt basis would apply to all the Systems.

35.    On July 31, 2023, through counsel, SunRay demanded that Defendants provide alternative options.  A copy of this letter demand is attached as **Exhibit "E."**

36.    Despite being previously advised that the replacements modules offered as part of Trina's prior "proposal" were not equivalent to what was originally installed, on August 14, 2023, Trina notified Plaintiffs that it was electing, under the warranty, to offer the replacement modules above, concluding that the modules offered satisfied the requirement under the warranty of a "new or remanufactured equivalent" of the damaged modules.  **Exhibit "F,"** Aug. 14, 2023 Letter.

37.    On August 23, 2023, SunRay, through counsel, disputed that Defendants satisfied their warranty obligations. SunRay reiterated that the alternative modules offered are not equivalent to the

modules originally installed, that the cash compensation was inadequate to address the problems created by the defective products, and awaiting actual replacements until sometime in "early 2024" was nothing more than a vague promise. A copy of this letter is attached as **Exhibit "G."**

38.    SunRay requested Defendants specify a particular delivery date for the actual replacement modules. **Id. at p. 2.**

39.    On August 30, 2023, Defendants, through counsel, again offered to replace the defective parts by providing SunRay with the DD09M5C module—a module that Defendants knew was incompatible and non-equivalent to what was installed on the Initial Systems.   A copy of this letter is attached as **Exhibit "H."**

40.    During September 2023 through December 2024, Plaintiffs and Defendants attempted to resolve their dispute.

41.    At Defendants' request, SunRay obtained quotes from its engineer to replace the defective modules with the incompatible modules being offered by Defendant.

42.    For the DY HS System, replacement of the defective Modules with the incompatible DD09M5C module offered by Defendants would cost $1,049,887. However, if Defendants were to provide SunRay with equivalent replacement modules for the DY HS System, the replacement cost would be $449,587.  A copy of the engineering quotes and report are attached as **Exhibit "D."**

43.    Additionally, Plaintiffs inquired about the repair option early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for Trina U.S.'s North America region, represented that the Modules installed could not be repaired.

44.    Despite Mr. Rowland's representation, Plaintiffs have identified and utilized a vendor whose business model is to repair the Modules.  Plaintiffs delayed in seeking a vendor to retain to address this issue for more than thirteen months based upon Mr. Rowland's representation about the

condition of the Modules.  A copy of the Statement of Work and Invoices are attached as **Exhibit "I."**

45.     Plaintiffs are currently exploring completing repairs themselves, at this point, as to the Initial Systems and Remaining Systems. If Plaintiffs are forced to complete the repairs themselves, then Defendants will be responsible for the full cost of all repair work done, plus the value difference between what they have received for the last two-plus years and what they would have received had fully functioning modules.[4]

46.     At this juncture, it has been over two years since SunRay first experienced a decline in power related to issues with the Modules as to the Initial Systems.  This delay is directly attributable to Defendants' slow response to the claims process, failure to provide alternatives that work for Plaintiffs for the existing systems, failure to timely elect a remedy pursuant to the terms of the warranty in Trina's discretion, and/or making an election under their warranty that they know would fail to present an equivalent to what is currently installed.

47.     Without the Modules fully operating, the Systems do not fully function, do not fully generate power, and have caused a loss of substantial revenue for Plaintiffs.

48.     Also, because of Defendants' failure to provide alternative solutions, the remedies afforded under Trina's warranty have failed their essential purpose because Plaintiffs are no longer able to fully generate power from the Systems and it has been over a two years and eight months since Plaintiffs first witnessed the decline in power to the first set of Systems.  *See N.J.S.A.* § 12A:2-719.

---

[4] *See Kearney & Trecker Corp. v. Master Engraving Co.,* 107 N.J. 584, 595 (1987) (stating that "[t]he commonly-applied formula to compute a buyer's damages for breach of any warranty, including the repair or replacement warranty, is the difference between the value of the goods accepted and the value they would have had if they had been as warranted"); *see also,* N.J.S.A. § 12A:2-714(3) (indicating that a buyer can recover incidental damages).

115229117.1

49.    Despite the passage of time and Plaintiffs' compliance with Defendants' lengthy and expensive claims process, Plaintiffs do not have fully functioning modules for the Systems and the Systems continue to operate far below the expected production.

50.    Plaintiffs are not the only customer of Trina who has experienced cracking patterns on backsheets manufactured by Trina.  On August 4, 2022, a company identified as 1985 Rutgers Solar, LLC filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County, alleging similar issues with cracking patterns as SunRay here. **See Exhibit "J,"** 1985 Rutgers' Complaint at ¶ 27.

51.    In their prior complaint (filed before SunRay experienced a loss), 1985 Rutgers alleges that it observed "the form of cracking patterns that had developed on the backsheet material, burn marks visible from the front and back, and corroded metallic connections visible from the front of the modules." *Id.* at ¶ 27.

52.    Similar to SunRay, 1985 Rutgers also experienced substantial delays in the processing of their warranty claims due to laborious requests from Defendants. (*Id.* at ¶¶ 30 – 44.

53.    On January 13, 2023, Defendants filed an answer to the complaint filed by 1985 Rutgers and this separate action remains pending.  **See Exhibit "K,"** Answer.

54.    Like 1985 Rutgers, the cash compensation offered to Plaintiffs would have resulted in roughly twenty percent of its warranty claims being honored.

55.    Besides being low, the cash compensation offered would still defeat the purpose of the warranty because, despite substantial effort, replacements modules could not be located from another vendor as there was, and remains, a shortage of used modules of the kind installed on the systems above in the marketplace for purchase.  Thus, in relation to cash compensation, if this option were

- 11 -

actually elected by Trina during the claims process, Plaintiffs would have received meaningless cash because they would not be able to acquire equivalent replacement modules on the open market.

56.   As of today, Plaintiffs have not been presented a workable solution for its warranty claims and all the the systems identified above are significantly underproducing.

57.   As a result, Plaintiffs and SunRay have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**COUNT ONE**

**BREACH OF WARRANTY VS. DEFENDANTS**

58.   Plaintiffs incorporate the allegations outlined above, as if stated here at length.

59.   Trina entered into an agreement with Plaintiffs to provide functional solar panel systems to Plaintiffs, and warranty protection in the event of a defect with those solar panel systems.

60.   By its express terms, Trina's warranty provides that they "will" make an election of three potential responses in relation to a warranty claim submitted by Plaintiffs.

61.   The options available to Trina include to "replace the defective Product(s) or part thereof by a **new or remanufactured equivalent** at no charge." (**Exhibit "B,"** ¶ 5, at p. 3)(Emphasis added).

62.   The solar panel systems provided by Trina U.S. did not work as intended and Plaintiffs have experienced a loss in power production to all the systems identified above.

63.   Defendants failed to perform under the warranty issued and have offered replacement modules to Plaintiffs that Trina knows are not equivalents of what are currently installed on the systems identified above.

- 12 -

64.    To the extent that Trina would argue that its communications to Plaintiffs do not constitute an election under their warranty, then Trina would have separately breached their warranty obligations due to a failure to exercise the discretion granted to them under their warranty, especially given that two years and eight months having elapsed since Plaintiffs first notified a power decline in any of the systems noted above.

65.    Trina's actions constitute a breach under their warranty because they either have: (1) expressly breached the terms of their warranty in failing to provide a "new or remanufactured equivalent" under section 5(a)(iii) of their warranty; or (2) failed to make any election under their warranty at all and, instead, making a serious of untenable "proposals" to Plaintiffs outlined above.

66.    As a result and direct proximate cause of Trina's conduct, Plaintiffs have been damaged and sustained a total loss of the Modules with a value of up to $1,697,404, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs; (b) a finding that Plaintiffs have been damaged in the amount of $1,618,802.40 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

115229117.1

## COUNT TWO

## NEGLIGENCE VS. DEFENDANTS

67.     Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

68.     Defendants had a duty to provide functional solar panel systems to Plaintiffs.

69.     The solar panel systems provided by Defendants did not work as intended due to a manufacturing or other defect that resulted in, among other problems, backsheet cracking.

70.     Defendants already have one case pending in New Jersey relating to these same defects.  (**Exhibit "J,"** Complaint); (**Exhibit "K,"** Answer).

71.     That case was filed prior to Plaintiffs' power losses.  Therefore, Defendants were aware of these problems prior to Plaintiffs' power losses.

72.     Because of Defendants' breach, Plaintiffs have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs; (b) a finding that Plaintiffs have been damaged in the amount of $1,697,404 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

115229117.1

## COUNT THREE

## BREACH OF GOOD FAITH AND FAIR DEALING VS. DEFENDANTS

73.    Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

74.    Trina entered into an agreement with Plaintiffs to provide functional solar panel systems to Plaintiffs, and warranty protection in the event of a defect with those solar panel systems.

75.    As a result of Defendants' actions and inactions listed above and the types of issues identified in the complaint filed by 1985 Rutgers, Defendants breached the covenant of good faith and fair dealing by subjecting Plaintiffs to an unnecessarily long claims process which end result was potential resolutions that were not viable for the Systems.  This detailed investigation caused an unreasonable delay and expense in the disposition of Plaintiffs' claims.

76.    Further, Defendants breached the covenant of good faith and fair dealing by attempting to rewrite the warranty's terms and wrongly exercising discretion granting to them under the warranty by electing to replace the modules currently installed on the systems identified above with modules that were not equivalents of what was currently installed on those systems.

77.    At the time that Trina made this election on August 14, 2023, Trina knew that the modules that they were offering were not an equivalent.  Plaintiffs' evidence related to the fact that the modules being offered were not equivalents included a report from a solar engineering firm explaining the differences between the modules being offered as replacements and those already installed on the systems.  (*Exhibit "D,"* Engineering Report).

78.    By electing to provide Plaintiffs modules that Trina knew were not equivalents to those currently installed, Trina acted in a manner to destroy or injury Plaintiffs' expected fruits of Trina's warranty because Plaintiffs would not receive what was intended under that warranty (equivalent

- 15 -

modules) and Trina knew, at the time that they made their election to provide replacement modules, that those being offered were not equivalent to what was installed.

79.    Trina's conduct was done with malice or bad faith because Trina was knowingly offering incompatible and non-equivalent modules to resolve Plaintiffs' longstanding warranty claims, some of which the power loss was initially experienced back in August of 2022, and conducting itself as if Plaintiffs had to accept non-equivalent modules.

80.    Alternatively, in the event that Trina argues that it did not make an election of remedies under their warranty, Trina's failure to make an election is, in and of itself, a breach of the terms of their warranty and the covenant of good faith and fair dealing.  Under that warranty, Trina is provided the discretion to make an election of the remedy to be afforded to Plaintiffs.  Trina must exercise that discretion in good faith and offering non-equivalent modules is, *per se* not good faith conduct.

81.    If Trina does not view its August 14, 2023 letter as an election, then Trina has never actually made an election under its warranty.  Trina's failure to make an election despite the passage of two years and eight months after Plaintiffs first experienced a power loss on one of their systems would, in and of itself, be evidence of bad faith and malice because Trina's discretion to elect a remedy under their warranty is not limitless.  *See Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 250 (2001)(stating that "the discretion afforded to Hess is not unbridled discretion" and "Hess's performance under the contract is tempered by the implied covenant of good faith and fair dealing and the reasonable expectations of the parties").  A failure to act is, therefore, also a violation of the covenant of good faith and fair dealing.

82.    By yet further alternative pleading, should Trina argue that its August 14, 2023 was not an election and just offering alternative proposals to Plaintiffs, such a position by Trina would also violate the covenant of good faith and fair dealing and the terms of Trina's warranty.  The word

- 16 -

"or" is noted after the first and second options available to Trina under their warranty to address Plaintiffs' claims. Because of the presence of the word "or" at these locations, Trina is required to view the listed options as a menu from which it can select only one. Trina cannot properly exercise the discretion granted to it under their warranty by submitting an endless number of alternative "proposals" to Plaintiffs, none of which resolve Plaintiffs' claims. At some point, Trina must make an election. Trina's failure to make such an election would be a further breach of the covenant of good faith and fair dealing.

83.     As a result and direct proximate cause of Trina's conduct, Plaintiffs have been damaged and sustained a total loss of the Modules with a value of up to $1,697,404, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Defendants have breached a contract with Plaintiffs and SunRay; (b) a finding that Plaintiffs have been damaged in the amount of $1,697,404 in relation to this breach; (c) a finding that Plaintiffs have been damaged in the amount of costs expended to contractors for the Modules; (d) a finding that Plaintiffs have been damaged in the amount of costs for redesigning the existing racking to accommodate replacement modules; (e) for the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the Modules, and fees and costs for redesigning the existing racking of replacement modules; (f) for an award of attorneys' fees and costs incurred in pursing this action; and (g) the award of any other relief that the Court deems just and equitable under the circumstances.

115229117.1

## COUNT FOUR

## NEGLIGENT MISREPRESENTATION VS. TRINA U.S.

84.     Plaintiffs incorporate, by reference, the allegations above, as if stated here at length.

85.     Plaintiffs inquired about the repair option early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for Trina U.S.'s North America region, represented that repairing the Modules was not feasible.

86.     Mr. Rowland is an employee, agent and/or representative of Trina U.S., as evidenced by the signature block on his e-mails.  It is within the scope of Mr. Rowland's responsibilities to evaluate warranty claims and communicate information about those claims to persons in a position like Plaintiffs.

87.     The information provided by Mr. Rowland was false because there exists a vendor who has provided invoices and estimates for repairing the systems. A copy of the Statement of Work and Invoices from this vendor are attached as **Exhibit "I."**

88.     Plaintiffs reasonably relied on Trina U.S.'s representation that the Modules were not repairable as Trina U.S. is the warranty servicer for Trina Ltd. and had Plaintiffs known that a repair of the Systems was even plausible, they would have inquired further with Trina U.S. about accepting cash compensation and pursuing repairs utilizing that cash.  Plaintiffs declined to pursue this potential avenue because of Mr. Rowland's false information that the Modules were not repairable.

89.     In July of 2024, more than thirteen months after Mr. Rowland provided false information, Plaintiffs identified a vendor who is willing to repair the Modules. A copy of the Statement of Work and Invoices from this vendor are attached as **Exhibit "I."**

90.     Plaintiffs were accordingly damaged by relying on Trina U.S.'s representation that the Modules were not repairable.

115229117.1

91.     Mr. Rowland's provision of false information has proximately caused Plaintiffs substantial damages, including lost production for the thirteen months that Plaintiffs believed that repairs were not potential or at all feasible.

**WHEREFORE**, Plaintiffs demand judgment, as follows: (a) a finding that Plaintiffs have been damaged in the amount of $1,697,404; (b) a finding that Plaintiffs have been damaged in an amount to compensate for lost production, with such amount being determined at trial; (c) for an award of attorneys' fees and costs incurred in pursing this action; and (d) the award of any other relief that the Court deems just and equitable under the circumstances.

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**
*Attorneys for Plaintiffs*

By:     /s/ Nicholas M. Gaunce

Nicholas M. Gaunce, Esq.
NJ Id. No. 012032007
2000 Lenox Drive, Suite 203
Lawrenceville, New Jersey 08648
609.392.2100
E-mail: ngaunce@eckertseamans.com

Karlee M. Martin, Esquire
NJ Id. No. 240742018
2000 Lenox Drive, Suite 203
Lawrenceville, New Jersey 08648
609.392.2100
E-mail: kmartin@eckertseamans.com

Dated: January 6, 2025

- 19 -

# EXHIBIT "A"

**Trina Solar (U.S) Inc.**
**100 Century Center Court, Suite 501,**
**San Jose,CA 95112**
**Tel:+1-800-696-7144**
**Fax:+1-800-696-0166**

# Sales Order(SO)

**Date of SO:** 2014-04-15
**SO NO:** TUS-A11044-1404-XSI-12084-0
**Ref.PO or Contract NO:** MA-001 (Referencing to 4/10/14 agreement)

G&S Solar Installers LLC
60 E. Rio Salado Pkwy #900, Tempe, AZ 85281
**Tel:**
**Fax:**

**Port of Loading:**                                    **Receiving address:** Pick up from 865 W Amity Rd, Boise, ID 83705.
**Terms of shipment:** BY SEA                           **Port of Destination:**

| | Description of goods | | | Packaging | Quantity Watt | Price/Watt USD | Amount USD |
|---|---|---|---|---|---|---|---|
| 1. | TSM-280PA14 | 17920PC | Utility Scale Solar Module, polycrystalline, 72 cells, MC4 connector, system voltage 600V, 46mm frame,1 | | 5017600 | 0.580 | 2,910,208.000 |
| | **Sales Tax:** % | | | | | | 0.00 |
| | **Freight :** | | | | | | 0.00 |
| | **TOTAL:** | | **Incoterms EXW** | | | | **2,910,208.000** |

**SAY TOTAL US DOLLAR TWO MILLION NINE HUNDRED TEN THOUSAND TWO HUNDRED EIGHT**

**Payment terms:** 100% prepayment

**Date of Shipment:**      Pick up start on 4/21/14
**Date of Delivery:**

This Sales Order is issued pursuant to the contract or Purchase Order referenced above.

# Hudson Renewables LLC
# 2705 Main Street
# Lawrence, NJ 08648

INVOICE 031415-GS-TR-10A

---

March 14, 2015

**To**

GS SOLAR

Attn:  Gary Dragona

---

Products:

(a)  5,600 pieces of Trina TSM 285 PA14 Poly c-Si Solar Panels
  25 Year Manufacturer's Warranty (from December 2011)
1,568,000 Watts at $0.62/watt --- **$972,160.00**
EXW Danbury, CT or MA Warehouse
Consists of 280 Pallets of 20 Pieces Each

(b)  560 pieces of Trina TSM 290 PA14 Poly c-Si Solar Panels
   25 Year Manufacturer's Warranty (from December 2011)
162,400 Watts at $0.62/watt --- **$100,688.00**
EXW Danbury, CT or MA Warehouse
Consists of 28 Pallets of 20 Pieces Each

(c) 40 pieces of Trina TSM 280 PA14 Poly c-Si Solar Panels
   25 Year Manufacturer's Warranty (from December 2011)
11,200 Watts at $0.62/watt --- **$6,944.00**
EXW Danbury, CT or MA Warehouse
Consists of 2 Pallets of 20 Pieces Each

**TOTAL DUE FOR PRODUCTS:  1, 079,792.00**

TERMS OF SALE:

The Products have been transported by the Buyer to its warehouses in NJ.
Payment in full is due on or before March 27, 2015.

PLEASE WIRE PAYMENT AS FOLLOWS:

HUDSON RENEWABLES LLC
Wells Fargo Bank
ABA NO. 121000248
SWIFT CODE WFBIUS6S
ACCT NO. 1385248479
2705 MAIN STREET
LAWRENCE, NJ 08648

THANK YOU FOR YOUR BUSINESS!

# EXHIBIT "B"

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES
PS-M-0020  Rev. M  Nov. 29th, 2011

### Limited Warranty

Changzhou Trina Solar Energy Co., Ltd ("Trina Solar") hereby grants the following Limited Warranty to the first customer installing (for its own use) (the "Buyer") any of the specified (and no other) brand models of

(i)    solar photovoltaic modules including factory assembled junction box and cables, and

(ii)   mounting products including factory assembled basic hardware  if any,

listed below (the "Products"):

1) **Warranted Products**

This Limited Warranty shall only apply to the following Products:

a) **Polycrystalline Products**

TSM-***PA03;  TSM-***PA05,  TSM-***PA05.05,  TSM-***PA05.08;  TSM-***PA05A,  TSM-***PA05A.05,  TSM-***PA05A.08;  TSM-***PA14;  TSM-***PA14A;  TSM-***PA05.10,  TSM-***PA05.15,  TSM-***PA05.18,  TSM-***PA05A.10,  TSM-***PA05A.15,  TSM-***PA05A.18;  TSM-***PA05.20,  TSM-***PA05.25,  TSM-***PA05.28,  TSM-***PA05A.20,  TSM-***PA05A.25,  TSM-***PA05A.28;

TSM-***PC03; TSM-***PC05, TSM-***PC05.01, TSM-***PC05.05, TSM-***PC05.08; TSM-***PC05A, TSM-***PC05A.05,  TSM-***PC05A.08;  TSM-***PC14;  TSM-***PC14A;  TSM-***PC05.10,  TSM-***PC05.15,  TSM-***PC05.18,  TSM-***PC05A.10,  TSM-***PC05A.15,  TSM-***PC05A.18;  TSM-***PC05.20,  TSM-***PC05.25,  TSM-***PC05.28,  TSM-***PC05A.20,  TSM-***PC05A.25,  TSM-***PC05A.28.

b) **Monocrystalline Products**

TSM-***DA01,  TSM-***DA01.05;  TSM-***DA01A,  TSM-***DA01A.05,  TSM-***DA01A.08;  TSM-***DA03;  TSM-***DA05;  TSM-***DA80,  TSM-***DA80.08;  TSM-***DA01A.10,  TM-***DA01A.15,  TSM-***DA01A.18; TSM-DA01A.20, TSM-DA01A.25, TSM-DA01A.28;

TSM-***DC01,  TSM-***DC01.01,  TSM-***DC01.05;  TSM-***DC01A,  TSM-***DC01A.05,  TSM-DC01A.08;  TSM-***DC03;  TSM-***DC05;  TSM-***DC80,  TSM-***DC80.08;  TSM-***DC01A.10,  TSM-***DC01A.15, TSM-***DC01A.18; TSM-DC01A.20, TSM-DC01A.25, TSM-DC01A.28.

Address: No.2 Trina Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, P.R. China, 213031
http：//www.trinasolar.com   E-mail：sales@trinasolar.com  Tel: 0086-519-85485801, Fax: 0086-519-85485936

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES

PS-M-0020  Rev. M  Nov. 29th, 2011

TSM-***DC37, TSM-***DC39, TSM-***DC41-L, TSM-***DC41-R, TSM-***DC43-L, TSM-***DC43-R, TSM-***DC45-L, TSM-***DC45-R, TSR-***DC51, TSR-***DC52, TSR-***DC53, TSR-***DC54, TSR-***DC55

Note: The "***" placeholder stands in each case for the power indication set out in the relevant Product Data Sheet (for example "TSM-220PC05").

**c)   Mounting Products**

Mounting products contained in Trinamount I, Trinamount II and Trinamount III.  Applicable modules are set forth above in a) and b).

**2)   Warranty**

**a)   10 Year Limited Product Warranty**
Trina Solar warrants that for a period of ten years commencing on the Warranty Start Date (as defined below) the Product(s)
- will be free from defects in design, material, workmanship or manufacture that materially impede their functioning, and
- will conform to the specifications and the drawings applicable thereto.

Any deterioration in appearance of the product (including any scratches, stains, mechanical wear, rust, or mold), or any other changes to the product which occur after delivery to the Buyer, do not constitute a defect under this warranty unless it materially impairs the product's functioning. A claim in the event of glass breakage arises only to the extent that there was no external cause of the breakage.

**b)   25 Year Limited Power Output Warranty**
In addition, Trina Solar warrants that for a period of twenty-five years commencing on the Warranty Start Date loss of power output of the nominal power output specified in the relevant Product Data Sheet and measured at Standard Test Conditions (STC) for the Product(s) shall not exceed

- For Polycrystalline Products (as defined in Sec. 1 a): 2.5 % in the first year, thereafter 0.7% per year, ending with 80.7% in the 25th year after the Warranty Start Date,

- For Monocrystalline Products (as defined in Sec. 1 b): 3.5 % in the first year, thereafter 0.68% per year, ending with 80.18% in the 25th year after the Warranty Start Date.

**3)   Warranty Start Date**
The Warranty Start Date is the date of delivery of the Product(s) to the Buyer or 12 months after the date of Product(s) dispatch from Trina Solar sites, whichever date is earlier.

Address: No.2 Trina Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, P.R. China, 213031
http：//www.trinasolar.com   E-mail：sales@trinasolar.com  Tel: 0086-519-85485801, Fax: 0086-519-85485936

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES

PS-M-0020  Rev. M  Nov. 29th, 2011

**4)  Exclusions and Limitations**

The aforementioned "Limited Warranty" does not apply to any Products which have been subjected to

a)  Modification, customer repair, misuse, abuse, neglect or accident;

b)  Failure to comply with Trina Solar's installation manual;

c)  Service by service technicians who are not qualified under the relevant law and/or applicable regulations at the place of installation;

d)  the Product's type, nameplate or module serial number is changed, erased or made illegible (other than by any act or omission of Trina Solar);

e)  the Product's installation in a mobile device (except photovoltaic tracking system) or marine environment;

f)  exposure to improper voltage or power surges or abnormal environmental conditions (such as acid rain or other pollution);

g)  defective components in the construction on which the module is mounted;

h)  exposure to mold discoloration or similar external effects;

i)  exposure to any of the following: extreme thermal or environmental conditions or rapid changes in such conditions, corrosion, oxidation, unauthorized modifications or connections, unauthorized opening, servicing by use of unauthorized spare parts, accident, force of nature (such as lightning strike, earthquake), influence from chemical products or other acts beyond Trina Solar's reasonable control (including damage by fire, flood, etc.)

j)  use of the Products in such a manner as to infringe Trina Solar`s or any third party`s intellectual property rights (e.g. patents, trademarks).

**5)  Repair, Replacement or Refund Remedy**

a)  As Buyer's sole and exclusive remedy under this Limited Warranty (though Buyers should note paragraph 5(d) below regarding the potential existence of other statutory rights), Trina Solar will, in its sole discretion, either, with regard to the applicable Product (or component thereof in the case of Mounting Product):

i)  refund the historical purchase price of the relevant Product(s) annually reduced by a linear depreciation, taking into account an anticipated life time of 25 years; or

ii)  repair the defective Product(s) at no charge (subject to the following paragraph); or

iii)  replace the defective Product(s) or part thereof by a new or remanufactured equivalent at no charge (subject to the following paragraph).

In the event that Trina Solar opts for options ii) or iii), Trina Solar shall bear all insurance and transportation charges (except air freight), customs clearance and any other costs for returning the defective Product(s) to Trina Solar and shipping the repaired or replaced Product(s) to Buyer (a Buyer may claim reimbursement by Trina for these charges by contacting Trina and providing proof to Trina Solar that these charges were incurred, e.g. an invoice from the relevant service provider). The costs and expenses for their removal, installation or reinstallation shall remain with Buyer.

b)  The warranty period(s) as defined in Sec. 2 a) and b) shall not extend or renew upon the repair or replacement of a defective Product by Trina Solar. The warranty period for replaced or repaired Product(s) is the remainder of the warranty on the original new Product(s).

Address: No.2 Trina Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, P.R. China, 213031
http：//www.trinasolar.com  E-mail：sales@trinasolar.com  Tel: 0086-519-85485801, Fax: 0086-519-85485936

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES
PS-M-0020  Rev. M  Nov. 29th, 2011

c)  All other claims under this Limited Warranty against Trina Solar shall be excluded. Under this Limited Warranty, Trina Solar is not responsible for any special, incidental or consequential damages (including loss of profits, harm to goodwill or business reputation, or delay damages) whether such claims are based in contract, warranty, negligence or strict tort.  This exclusion applies to the extent permissible by law, and even if the remedies set forth below herein are deemed to have failed of their essential purpose.

d)  YOU MAY HAVE SPECIFIC LEGAL RIGHTS OUTSIDE THIS WARRANTY, AND YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE. THIS LIMITED WARRANTY DOES NOT AFFECT AND ADDITIONAL RIGHTS YOU HAVE UNDER LAWS IN YOUR JURISDICTION GOVERNING THE SALE OF CONSUMER GOODS, INCLUDING WITHOUT LIMITATION, NATIONAL LAWS IMPLEMENTING EC DIRECTIVE 99/44 OR PURSUANT TO THE MAGNUSON MOSS WARRANTY ACT. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTIAL OR CONSEQUENTIAL DAMAGES, SO THE LIMITATIONS OR EXCLUSIONS IN THIS LIMITED WARRANTY STATEMENT MAY NOT APPLY.

e)  The following statement applies to customers that are 'consumers' within the meaning of the Australian Consumer Law:

"Our goods come with guarantees that cannot be excluded under the Australian Consumer Law. You are entitled to a replacement or refund for a major failure and for compensation for any other reasonably foreseeable loss or damage. You are also entitled to have the goods repaired or replaced if the goods fail to be of acceptable quality and the failure does not amount to a major failure."

**6)  Rights and Remedies against Third Parties**
This Limited Warranty shall be construed as a separate warranty and independent from any other contractual arrangement with third parties relating to the Product(s). It shall not affect any rights, obligations and remedies of the Buyer, if any, with regard to third parties for defects or non-conformity or non-compliance of the Products, notwithstanding its legal basis. The rights and remedies provided hereunder are in addition to any other rights and remedies against third parties to which Buyer may be entitled by agreements with such third parties or by law.

**7)  Claims Procedure, Notice Periods, Expiration of Warranty Claims and Limitations.**
a)  Buyer shall notify Trina Solar immediately after discovery of any claim under this Limited Warranty by letter, facsimile or e-mail to the customer support center in your region:

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES

PS-M-0020  Rev. M  Nov. 29th, 2011

**Europe Customer Support**
Trina Solar (Schweiz) AG
Richtistr. 11,
8304 Wallisellen, Switzerland
T +41 43 299 68 00
F +41 43 299 68 10
E-mail: aftersales@trinasolar.com

**North America Customer Support**
Trina Solar (U.S.), Inc.
100 Century Center, Suite 340,
San Jose CA 95112, USA
T +1 800 696 7114
F +1 800 696 0166
E-mail: aftersales@trinasolar.com

**Australia Customer Support**
Trina Solar Australia Pty Ltd
Level 13, 167 Macquarie Street, Sydney NSW 2000
T:  +61 2 8667 3088
F:  +61 2 8667 3200
Email: aftersales@trinasolar.com

**Rest of World (ROW) Customer Support**
Changzhou Trina Solar Energy Company Limited
No. 2 Trina Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, P. R. China, 213031
T +86 519 8548 2008
F +86 519 8517 6021
E-mail: aftersales@trinasolar.com

specifying each alleged claim including evidence of the claims and the serial numbers of the Product(s) at issue.

b)  Any dispute on technical facts relating to claims brought under this Limited Warranty for defects of Products shall be determined by expert determination. Trina Solar and the Buyer will, at Trina Solar's request, appoint as independent expert and appraiser a reputable researcher from a first-class international test-institute such as Fraunhofer ISE in Freiburg/ Germany, TÜV Rheinland in Cologne/ Germany or ASU Arizona State University ("Technical Expert").  The determination by such Technical Expert shall be final, conclusive, binding and enforceable in any proceeding brought hereunder. The Technical Expert shall (i) act as an expert;  (ii) allow the parties a reasonable opportunity to make representations and counter-representations; (iii) take those representations and counter-representations into account; and (iv)  if required by either party give written reasons for his or her  determination. .

c)  Any claim for breach of this Limited Warranty must be brought within three (3) months after discovery of the breach.

d)  The return of any defective Product(s) will not be accepted unless prior written authorization has been given by Trina Solar.

**8)  Force Majeure**
Trina Solar shall not be responsible or liable in any way to the Buyer for any non-performance or delay in performance under this Limited  Warranty due to occurrences of force majeure such as, war, riots, strikes, unavailability of suitable and sufficient labor, material, or capacity or technical or

**CHANGZHOU TRINA SOLAR ENERGY CO.,LTD**

LIMITED  WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES
PS-M-0020  Rev. M  Nov. 29th, 2011

yield failures and any unforeseen event beyond its control, including, without limitation, any technological or physical event or condition which is not reasonably known or understood at the time of the sale of the defective Product(s) or the notification of the relevant warranty claim under this Limited  Warranty.

**9)  Warranty Assignment**

This Limited  Warranty is transferrable when the Products remain installed in their original installation location.

**10) Validity**

This Limited Warranty shall apply to

a)  Product(s) delivered to Buyer from 1st of December 2011 until 20th March 2012;

b)  Product(s)

  i)   delivered to Buyer from 21st of March 2012 and

  ii)  manufactured after 1st July 2011.

This Limited Warranty shall be valid until a new revision is issued by Trina Solar.

**11) No other Warranty**

Unless modified in a writing signed by an officer of Trina Solar, the Limited Warranty set forth herein is the only express warranty (whether written or oral) by Trina Solar applicable to the Products and no one is authorized to restrict, expand or otherwise modify this Limited Warranty.

**12) Miscellaneous**

If any provision of this Limited Warranty is held invalid, unenforceable or contrary to law then the validity of the remaining provisions of this Limited Warranty shall remain in full force and effect.

Address: No.2 Trina Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, P.R. China, 213031
http：//www.trinasolar.com   E-mail：sales@trinasolar.com  Tel: 0086-519-85485801, Fax: 0086-519-85485936

# EXHIBIT "C"







# EXHIBIT "D"



# Sunray Power

# DY High School

# Trina Module Warranty Replacement Study

# Borrego Engineering Services



Confidential. © Borrego Solar Systems, 2023

BOM-ENGS-SP-015-1.0



# Project and Document Information

## Project and Customer Details

Project Name: DY High School

Report Title: Huawei Inverter Replacement Study

Customer: Sunray Power

Contact Person: Gemma Sherman

Project Reference: BOM-ENGS-SP-015-1.0

## Task and Objective

Complete an evaluation of the DY High School PV System and document all alterations / upgrades needed, if any, to accommodate the installation of proposed Trina Solar warranty modules that are different than the existing Trina modules.

## Report Preparation

| Issue | 1.0 | Prepared By | Craig Lieb |
|---|---|---|---|
| Date | 12/01/2023 | Reviewed By | Bradley Hibberd |
| Status | For Issue | Approved By | Bradley Hibberd |

## Document History

| Date: | Issue | Description | Author |
|---|---|---|---|
| 12/01/2023 | 1.0 | For customer review | Craig Lieb |
| - | - | - | - |

BOM-ENGS-SP-015-1.0



# Executive Summary

This report summarizes the review and evaluation of the DY High School PV system and all necessary changes or upgrades that must happen as a direct result of the Trina Solar module replacement proposal given to Sunray Power from Trina Solar.

The following solutions were reviewed in detail per Sunray's request:

1. Construct a job estimate for replacing all the existing modules with like-for-like replacements.

2. Review the proposed Trina Solar warranty modules and check their compatibility with the existing system. If any system changes or upgrades are necessary to accommodate the replacement modules, create a job cost estimate to complete the replacement with all changes and upgrades.

Due to the slight differences between the existing / installed Trina modules and the proposed warranty replacement modules, several system changes and upgrades are required. New racking will be needed to mount to the replacement modules and new inverters and rapid shutdown devices will be needed for the system to be code compliant in Massachusetts.

BOM-ENGS-SP-015-1.0



# Contents

1   Introduction and System Review ..................................................................... 5
2   Module Replacement Solution Reviews ............................................................ 8
3   Concluding Remarks ..................................................................................... 14



# 1   Introduction and System Review

Sunray Power is the active manager and owner of the photovoltaic system at the DY High School Site. Borrego is the current Operations and Maintenance provider at this site.

The DY High School PV system consists of (2,106) roof mounted Trina TSM-280PA14 280W modules, (26) inverters including AE 3TL-20kW, de-rated SMA Sunny Tripower CORE1 33-US, HiQ TrueString Solar Inverters. The DC system size is 589.68 kW and the AC system size is 500 kW.

Borrego Engineering Services and Special Projects has been asked to review the existing system and evaluate the installation of new Trina Splitmax TSM-DD09M5C modules as warranty replacements.



**DY High School Site: Satellite View**






**DY High School Rooftop Array**  **Trina Solar TSM-280PA14 Module Nameplate**



**Installed AE 3TL-20kW inverter, HiQ Truestring Inverters**

BOM-ENGS-SP-015-1.0





**Installed SMA Sunny Tripower CORE1 33-US inverter**

BOM-ENGS-SP-015-1.0



# 2  Module Replacement Solution Reviews

The following adjustments or upgrades were identified as being necessary to accommodate the proposed Trina Splitmax TSM-DD09M5C modules.

## Adjustment 1

**Description:**

Replace the existing PanelClaw racking with a new Trina Splitmax TSM-DD09M5C compatible racking system.

**Comments:**

The proposed Trina Splitmax modules were likely identified as viable warranty replacements due to their similar electrical characteristics, power rating, and similar mechanical size. However, the Splitmax module has a different flange configuration making it incompatible with the existing racking. The image below from the Splitmax data sheet shows the flange in section A-A on the bottom left and no flange in section B-B on the bottom right of the image. Looking above those details you can find section A-A is taken from the long side of the module and B-B is from the short side of the module.



**Trina Splitmax TSM-DD09M5C Dimensions and Flange Detail**



BOM-ENGS-SP-015-1.0

The reason these modules are incompatible with the existing racking is because the PanelClaw clips attach to the flanges on the short side of the existing modules. Without the short-side flange, the PanelClaw racking has nothing to attach to. The image below shows the current installed module + racking arrangement with the clips on the short side of the module.



**Existing racking + module connection point: Module short side**

The new PanelClaw Flat-Roof 10-degree racking design is needed to replicate the current system tilt angle and install style has the attachment method on the long side of the module as seen below.

BOM-ENGS-SP-015-1.0





**Current PanelClaw flat-roof 10-dgree racking mounting point: Module long side**

## Adjustment 2

**Description:**

Upgrade the system to include code-compliant rapid shutdown capability.

**Comments:**

The existing system was first designed in 2014 (according to the as-built drawing on file) when rapid shutdown was not a requirement in the National Electric Code. Now that the system design will be modified by having the new Splitmax modules and new racking, the AHJ responsible for approving the new system will require all modern codes to be met. This includes having rapid shutdown devices installed throughout the system.

This system has been undergoing inverter replacements recently and has upgraded to having several SMA Sunny Tripower CORE1 33kW inverters installed. This SMA inverter is rapid shutdown compliant when compatible module level rapid shutdown devices are installed. SMA produces the compatible device needed. There will need to be one SMA rapid shutdown device installed for each module in the system.

BOM-ENGS-SP-015-1.0





**SMA JMS-F Rapid Shutdown Device & Example System Configuration**

The other two types of inverters currently installed are not compatible with this device/requirement and will need to be replaced to have the system fully comply. The remainder of the site will be fitted with the same SMA Sunny Tripower CORE1 33kW inverters and each module will be equipped with the rapid shutdown device.

Because the SMA inverters are larger than the original 20kW Advanced Energy inverters, there may be some optimization in terms of string grouping to keep the number of inverters to a minimum. This has been estimated into the job cost estimate and will be confirmed in the detailed design phase.

This system upgrade estimate also includes the required upgrades to the DAS reporting equipment so that monitoring the system performance can be done accurately.

BOM-ENGS-SP-015-1.0



# Additional Evaluation

**Description:**

Quick discussion of replacing the existing modules with like-for-like replacements

**Comments:**

Assuming Trina Solar can provide Sunray with a total like-for-like replacement that matches electrical characteristics and mechanical characteristics (dimensions, weight, flange size, connector type), the replacement will be labor only with the additional cost of replacing any broken connectors, bolts, and clamps found during the decommissioning stage.

If Trina can provide a data sheet for a like-for-like replacement module, Borrego can confirm the compatibility.

BOM-ENGS-SP-015-1.0



# 3 Concluding Remarks

Borrego's Engineering Services team's focus was to identify the adjustments and upgrades needed at DY High School because of installing the proposed Trina Splitmax TSM-DD09M5C modules. Our priorities were to find a solution that both maintains the AC capacity and to limit unnecessary costs associated with any system changes needed to accommodate any replacement modules.

We believe that the options discussed above represent the best paths forward to creating a code compliant system, and that the option to replace the remaining inverters with SMA inverters represents the best option from a system integration perspective as well as a cost perspective.

A quote to purchase the SMA inverters and rapid shutdown devices, to upgrade the DAS equipment, to supply the materials needed for decommissioning and installation, and the labor needed to perform this work will be submitted separately, but in conjunction with the findings in this report. We are available for further discussion regarding possible solutions at any time following the review of this report.

| | |
|---|---|
| **Project / Site Name** | Special Projects Module replacement - DY High School |
| **Client** | Sunray Power |
| **Proposal Date** | 12/6/2023 |



## Borrego Special Projects Proposal Estimate

### Project Description

Trina Solar module replacement for Sunray Power's site: DY High School (Roof-Mounted System)

This quote is in conjunction with Borrego Engineering Services Report: **BOM-ENGS-SP-015-1.0**

*- Refer to the Engineering Services Report for discussions/clarifications regarding equipment specifications, installation considerations, and other job-specific technical and commercial considerations.*

### Quoted Scope

**- Labor and equipment for decommissioning & removal of existing equipment**        **$198,679**
  - *(2,106) existing Trina TSM-280PA14 280W modules*
  - *Including removal/recycling all decommissioned equipment*
  - *Rental equipment and facilities*

**- Labor and equipment for installation of new equipment**        **$250,908**
  - *Install like-for-like Trina Solar replacement modules*
  - *Rental equipment and facilities*
  - *Replacement modules must match the electrical and mechanical characteristics of the existing Trina Solar TSM-280PA14 modules*
  - *Misc. parts (connectors, hardware, wire, conduit, etc.)*

### Borrego Special Projects Estimate:        $449,587

*Quote Clarifications*

(1) *Any preliminary drawings provided as a part of the scope above do not include professional engineer's stamps and are for quoting/review purposes only*

(2) *Results of the preliminary design review are used for equipment installation considerations, compatibility of any new equipment specified with the existing system, and job cost and timeline estimation . Equipment specification, installation requirements, and associated costs are subject to adjustment during the detailed design phase required for any professional engineer's stamped plan sets.*

(3) *Work to be performed upon receipt of signed Purchase Order for the Borrego Special Projects Scope as listed above*

(4) *Borrego will select products based on internal best practices unless an A.V.L. is supplied by customer at the contract start*

(5) *Any 3rd Party contractors used to complete this work will be managed by Borrego Eng. Services & Special Project teams to achieve completion of Borrego's engineered solution*

(6) *This quote is valid for **30 days** after the listed **Proposal Date***

| | |
|---|---|
| **Project / Site Name** | Special Projects System Upgrade: DY High School |
| **Client** | Sunray Power |
| **Proposal Date** | 12/6/2023 |



## Borrego Special Projects Proposal Estimate

### Project Description

Trina Solar module replacement for Sunray Power's site: DY High School (Roof-Mounted System)

This quote is in conjunction with Borrego Engineering Services Report: **BOM-ENGS-SP-015-1.0**

*- Refer to the Engineering Services Report for discussions/clarifications regarding equipment specifications, installation considerations, and other job-specific technical and commercial considerations.*

### Quoted Scope

**- Labor and equipment for decommissioning and removal of existing equipment**     **$208,394**
- *(2,106) existing Trina TSM-280PA14 280W modules*
- *Existing PanelClaw racking*
- *Existing Advanced Energy and HiQ inverters*
- *Including removal/recycling all decommissioned equipment*
- *Rental equipment and facilities*

**- Labor and equipment for installation of new equipment**     **$340,518**
- *Including project management, creation of updated, stamped engineering as-builts for permitting, and permitting fees*
- *Install Trina Solar Splitmax TSM-DD09M5C replacement modules*
- *Install SMA Sunny Tripower CORE1 33kW inverters & JMS-F rapid shutdown devices*
- *Install PanelClaw 10 deg. flat roof racking system*
- *Install AlsoEnergy DAS equipment*
- *Rental equipment and facilities*

**- Purchase new primary equipment & misc. parts**     **$500,975**
- *(15) SMA Sunny Tripower CORE1 33kW inverters*     *$92,399*
- *(2,106) JMS-F rapid shutdown devices*     *$91,611*
- *PanelClaw 10 deg. flat roof racking system + ballast blocks*     *$249,402*
- *AlsoEnergy DAS equipment*     *$12,463*
- *Misc. parts (connectors, hardware, wire, conduit, etc.)*     *$55,100*

### Borrego Special Projects Estimate:  $1,049,887

*Quote Clarifications*

*(1) Any preliminary drawings provided as a part of the scope above do not include professional engineer's stamps and are for quoting/review purposes only*

*(2) Results of the preliminary design review are used for equipment installation considerations, compatibility of any new equipment specified with the existing system, and job cost and timeline estimation . Equipment specification, installation requirements, and associated costs are subject to adjustment during the detailed design phase required for any professional engineer's stamped plan sets.*

*(3) Work to be performed upon receipt of signed Purchase Order for the Borrego Special Projects Scope as listed above*

*(4) Borrego will select products based on internal best practices unless an A.V.L. is supplied by customer at the contract start*

*(5) Any 3rd Party contractors used to complete this work will be managed by Borrego Eng. Services & Special Project teams to achieve completion of Borrego's engineered solution*

*(6) This quote is valid for 30 days after the listed Proposal Date*

# EXHIBIT "E"

# ECKERT
## S E A M A N S
### ATTORNEYS AT LAW

Eckert Seamans Cherin & Mellott, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, New Jersey 08648

TEL    609 392 2100
FAX    609 392 7956
www.eckertseamans.com

Mailing Address:
P.O. Box 5404
Princeton, New Jersey 08543

File No.: 315052-2

Nicholas M. Gaunce, Esq.
609-989-5058
ngaunce@eckertseamans.com

July 31, 2023

***Via E-mail and Regular Mail***
Trina Solar (U.S.) Inc.
Attn: David Rowland
7100 Stevenson Blvd.
Fremont, CA 94538

> Re:    **Breach of Warranty Claims**
> **Claim Numbers: R20220929024C; R20230208029C; R202302008030C**
> **(the "Claims")**

Dear Mr. Rowland:

As you are aware, we have been retained to represent SunRay Power in relation to the Claims. More than two weeks ago, our client advised you that the replacement parts being offered by Trina Solar (U.S.) Inc. and Changzhou Trina Solar Energy Co., LTD (collectively, "Trina") were inadequate to resolve the Claims. Specifically, the proposed model TSM-DD09M5C was ineffective **because the short side flange of that model is incompatible with the existing racking system; thus, to use this model, the entire racking system would need to be replaced.** While, Trina DE15M(II) will require extensive work to be adapted effectively into the existing system. At a minimum, SunRay, to use this model, will be required to move the current racking and create a new design. So far, our client has received cost estimates of $200,000.00 to $250,000.00 to complete the necessary work. Plus, the changes to the existing system may require updated electrical permits. As with any project, the updating of electrical permits will substantially increase the cost of this project. Thus, Trina DE15M(II) is not a viable option for SunRay without further cash compensation. In sum, Trina has not offered a suitable proposal such that the remedy provided under the warranty has failed as to its essential purpose.

Unless we hear from you soon, SunRay will have no choice but to explore its other options relating to its rights under the existing warranty. Please be guided accordingly. Thank you.

Very truly yours,

Nicholas M. Gaunce, Esq.

# EXHIBIT "F"



8/14/23

Dear Mr. Gaunce:

We have received your letter dated July 31, 2023 (the "Letter") in which you contend that the replacement solar modules that Trina Solar Co., Ltd. (formerly known as Changzhou Trina Solar Energy Co., Ltd.) ("Trina Ltd.") has offered to provide your client, SunRay Power, in fulfillment of certain warranty claims are insufficient. You also contend in your Letter that Trina Solar (U.S.), Inc., which acts merely in a customer support role with respect to warranty claims, is "offering" replacement solar modules. We strongly disagree on both points.

The manufacturer and warranty provider, Trina Ltd., has offered to provide your client with replacement solar modules under the Limited Warranty. This satisfies Trina Ltd.'s obligations under the Limited Warranty. The language of Section 5(a) of the Limited Warranty places all "costs and expenses for removal, installation or reinstallation" with the buyer. Your client contends that the replacement modules are ineffective "because the short side of the flange of that model is incompatible with the existing racking system; thus, to use this model, the entire racking system would need to be replaced." You further note that your client has received cost estimates to "move the current racking and create a new design," as well as your client's expectation that new electrical permits may be required. Trina Ltd. manufacturers solar modules for customer use, and it provides a Limited Warranty only for its solar modules. Trina Ltd. has no obligations with respect to any other components of the solar system, which your client separately procured and controls (rather than Trina Ltd.). Under the Limited Warranty, Trina Ltd. does not bear responsibility for any costs related installing racking or other components chosen by your client. Any additional amounts your client may be required to expend are squarely the sorts of "removal, installation or reinstallation" expenses your client is obligated to bear under the Limited Warranty.

Contrary to your assertions in the Letter, the Limited Warranty does not fail of its essential purpose. Trina Ltd. has offered one of the exclusive remedies provided for under the Limited Warranty: namely, "replace[ment] [of] the defective Product(s)." Trina Ltd. has also offered an alternative remedy refund, which your client has rejected. Section 5(c) of the Limited Warranty expressly bars "[a]ll other claims under this Limited Warranty," including "special, incidental or consequential damages," even if the Limited Warranty is "deemed to have failed of [its] essential purpose." In other words, your client is not entitled to the costs it demands under any set of circumstances, which are borne solely by the buyer under the plain terms of the Limited Warranty.

Trina Ltd. has acted in good faith by allowing your client to submit significantly reduced documentation compared to what is required under the Limited Warranty. The Limited Warranty requires your client to provide immediate notice of claims for each module, identified by serial number, with supporting evidence of any purported defects. Your client has not been required to comply with these strict notice requirements.

Trina Ltd. stands ready and willing to fulfill its obligations under the Limited Warranty and again offers provide your client with replacement solar modules in early 2024 or the alternative refund remedy previously proposed. We are optimistic that the parties can reach a mutually agreeable resolution of this issue. Trina Ltd. and Trina U.S. reserve all rights to assert all defenses to your client's claims.

Trina Solar Co. Ltd..
No 2 . Tianhe Road, Trina PV Industrial Park, New District, Changzhou, Jiangsu, 213031

# EXHIBIT "G"



Eckert Seamans Cherin & Mellott, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, New Jersey 08648

TEL    609 392 2100
FAX    609 392 7956
www.eckertseamans.com

Mailing Address:
P.O. Box 5404
Princeton, New Jersey 08543

File No.: 315052-2

Nicholas M. Gaunce, Esq.
609-989-5058
ngaunce@eckertseamans.com

August 23, 2023

***<u>Via E-mail and Regular Mail</u>***
Trina Solar (U.S.) Inc.
Attn:  David Rowland
7100 Stevenson Blvd.
Fremont, CA  94538

Re:    <u>Breach of Warranty Claims</u>
       <u>Claim Numbers:  R20220929024C</u>; **R20230208029C; R202302008030C**
       **(the "Claims")**

Dear Mr. Rowland:

We are in receipt of your correspondence dated August 14, 2023 and do not agree that the obligations in the Limited Warranty have been satisfied for many reasons.  Firstly, your citation to Section 5(a) of the Limited Warranty is inapplicable.  That language relates only to the defective product itself and when the defective product is being replaced by a "new or remanufactured equivalent."  For the reasons explained in my July 31, 2023 letter, the alternative models that have been offered are not "equivalent" to what was originally installed.  Plus, there is no language in Section 5(a) that addresses a situation in which a customer has to redesign their system.

Secondly, the warranty has failed as to its essential purpose.  The alternatives that have been offered to our clients are as follows: (1) modules that are not the equivalent of what is installed; (2) inadequate cash compensation for roughly thirty percent the value of what is needed to address the existing problems created by the defective product involved; or (3) awaiting actual replacement modules until sometime "in early 2024."  As explained during our prior call together, these systems have been experiencing reduced energy production for more than a year now.  A vague promise of delivery "in early 2024," which can easily become later, does not, in our clients' view, constitute satisfaction of the existing warranty obligations.  The Uniform Commercial Code states that "[w]here circumstances cause an exclusive and limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."  <u>N.J.S.A.</u> § 12A:2-719(2).  One such remedy would be the damages referenced in my July 31, 2023 letter.  Plus, we would note that there is already a lawsuit pending in federal court in New Jersey filed by 1985 Rutgers Solar, LLC containing similar allegations as to the issues experienced by this firm's clients, including with the process as to the submission of warranty claims.  (See the enclosed notice of removal).  Given the pendency of this case concerning similar complaints, our clients would hope that a reasonable solution could be offered here.



David Rowland
August 23, 2023
Page 2

Finally, if the manufacturer is truly interested in resolving the issues raised by our clients in an amicable fashion, then the manufacturer should be able to commit to a specific date of delivery for actual replacement modules. If the manufacturer can specify a particular delivery date, our clients can then respond substantively to such an offer and potentially bring this matter to a conclusion. Please advise of that date within a week of this letter. Our clients will not accept vague promises of "early 2024" as satisfactory in this regard.

We would also note that, thus far, our clients' claims submitted under the applicable twenty-five-year warranty have not been addressed, or, in one instance, even assigned a claims number. Assuming that we are able to reach a resolution on the issues that we have been discussing thus far, we also need to figure out a remedy for these separate warranty claims as well. Thank you.

Very truly yours,

/s/ Nicholas M. Gaunce

Nicholas M. Gaunce, Esq.

Enc.

# EXHIBIT "H"

# JONES DAY

555 SOUTH FLOWER STREET • FIFTIETH FLOOR • LOS ANGELES, CALIFORNIA 90071.2452

TELEPHONE: +1.213.489.3939 • JONESDAY.COM

DIRECT NUMBER: 2132432769
DCIARLO@JONESDAY.COM

August 30, 2023

**VIA EMAIL**
Nicholas M. Gaunce
Eckert Seamans Cherin & Mellot, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, New Jersey 08648
ngaunce@eckertseamans.com

Re: **Warranty Claims Nos. R20220929024C; R20230208029C; R20230208030C; R20230224021C**

Mr. Gaunce:

I write on behalf of Trina Solar (U.S.), Inc. and Trina Solar Co. Ltd. (Trina Ltd.) in response to your letter dated August 23, 2023 (the "Letter"), which responded to Trina Solar's letter dated August 14, 2023 regarding the above-referenced warranty claims asserted by your clients. Please direct further communications regarding this dispute to my offices.

Contrary to the positions taken in your Letter, Trina Ltd. has complied with its obligations under the Limited Warranty, which permits Trina Ltd., at its <u>sole</u> discretion, to repair, replace, or refund a portion of the purchase price of any defective solar modules. As you recognize in your Letter, Trina Ltd. has offered your clients two different options under the Limited Warranty: delivery of new or equivalent to new replacement modules, or a partial refund of the purchase price. Your clients have rejected both options.

As you know, where, as here, Trina Ltd. opts to replace any purportedly defective modules, the Limited Warranty places the responsibility for *all costs* associated with removal, installation, and reinstallation of the modules exclusively with the Buyer. Purported costs to redesign solar systems or racking constitute such removal, installation, and reinstallation costs. Thus, contrary to your positions, such costs *are* contemplated in the Limited Warranty, and they are solely for the Buyer to bear. Such costs are also barred by Section 5(c) of the Limited Warranty, which plainly excludes "[a]ll other claims under this Limited Warranty," including "special, incidental or consequential damages," even if the Limited Warranty is "deemed to have failed of [its] essential purpose." Such provisions are enforceable, as the New Jersey Supreme Court has found. *Kearney & Trecker Corp. v. Master Engraving Co.*, 527 A.2d 429, 433 (1987) ("[T]he potential significance of liability for consequential damages in commercial transactions undoubtedly prompted the [Uniform Commercial] Code's drafters, consistent with the Code's endorsement of the principle of freedom of contract, to make express provision for the limitation

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

August 30, 2023
Page 2

or exclusion of such damages."); *id.* at 438 ("[W]e conclude that N.J.S.A. 12A:2–719 does not require the invalidation of an exclusion of consequential damages when limited contractual remedies fail of their essential purpose.").[1] For this additional reason, any costs to install the modules and modify the design of your clients' solar systems—which qualify as both reinstallation costs and consequential or incidental costs—are not recoverable under the Limited Warranty.

Curiously, you state in your Letter that "Section 5(a) of the Limited Warranty is inapplicable" because it "relates only to the defective product itself" and "there is no language in Section 5(a) that addresses a situation in which a customer has to redesign their system." Not so. To the extent your clients even have standing to assert claims under the Limited Warranty (which is dubious), Section 5(a) is not only fully applicable, but it also unequivocally excludes the costs your clients are attempting to shift to Trina Ltd. Indeed, costs to "redesign" an entire solar system are costs over which Trina Ltd. has no control. Trina Ltd. manufactures one component of such solar systems: the solar modules. The remaining components of the solar systems are designed, manufactured, and implemented by other parties (not Trina Ltd.) to meet your clients' specifications. Moreover, your clients assert claims based on the solar modules alone, not the entire solar system or racking components, which Trina Ltd. neither designed, manufactured, or warranted. Trina Ltd. has offered new or equivalent to new replacement modules in accordance with the Limited Warranty, which is the only remedy to which your clients are entitled.

In any event, we disagree that the Limited Warranty fails of its essential purpose. The modules Trina Ltd. has offered are new modules that will produce equivalent power to the modules your clients previously installed. They will perform the function for which they were manufactured, and your clients are not left without a remedy. Your clients are sophisticated enterprises, which chose to purchase Trina Ltd.'s solar modules as one component of their solar systems. They cannot now seek to take the benefits of the Limited Warranty while leaving behind their attendant obligations to pay for costs associated with removal, installation, reinstallation and any other attendant consequential and incidental costs.

We reiterate that Trina Ltd. remains willing to fulfill its obligations under the Limited Warranty and is hopeful that a mutual resolution can be achieved without unnecessarily expending additional time and resources. To that end, although your clients have not provided the requisite notice or documentation for warranty claim numbers R20220929024C, R20230208029C, R20230208030C, and R20230224021C, in order to resolve this dispute in exchange for full releases, Trina Ltd. is offering to provide your clients with new replacement modules (model number DD09M5C) on a nameplate wattage basis for delivery in November

---

[1] We assume, without admitting, that New Jersey law applies based on your Letter.

JONES DAY

August 30, 2023
Page 3


2023. Please inform me promptly if this resolution is satisfactory to your clients and we can prepare the necessary documents. In the event a resolution cannot be reached, Trina Ltd. and Trina U.S. reserve all rights and defenses to your clients' claims.


Best Regards,

David A. Ciarlo

# EXHIBIT "I"



# Statement of Work

This Statement of Work is dated July 24th, 2024. It applies to work to be conducted by Revive PV Solar LLC ("Revive PV") for the benefit of SunRay Power LLC ("Customer") pursuant to a Master Services Agreement ("MSA") between Revive PV and Customer. This SOW shall become an Exhibit to the MSA upon execution of the MSA.

## DESCRIPTION OF WORK

1.      Customer desires that Revive PV remanufacture certain solar PV modules that are non-working or otherwise faulty (Repair Modules) due to back sheet failure or back sheet underperformance. As provided in the MSA, upon receipt of the Repair Modules, the Revive PV shall test such modules to determine operating and fault status, shall repair the faulty / failed back sheets and re-laminate them and return them to customer as a warrantied product. Certain modules may not be repairable, in which case Revive PV shall either dispose of them or return them to Customer, as directed by Customer**.**

## DESCRIPTION OF MODULES PROVIDED BY CUSTOMER FOR REPAIR ("REPAIR MODULES")

2.      The Repair Modules provided by Customer and covered by this SOW (include description and quantity):

286 Trina 285watt Solar Modules suffering from back sheet cracking causing failure and/or underperformance.

3.      Per Module Screening to be Conducted by: Revive PV

Flashing Test Fee:              $0 (carried free as part of this service contract)
Screening Test Fee:             $0 (carried free as part of this service contract)
Remanufacture Module Fee:       $.19c per watt (to repair the failed and /or underperforming back sheets)
Recycling Module Fee:           TBD

In exchange for the Services (repairing the failed and /or underperforming back sheets), Customer shall pay to Revive PV a fee equal to each of the specified fees in Section 3 above times the number of Repair Modules to which each fee applies. As of the date of this SOW, it is estimated that the Total Price under this SOW shall be as noted below.

1



PRICE

4.    **PRICE**

NJ Princeton Self Storage

| Item | Qty p/w | Description | Unit Cost $/w | Ext Cost $ |
|---|---|---|---|---|
| 1 | 81,510 | Take Down and Remount 286 Trina 285w panels at South Plainfield and Princeton locations | 0.33 | 26,898 |
| 2 | 81,510 | Remanufacture Panels | 0.19 | 15,487 |
| 3 | 81,510 | Freight* | 0.0473 | 3,831 |
| 4 | | **SUBTOTAL NJ PRINCETON** | | **46,216** |

*Customer to separately contract the freight company or a freight company of their choosing*

*Please note: The price of $.19c is a once off price for this initial project to prove concept and to build a business relationship between Revive PV and SunRay Power.*
*This price is contingent on the below points:*

- *SunRay provides a "source of capital" showing the company has the means / support to pay for the services of Revive PV.*
- *SunRay agrees that, upon returned modules operating as described in this SOW and the Master Services Agreement, the company will commit to using Revive PV's services for the Long Meadow I and Long Meadow II projects.*

5.    **ADJUSTMENTS TO PRICE**

In the event the number of Modules provided by Customer to Revive PV for remanufacture under this SOW differs from the estimate provided above, Revive PV's Final Invoice (as defined in Section 8 below) shall be adjusted to reflect the accurate number of modules ultimately repaired or recycled pursuant to this SOW on behalf of Customer.

**SIGNIFICANT CUSTOMER CHANGES TO NUMBER OF REPAIR MODULES**

6.    In the event that Customer forms an opinion that the number of Repair Modules to be provided by Customer to Revive PV will differ by more than 5% from the estimates in this SOW, Customer shall promptly advise Revive PV in writing, and the parties shall amend this Statement of Work to reflect the new estimate.



### TRANSPORTATION

7.  With Customer's approval, Revive PV shall arrange for and facilitate transportation of the Repair Modules.  Customer shall separately contract with shipping agent for such transportation, and shall be responsible for payment of transportation.

    | | |
    |---|---|
    | Revive PV Acceptance Point: | 9424 International Court N, St. Petersburg, FL 33716 |
    | Date for Delivery to Revive PV: | TBD |
    | Batch Size: | 832 PV Modules per 53' truck. |
    | Shipping Terms: | Revive PV will deliver PV pallet systems to the customer. The customer will load modules onto the PV pallet systems and will load the PV pallet systems onto the truck. |

### INVOICING & PAYMENT

8.  **Deposit.**  Upon execution of this SOW, Customer shall make a deposit with Revive PV of fifty percent (50%) of the Estimated Total Price as identified in Section 4 above.

    **Subsequent Invoices.** Thereafter, Revive PV shall provide Customer with a Final Invoice as noted below, and Customer shall pay such invoices within <u>ten (10) calendar days of receipt</u>.

    *Final Invoice.*  Revive PV shall provide its final invoice to Customer upon the earlier of (i) 10 days after the Final Return Date or (ii) written notice from Customer that all Repair Modules have been fully energized and are operating. If the estimated work upon which the earlier invoices was based is not the actual work conducted (either more or less), then the Final Invoice shall reflect all such adjustments. If the Final Invoice indicates a refund is due to Customer, Revive PV shall pay such refund within 28 days.

    \* \* \* \*

    Upon execution by both parties, this Statement of Work shall be deemed accepted by the Parties as of the date specified above.

| | |
|---|---|
| **Revive PV Solar, LLC** | **SunRay Power LLC** |
| a Delaware limited liability company | |
| | |
| By _____ | By _____ |
| Name: Michael Quinn | Name: Alana Martell |
| Title: CCO | Title: Managing Member |

3

**Revive** PV™

Date: Oct 8th, 2024

**COMMERCIAL Change Order to ORIGINAL INVOICE**

This document sets out a change order for previously agreed upon services between:

Revive PV, LLC of 9424 International Court N, St. Peterburg, FL 33716, U.S.A "RPV".

and

SunRay Power, LLC of 524 Broadway, Floor 11, New York, NY 10012

Invoice Number: SR1                    Customer Number: SR

Date: 10.8.24

| Item | Description | Panel Qty | Price per unit $ | Total Sale Price $ (Ex VAT) | Terms |
|---|---|---|---|---|---|
| Take Down and Remount | Take Down and Remount 286 Trina 285w panels | 286 (81,510 watts) | $.33c p/w | $26,898 | A 50% deposit of **$13,449** will be paid to the below account. |
| Remanufacture | 11 pallets <br><br> 26 modules per pallet | 286 (81,510 watts) | $.19c p/w | $15,487 | A 50% deposit of **$7,743.50** will be paid to the below account. |
| Freight | 11 pallets <br><br> 26 modules per pallet | 286 (81,510 watts) | $.0473c p/w | $3,857 | **$3,857** to be paid upfront to secure pickup and delivery to Revive PV facility. |
| **CHANGE ORDER Oct 8th, 2024** | Removal of all landed strings from inverters <br><br> Removal of DC wiring from whole system <br><br> Removal of existing wire management <br><br> Installation of cable trays <br><br> Installation of new DC wiring and grounding | | | $17,200 | Included 2-year workmanship warranty. No warranty will be provided for any reused or existing equipment. |



| | Creation of updated string diagram based on equipment specifications

Installation of wire management to ensure wiring is not in contact with roof surface | | | | |
|---|---|---|---|---|---|

| **Total Sale Price** TAKE DOWN AND REMOUNT **$26,898** | |
|---|---|
| **Total Sale Price** REMANUFACTURE **$15,487** | Total DEPOSIT to be paid: $25,049.50 |
| **Total Sale Price** FREIGHT **$3,857** | |
| **Total CHANGE ORDER for re-wiring $17,200** | <u>**Total to be paid: $63,442.00**</u> |

**Bank Details:**

**Revive PV Solar, LLC**
Chase
SWIFT Code: CHASUS33
Account number
965619866
Routing number
021000021

Banks Address:

JPMorgan Chase Bank
1100 3rd Ave | New York, NY, 10065.

Kind Regards,

Michael Quinn
**Revive PV**



Date: 25 July 2024

**COMMERCIAL INVOICE**

This document sets out an invoice for services between:

Revive PV, LLC of 9424 International Court N, St. Peterburg, FL 33716, U.S.A "RPV".

and

SunRay Power, LLC of 524 Broadway, Floor 11, New York, NY 10012

Invoice Number: SR1                                Customer Number: SR

Date: 7.25.24

| Item | Description | Panel Qty | Price per unit $ | Total Sale Price $ (Ex VAT) | Terms |
|------|-------------|-----------|------------------|------------------------------|-------|
| Take Down and Remount | Take Down and Remount 286 Trina 285w panels | 286 (81,510 watts) | $.33c p/w | $26,898 | A 50% deposit of **$13,449** will be paid to the below account. |
| Remanufacture | 11 pallets<br><br>26 modules per pallet | 286 (81,510 watts) | $.19c p/w | $15,487 | A 50% deposit of **$7,743.50** will be paid to the below account. |
| Freight | 11 pallets<br><br>26 modules per pallet | 286 (81,510 watts) | $.0473c p/w | $3,857 | **$3,857** to be paid upfront to secure pickup and delivery to Revive PV facility.<br><br>*We will issue a separate invoice for return shipping* |

**Total Sale Price** TAKE DOWN AND REMOUNT **$26,898**
**Total Sale Price** REMANUFACTURE **$15,487**          **Total DEPOSIT to be paid: $25,049.50**
**Total Sale Price** FREIGHT **$3,857**

**Bank Details:**

**Revive PV Solar, LLC**
Chase                                **Banks Address:**
SWIFT Code: CHASUS33
Account number                    JPMorgan Chase Bank
965619866                         1100 3rd Ave | New York, NY, 10065.
Routing number
021000021

Kind Regards,

**Michael Quinn**
Revive PV

# EXHIBIT "J"

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire (030481995)
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: (856) 662-0700
Facsimile: (856) 661-2080
E-mail: jresnick@shermansilverstein.com
Attorneys for Plaintiff 1985 Rutgers Solar, LLC

| | | |
|---|---|---|
| 1985 Rutgers Solar, LLC, | : | Superior Court of New Jersey |
| | : | Law Division-Monmouth County |
| Plaintiff, | : | |
| | : | Docket No. |
| v. | : | Civil Action |
| | : | |
| Changzhou Trina Solar Energy Co., Ltd., | : | Complaint |
| and Trina Solar (U.S.), Inc. | : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |

Plaintiff 1985 Rutgers Solar, LLC ("1985 Rutgers Solar" or "plaintiff"), by and through its undersigned counsel, hereby brings this Complaint against defendants Changzhou Trina Solar Energy Co., Ltd., and Trina Solar (U.S.), Inc. (collectively "defendants"), jointly and severally, and in support thereof asserts:

## THE PARTIES

1.      1985 Rutgers Solar is a limited liability company with an address of 319 Sweetmans Lane, Millstone Township, New Jersey 08535.

2.      Defendants Changzhou Trina Solar Energy Co., Ltd. is a foreign corporate entity with an address in care of Trina Solar (U.S.), Inc., 100 Century Center, Suite 340, San Jose, California 95112.

3.      Defendant Trina Solar (U.S.), Inc. is a corporate entity with an address of 100 Century Center, Suite 340, San Jose, California 95112.

1

## JURISDICTION AND VENUE

4.      This Court may maintain personal jurisdiction over defendants because defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice.

5.      Venue is appropriate in this jurisdiction because the events underlying this cause of action arose in Monmouth County.

## STATEMENT OF FACTS

6.      1985 Rutgers Solar is a single-purpose entity formed to generate income by:

   a.  Contracting the installation and maintenance of a rooftop solar system at 1985 Rutgers Avenue, Lakewood New Jersey;

   b.  Selling the energy produced from that system to the building owner; and

   c.  Selling the intangible Solar Renewable Energy Credits (SRECs) to third-party buyers.

7.      Defendants are engaged in the research and development, production, and sales of solar, also known as photovoltaic ("PV") modules ("modules"); power stations and system products; PV power generation; and operation and maintenance services.

8.      Defendants advertise that their "products have always maintained high reliability and solid performance based on our commitment to our quality-first policy.  In our upstream business model, we tightly control quality over every step of the manufacturing process, from silicon crystallization to module deployment in the field.  We guarantee the quality of our products with an industry-leading 25-year lifetime warranty."

https://www.trinasolar.com/au/our-company/quality

3105021.1

9.      The primary components of a solar panel system are the modules, inverters, and racking system.

10.      Traditional Crystalin Solar modules, like those referred to in this document, are manufactured in a weather-resistant laminate that allows light photons to interact with silica cells, producing electricity that moves off of the cell via thin electrical wires running along each cell surface and interconnecting the cell within a panel.  Power is then carried by these thin wires to a water-resistant junction box mounted on the panel backing and then leaves the module via two electrical cables.

11.      The layer of water and electrical protection on the back of a traditional Crystalin Solar panel is the backsheet.  The backsheet protects the surrounding area from stray electrical discharge and protects the materials inside the module from water damage.

12.      When a backsheet fails, dangerous electrical currents can travel outside the module, causing a threat to human life.

13.      When a backsheet fails, water can get inside a module and cause corrosion and short circuits that lead to "thermal events," including life-threatening property fires.

14.      Module manufacturers use different polymers of different numbers of layers and various thicknesses as backsheets.

15.      Defendants knew but did not disclose to 1985 Rutgers Solar that the backsheet design they chose to use in the timeframe that these modules were manufactured was of inferior material and design.

16.      As defendant would have anticipated, global warranty claims on its products show that the defendant has experienced, and continues to experience a higher than acceptable failure rate on modules made with a similar backsheet design.

3

17.     These failures include the potential for harm to person and property.

18.     Even after experiencing abnormally high warranty claim rates and fully understanding the dangerous nature of this problem, the defendant did nothing to warn 1985 Rutgers Solar and or correct the problem prior or subsequent to contracting with 1985 Rutgers Solar.

19.     Unaware of this known issue, Absolutely Energized Solar, LLC ("AES"), a related entity to 1985 Rutgers Solar, contracted with the defendants in 2011 to purchase 2128 TRIN-235AMountIII-A-PA5.10 modules along with the racking system needed to put them into service for the intended purpose of producing electricity and generating the intangible SREC benefits.

20.     At the time, it was unusual for AES to purchase solar modules and racking from a single manufacturer, but the aluminum frame on these modules and the racking were made to integrate together as part of a, "a licensing, sales, and marketing partnership" with ZEP Solar, Inc. and Trina Solar Limited.

21.     To that end:

    a.  Modules made under this partnership have a unique groove in the side that electrically and structurally integrates with the ZEP flat roof mounting system; and

    b.  The Zep mounting systems cannot be used with any other type of module frame.

22.     AES paid the defendants $784,000.00 for these items.

23.     At the time of AES's purchase of the solar modules, the defendants provided AES with a Limited Warranty ("Warranty").

4

24.     The Warranty extends to "(i) solar photovoltaic modules including factory assembled junction box and cables, and (ii) mounting products including factory assembled basic hardware…"

25.     AES transferred the Warranty and all rights and claims as relating to defendants to 1985 Rutgers Solar.

26.     In February 2022, a safety warning alarm in the 500kW centralized solar inverter connected to the solar modules automatically shut down with an electrical ground fault error code.  This type of electrical fault indicates that more than 10A of electrical current is flowing through the normally not energized array racking and into the normally not energized grounding system.

27.     The defendants later identified the cause of the problem as a failure in the modules themselves.  The cause was determined by electrically isolating affected modules and re-testing those strings.  Onsite technicians then noticed that the damaged modules all shared visual characteristics indicating a module failure due to water infiltration.  These visually observable characteristics presented in the form of cracking patterns that had developed on the backsheet material, burn marks visible from the front and back, and corroded metallic connections visible from the front of the modules.

28.     Further visual inspection by 1985 Rutgers Solar showed that approximately 70% of the modules in the array showed various levels of similar visible failures.  With such a high level of visually apparent failure, 1985 Rutgers Solar had no choice but to turn the system off.

29.     In February 2022, 1985 Rutgers Solar contacted the defendants and explained the situation.  Since this was such a potentially dangerous failure and was visible in such a large

5

percentage of the modules, 1985 Rutgers Solar requested that a representative of the defendant come out and inspect the site.

30. The request for the defendant to begin investigating the problem was denied. Instead, 1985 Rutgers Solar was asked to spend additional resources gathering more and more information, including hundreds of photos.

31. Despite having knowledge of the problematic backsheet used when making these modules, and despite the high number of failures already reported by other system owners, the defendants began an overly detailed investigation into 1985 Rutgers Solar's warranty claim.

32. Desperate to get the solar system back up and generate solar/revenue, 1985 Rutgers Solar asked for the phone number of the representative defendants assigned to be 1985 Rutgers Solar's point of contact. The defendants refused to speak with 1985 Rutgers Solar by phone, instead insisting that they would only engage in communications through e-mail.

33. This caused additional unnecessary delay.

34. The scope of the defendants' investigation was unnecessary and only resulted in an impermissible delay in defendants' honoring their obligations to 1985 Rutgers Solar.

35. For example, defendants asked 1985 Rutgers Solar for production of the same information, some of which unnecessary, multiple times. At other points the defendant even suggested that the claim be re-submitted to include one application for failing backsheets and another application for water getting into the modules, one being the obvious cause of the other.

36. Each time, 1985 Rutgers Solar quickly provided full and complete responses to these requests.

3105021.1

37.     Defendants would also demand information that was burdensome to produce including the serial numbers of a couple of thousand modules which ostensibly would allow defendants to identify which product was damaged.

38.     As it is unreasonable to expect 1985 Rutgers Solar to manually collect a couple of thousand serial numbers, in response, 1985 Rutgers Solar provided the original Purchase Orders which contained information defendants sought.

39.     Defendants responded by stating "there is no way to skip any steps or fast track a claim."

40.     1985 Rutgers Solar, at its own expense, obtained the serial numbers and provided them to defendants on March 14, 2022.

41.     Another two weeks passed before defendants contacted 1985 Rutgers Solar; that communication was a request for more information.

42.     1985 Rutgers Solar provided the information requested and defendants' representative responded that she would be out of the office on vacation and would provide a response "middle to end of next week."

43.     As defendants knew that significant monies were being lost by the system's owner as a result of the shutdown and considering that Trina Solar has a yearly revenue of thirty billion dollars, it was unreasonable that defendants were not timelier in adjusting 1985 Rutgers Solar's claim.

44.     By e-mail dated May 2, 2022, defendants agreed that 1985 Rutgers Solar's claim was covered under its Warranty and sent an Acceptance of Claim Solution form ("AOCS").

45.     The AOCS provided for a full release upon payment of $173,794.27 from defendants to 1985 Rutgers Solar.

46.    This amount is almost $630,000.00 less than 1985 Rutgers Solar paid defendants just a few years prior; stated differently, for a claim accepted as falling under the Warranty, defendants sought to pay 1985 Rutgers Solar 20% of its claim.

47.    1985 Rutgers Solar requested a call with defendants to determine if defendants would provide a fairer payment but defendants resisted having a call.  One of the specific topics of that call was set to discuss how the offer amount was calculated.  In order to avoid further financial loss due to the solar system not operating, 1985 Rutgers Solar specifically requested that someone with authority to explain that calculation, and make further decisions be available on that call.

48.    Ultimately a call between the parties occurred.  However, the call did not include any representatives of the defendant who could explain the calculation of the offer, nor was anyone there with authority to make further decisions.

49.    During that call, the defendants' representatives expressed that the defendants were not going to import any more modules into the United States until an ongoing trade case was decided in the beginning of 2023.  That trade case did not restrict module importation perse, but the outcome could retro-actively impact the import taxes paid on those modules.

50.    Thereafter, by e-mail dated May 19, 2022, defendants wrote the following:

> Upon closer review of your claim and the original module sale, the warranty provider has determined that warranty Revision L (Rev L) is the applicable warranty version.  Section 11 states that this limited Warranty shall apply to products delivered to Buyer from 20th of June 2011.  I apologize that there was confusion on this point initially. I am attaching Rev L for your reference. Section 5 states the claim remedies may be repair, replacement, or refund.

> To fulfill the limited warranty terms Trina is offering $0.4/W as a credit solution.  This increased credit solution responds to your need for an expedited resolution to the claim.

8

> Alternatively, Trina can offer Zep frame replacement modules in the future.  The replacement solution offered would be on a wattage basis.  The date when these modules will be available cannot be determined at this time due to uncertainty with converting module production lines and disruptions to component supply chains.
>
> Let us know which of these to solutions [1985 Rutgers Solar] would like to move forward with.

51.     1985 Rutgers Solar asked for clarification regarding a timeframe when defendants would provide replacement modules.

52.     Defendants refused to commit to a date.

53.     Later, after an executive order that seemed to protect the defendant from the immediate effects of the related Chinese module trade case, 1985 Rutgers Solar sent the following June 27, 2022 e-mail to defendants:

> I have been holding out for the past few weeks, hopeful that Trina will be able to provide replacement modules in a timely fashion.  In parallel, we have been looking for a module that would be suitable for use with the existing Zep racking.
> Unfortunately,  outside of Trina, we can not find another company that sold a Zep integrated module frame.
>
> Ignoring test quality and company reputation, I have also been trying to find the lowest-cost replacement module in any frame profile.  The lowest cost modules we have been able to find available in a 500kW volume are Canadian 450W Solar HiKu CS3W.  The current price is $0.62/W.  But, of course, with those modules, we would also have to purchase new racking.  So we shopped around for the lowest cost Racking as well.  Again, keeping the roof load capacities in mind, the least expensive racking that we could find was Panel Claw at $0.14/W.
>
> That puts our lowest cost of materials suitable to get the array up and functioning as intended at $0.76/W.  This number is almost a magnitude higher than the last cash offer Trina made.  We have been assuming that Trina is basing their offer on the replacement cost of modules that are suitable for the intended use.  Would you please direct us to the vendor(s) that were used in Trina's modeling?  I need to get this system back up and running!

9

3105021.1

54.     Defendants' response included that the "estimated time to produce replacement for your project is in Q2 of 2023.  The credit that the warranty provider has offered is an alternative and an amount that they think is reasonable."

55.     It is unconscionable for defendants to expect their customers to wait at minimum a year and a half to replacement modules.

56.     Defendants, knowing that no one would wait that long for replacement modules and that 1985 Rutgers Solar was in a desperate situation, offered to instead provide 1985 Rutgers Solar with a significantly reduced cost for replacement modules stating.

57.     1985 Rutgers Solar is left with the choice of waiting at least a year and a half for replacement modules or accepting a significantly payment by defendants for replacement modules.

58.     And, in either event, the defendants have refused to consider the cost of new racking material, even though their licensing agreement with the racking manufacturer leaves them as the only source of a module suitable to be used with this racking.

## COUNT I- BREACH OF CONTRACT

59.     The foregoing paragraphs are incorporated at length as if set forth fully herein.

60.     Defendants entered into an agreement with 1985 Rutgers Solar to provide a functional solar panel system, and warranty protection in the event of a defect with the solar panel system.

61.     The solar panel system provided by defendants to 1985 Rutgers Solar did not work as intended.

62.     In addition, defendants failed to perform pursuant to the Warranty.

10

63.     As a result, 1985 Rutgers Solar has been damaged.

**WHEREFORE**, plaintiff 1985 Rutgers Solar, LLC demands judgment in its favor against defendants Changzhou Trina Solar Energy Co., Ltd., and Trina Solar (U.S.), Inc., jointly and severally, in an amount in excess of Eight Hundred Thousand Dollars ($800,000.00), costs of suit, and such other legal and equitable relief as this Court deems just and proper.

## COUNT II- NEGLIGENCE

64.     The foregoing paragraphs are incorporated at length as if set forth fully herein.

65.     Defendants had a duty to provide 1985 Rutgers Solar with a functional solar panel system.

66.     The solar panel system provided by defendants to 1985 Rutgers Solar did not work as intended due to a manufacturing or other defect.

67.     This breach of defendants' duty caused 1985 Rutgers Solar to sustain damages.

**WHEREFORE**, plaintiff 1985 Rutgers Solar, LLC demands judgment in its favor against defendants Changzhou Trina Solar Energy Co., Ltd., and Trina Solar (U.S.), Inc., jointly and severally, in an amount in excess of Eight Hundred Thousand Dollars ($800,000.00), costs of suit, and such other legal and equitable relief as this Court deems just and proper.

## COUNT III- BREACH OF GOOD FAITH AND FAIR DEALING

68.     The foregoing paragraphs are incorporated at length as if set forth fully herein.

69.     Within every agreement there is an implied duty of good faith and fair dealing.

70.     As a result of defendants' actions and inactions as set forth above, defendants have breached this duty owed to 1985 Rutgers Solar.

71.     As a result, 1985 Rutgers Solar has been damaged.

11

**WHEREFORE**, plaintiff 1985 Rutgers Solar, LLC demands judgment in its favor against defendants Changzhou Trina Solar Energy Co., Ltd., and Trina Solar (U.S.), Inc., jointly and severally, in an amount in excess of Eight Hundred Thousand Dollars ($800,000.00), costs of suit, and such other legal and equitable relief as this Court deems just and proper.

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

By: */s/ Jeffrey P. Resnick*
   Jeffrey P. Resnick, Esquire (#030481995)
   308 Harper Drive, Suite 200
   Moorestown, NJ 08057
   Telephone: (856) 662-0700
   Facsimile: (856) 661-2080
   E-mail: jresnick@shermansilverstein.com
   Attorneys for Plaintiff 1985 Rutgers Solar,
   LLC

Dated: __August 3. 2022__

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that the plaintiff demands trial by jury as to all issues in the above matter.

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

By: */s/ Jeffrey P. Resnick*
   Jeffrey P. Resnick, Esquire (#030481995)
   308 Harper Drive, Suite 200
   Moorestown, NJ 08057
   Telephone: (856) 662-0700
   Facsimile: (856) 661-2080
   E-mail: jresnick@shermansilverstein.com
   Attorneys for Plaintiff 1985 Rutgers Solar,
   LLC

Dated: __August 3, 2022__

3105021.1

## DESIGNATION OF TRIAL COUNSEL

Jeffrey P. Resnick, Esquire is hereby designated as trial counsel.

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

By:    /s/ *Jeffrey P. Resnick*
Jeffrey P. Resnick, Esquire (#030481995)
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: (856) 662-0700
Facsimile: (856) 661-2080
E-mail: jresnick@shermansilverstein.com
Attorneys for Plaintiff 1985 Rutgers Solar,
LLC

Dated:   August 3, 2022

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies that to the best of the undersigned's knowledge and

belief, this controversy is not the subject of any other action pending in any court or of a pending

arbitration proceeding, nor is there any such proceeding contemplated at this time and to the best

of the undersigned's knowledge and belief, there are no other parties who must be joined in this

action.

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

By:    /s/ *Jeffrey P. Resnick*
Jeffrey P. Resnick, Esquire (#030481995)
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: (856) 662-0700
Facsimile: (856) 661-2080
E-mail: jresnick@shermansilverstein.com
Attorneys for Plaintiff 1985 Rutgers Solar,
LLC

Dated:   August 3, 2022

3105021.1

# EXHIBIT "K"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### (TRENTON VICINAGE)

| | | |
|---|---|---|
| **1985 RUTGERS SOLAR, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No: 22-cv-6689-MAS-TJB** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ANSWER OF DEFENDANT TRINA** |
| | ) | **SOLAR CO., LTD. f/k/a** |
| | ) | **CHANGZHOU TRINA SOLAR** |
| | ) | **ENERGY CO., LTD.** |
| | ) | |
| **TRINA SOLAR (U.S.), INC. and TRINA** | ) | |
| **SOLAR CO., LTD. f/k/a CHANGZHOU** | ) | |
| **TRINA SOLAR ENERGY CO., LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

COMES NOW Defendant Trina Solar Co., Ltd. f/k/a Changzhou Trina Solar Energy Co.,

Ltd. ("Trina Ltd."), by and through its undersigned counsel, and answers Plaintiff 1985 Rutgers

Solar, LLC's ("Plaintiff" or "1985 Rutgers") Complaint (the "Complaint") as follows[1]:

## THE PARTIES[2]

1.      In response to Paragraph 1, Trina Ltd. states that none of the allegations pertain to

Defendants and a response is therefore not required. To the extent a response is required, Trina

---

[1] By way of general response, all allegations in the Complaint are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, or speculations stated, incorporated, or implied in connection therewith. To the extent that any specific allegations made, or intended to be made, are not specifically admitted, they are denied. Trina Ltd. reserves the right to amend this Answer and to supplement or change this Answer if appropriate following further discovery in this matter. The foregoing is incorporated into each paragraph of this Answer.

[2] Trina Ltd. has reproduced herein the headings and sub-headings contained in the Complaint solely as a matter of convenience. To the extent that any such heading or sub-heading is deemed to contain any allegations, such allegations are denied.

Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

2.      In response to Paragraph 2, Trina Ltd. admits only that Defendant Trina Ltd. is a foreign corporate entity. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 2.

3.      In response to Paragraph 3, Trina Ltd. admits only that Defendant Trina Solar (U.S.), Inc. ("Trina U.S.") is a corporate entity. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 3. Further responding, the address of Trina U.S.'s principal place of business is 7100 Stevenson Blvd., Fremont, CA 94538.

## JURISDICTION AND VENUE

4.      In response to Paragraph 4, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

5.      In response to Paragraph 5, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

## STATEMENT OF FACTS

6.      In response to Paragraph 6, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

7.      In response to Paragraph 7, Trina Ltd. admits that Defendants are involved in the development, production, and/or sales of solar modules and related products, but states that the

2

allegations are vague and conclusory and conflate various entities' roles in the research, development, production, and/or sales of solar modules. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 7.

8.      In response to Paragraph 8, Trina Ltd. states that the referenced webpage and warranty speak for themselves and denies any allegations inconsistent therewith. Trina Ltd. further responds that Plaintiff omits reference to any specific warranty applicable to the product purchased by Plaintiff, or any obligations, limitations, or exclusions under such warranty. Trina Ltd. further states that Paragraph 8 conflates multiple Defendants and fails to allege which, if any, Defendant offered any warranty applicable to the product purchased by Plaintiff, or which Defendant purportedly made the statements referenced in Paragraph 8.

9.      In response to Paragraph 9, Trina Ltd. admits only that modules, inverters, and a racking system are generally components of a given solar panel system. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 9.

10.      In response to Paragraph 10, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 regarding all "[t]raditional Crystalin Solar modules." Further responding, Trina Ltd. admits that "crystalline" photovoltaic solar panels capture sunlight and cause electrons in the panels' silicon cells to release energy, which is captured by an inverter for use in homes and businesses. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 10 as stated.

11.      In response to Paragraph 11, Trina Ltd. admits that a backsheet encapsulates and protects crystalline solar panels from moisture penetration. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 11 as stated.

12.    In response to Paragraph 12, Trina Ltd. states that the allegations in Paragraph 12 consist of vague, argumentative, and conclusory allegations that are not specific to Defendants or the facts at issue and, thus, no response is required. To the extent a response is required, Trina Ltd. denies the allegations in Paragraph 12 and, specifically, that "electrical currents" traveled outside of any solar modules at issue "causing a threat to human life."

13.    In response to Paragraph 13, Trina Ltd. states that the allegations in Paragraph 13 consist of vague, argumentative, and conclusory allegations that are not specific to Defendants or the facts at issue and, thus, no response is required. To the extent a response is required, Trina Ltd. states that failure of a backsheet may theoretically cause water penetration into solar modules. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 13 and, specifically, that any modules at issue caused "corrosion and short circuits that le[d] to 'thermal events,' including life-threatening property fires."

14.    In response to Paragraph 14, Trina Ltd. states that the allegations in Paragraph 14 contain vague and conclusory assertions that are not specific to any Defendant, such that no response is required. To the extent a response is required, Trina Ltd. lacks sufficient information to form a belief as to the truth or falsity of the allegations, and, on that basis, denies them.

15.    Trina Ltd. denies the allegations in Paragraph 15.

16.    Trina Ltd. denies the allegations in Paragraph 16.

17.    In response to Paragraph 17, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and, on that basis, denies them. Trina Ltd. specifically denies that any modules at issue caused "harm to person and property."

18.     Trina Ltd. denies the allegations in Paragraph 18.

19.     In response to Paragraph 19, Trina Ltd. admits only that an entity known as Absolutely Energized Solar Electric, Inc. (hereinafter, "AES") contracted with Trina U.S. in 2011 to purchase 2128 TR1N-235AMountIII-A-PA5.10 modules along with a corresponding racking system. In further response to Paragraph 19, Trina Ltd. states that none of the remaining allegations pertain to Defendants and a response is therefore not required. To the extent a further response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

20.     In response to Paragraph 20, Trina Ltd. admits that certain types of solar modules manufactured by Trina Ltd. during certain time periods were compatible with mounting systems licensed by ZEP Solar, Inc. as part of a licensing, sales, and marketing agreement with ZEP Solar, Inc. Further responding, Plaintiff quotes an uncited document, which speaks for itself, and Trina Ltd. denies any allegations inconsistent therewith. Trina Ltd. further responds that none of the remaining allegations pertain to Defendants and a response is therefore not required. To the extent a further response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 and, on that basis, denies them.

21.     In response to Paragraph 21, Trina Ltd. admits that certain types of solar modules manufactured by Trina Ltd. during certain time periods were compatible with mounting systems licensed by ZEP Solar, Inc. as part of a licensing, sales, and marketing agreement with ZEP Solar, Inc. Trina Ltd. further responds that none of the remaining allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina

Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 and, on that basis, denies them.

22.     In response to Paragraph 22, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them. Trina Ltd. cannot presently assess whether AES or some other entity ultimately bore financial responsibility, or the amount of such responsibility borne by AES, for any solar modules purchased from Defendants.

23.     In response to paragraph 23, Trina Ltd. denies that Trina U.S. issued a Limited Warranty for product purchased by AES. Further responding, Trina Ltd. admits that Trina Ltd. issues express Limited Warranties for various products it manufactures, which are subject to numerous obligations, exclusions, and limitations. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 23 as stated.

24.     In response to Paragraph 24, Trina Ltd. states that the referenced warranty speaks for itself and denies any allegations inconsistent therewith.

25.     In response to Paragraph 25, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

26.     In response to Paragraph 26, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

27.     In response to Paragraph 27, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

28.     In response to Paragraph 28, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

29.     In response to the first sentence of Paragraph 29, Trina Ltd. admits only that on February 21, 2022, an entity named AEPS Electric, LLC purported to submit a warranty claim to Trina Ltd. and that subsequent correspondence occurred between this entity and Defendants concerning this warranty claim. In response to the second sentence of Paragraph 29, Trina Ltd. admits only that, on March 2, 2022, an individual known or believed to be affiliated with AEPS Electric, LLC requested by email that "a Trina representative come out to evaluate and take down the additional serial numbers of affected modules." Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 29.

30.     In response to Paragraph 30, Trina Ltd. admits only that Defendants requested that 1985 Rutgers provide the requisite documentation concerning its purported warranty claims, as required to provide timely and adequate notice of claims, which 1985 Rutgers had not provided. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 30.

31.     Trina Ltd. denies the allegations in Paragraph 31.

32.     In response to Paragraph 32, Trina Ltd. admits only that an individual known or believed to be affiliated with AEPS Electric, LLC requested the phone number of the "Senior Technical Service Supervisor" with whom she was communicating with respect to the warranty claim. AEPS Electric, LLC's representative was advised that "Trina's technical services department tries to maintain conversations over email," and was provided further explanation for this communication preference. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 32.

33.     Trina Ltd. denies the allegations in Paragraph 33.

34.     In response to Paragraph 34, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

35.     In response to the first sentence of Paragraph 35, Trina Ltd. admits that Defendants engaged in correspondence concerning the warranty claims at issue with individuals known or believed to be affiliated with AEPS Electric, LLC. Defendants requested information that was required for proper and timely notice, but was not originally or timely provided by Plaintiff. In response to the second sentence of Paragraph 35, Trina Ltd. admits only that an individual known or believed to be affiliated with AEPS Electric, LLC provided limited photographic documentation by email and cloud-based file transfer on April 20, 2022, after which Defendants requested further documentation required for Plaintiff's warranty claims. Answering further, an individual known or believed to be affiliated with AEPS Electric, LLC replied, stating that "[w]e consider this this to be a single claim since the backstreet [*sic*] failure would certainly account for water infiltration and the cooroding [*sic*] buss bars." Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 35.

8

36.     Trina Ltd. denies the allegations in Paragraph 36.

37.     In response to Paragraph 37, Trina Ltd. admits only that Defendants requested that individuals known or believed to be affiliated with AEPS Electric, LLC provide the serial numbers of the modules at issue, which is an express condition to provide proper and timely notice of 1985 Rutgers's warranty claims. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 37.

38.     In response to Paragraph 38, Trina Ltd. admits that Plaintiff did not provide "all module serial numbers being claimed" as required to provide proper and timely notice of warranty claims. Instead, individuals known or believed to be affiliated with AEPS Electric, LLC provided only certain purchase-related information, stating: "giving [Trina Ltd.] the serial numbers off of a couple thousand modules is an unreasinable [*sic*] request. We were able to find the original PO's with container numbers etc." Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 38.

39.     In response to Paragraph 39, Trina Ltd. states that the referenced communication speaks for itself and denies any allegations inconsistent therewith. Trina Ltd. further responds that Defendants requested information required for 1985 Rutgers to provide proper and timely notice of warranty claims.

40.     In response to Paragraph 40, Trina Ltd. admits only that individuals known or believed to be affiliated with AEPS Electric, LLC provided 2,131 serial numbers by emails dated March 14, 2022. None of the remaining allegations in Paragraph 40 pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies them.

41.     Trina Ltd. denies the allegations in Paragraph 41.

42.     In response to Paragraph 42, Trina Ltd. denies that 1985 Rutgers provided all "information requested" as required to provide proper and timely notice of warranty claims. Trina Ltd. admits that, on April 12, 2022, an individual known or believed to be affiliated with AEPS Electric, LLC provided a Dropbox link containing a "Backsheet Defects folder including requested [pictures]" to Defendants. Further responding, on April 12, 2022, a representative of Defendants stated that she would be on vacation, but that AEPS Electric, LLC could "expect [her] response middle to end of next week." Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 42.

43.     Trina Ltd. denies the allegations in Paragraph 43.

44.     In response to Paragraph 44, Trina Ltd. denies that Defendants "agreed that 1985 Rutgers Solar's claim was covered under its Warranty." Further responding, Trina Ltd. admits that, in an email dated May 2, 2022, Defendants informed individuals known or believed to be affiliated with AEPS Electric, LLC that, notwithstanding defects in the documentation, Trina Ltd. offered to accept "a reduced amount of evidence" from Plaintiff on a one-time basis and provided an "Acceptance of Claim Solution" to be signed by Plaintiff or Plaintiff's agents or representatives to accept Defendants' offer. Plaintiff rejected Defendants' offer and did not execute the form. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 44.

45.     In response to Paragraph 45, Trina Ltd. admits that the AOCS offer provided for a full release upon payment of $173,794.27. Plaintiff rejected Defendants' offer and refused to accept Defendants' proposed remedy.  Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 45 as stated.

46.     In response to Paragraph 46, Trina Ltd. denies Plaintiff's characterization of the relevant claim as being "accepted as falling under the warranty." Further responding, Trina Ltd. states that the referenced mathematical calculations speak for themselves and denies any allegations inconsistent therewith. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 46.

47.     In response to the first and second sentences of Paragraph 47, Trina Ltd. admits only that an individual known or believed to be affiliated with AEPS Electric, LLC sent an email on April 20, 2022 stating, in relevant part, that he "would appreciate your setting up a conference call with the folks analyzing the claim so that I can better understand what more they need to understand." The same individual emailed on April 21, 2022 stating, in relevant part, that he "would like to insist that we have a call to begin discussing resolution methods and strategies." Trina Ltd. further responds that it presently lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47, including with respect to Plaintiff's motivations for a call with Defendants and, on that basis, denies those allegations. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 47.

48.     In response to Paragraph 48, Trina Ltd. responds that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding an unspecified "call between the parties," and denies the allegations on that basis. Further responding, Trina Ltd. admits that a call occurred between an individual known or believed to be affiliated with AEPS Electric, LLC; Plaintiff's legal counsel; and affiliates of Defendants. The parties discussed certain matters pertaining to 1985 Rutgers's warranty claims. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 48.

49.     In response to the first sentence of Paragraph 49, Trina Ltd. responds that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding an unspecified "call between the parties," and denies the allegations on that basis. To the extent a further response is required, Trina Ltd. denies the allegations in the first sentence as stated. Trina Ltd. admits that discussions occurred between the parties regarding, among other issues affecting product manufacturing and shipment, the impact of an ongoing trade case and the potential for prohibitive tariffs on imports. In response to the second sentence of Paragraph 49, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them as stated. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 49.

50.     In response to Paragraph 50, Trina Ltd. admits that the email was sent. Further responding, the referenced email speaks for itself, and Trina Ltd. denies any allegations inconsistent therewith.

51.     In response to Paragraph 51, Trina Ltd. denies the allegation as stated. Further responding, the parties discussed potential timing of delivery of replacement modules. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 51.

52.     In response to Paragraph 52, Trina Ltd. denies the allegation as stated. Further responding, Defendants did not refuse to commit to a delivery date at any time. On May 19, 2022, Defendants stated only that "the date when these modules will be available cannot be determined at this time," but in subsequent correspondence projected delivery in Q2 of 2023. Defendants also offered an alternative remedy of a credit as an alternative to replacement

modules. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 52.

53.     In response to Plaintiff's assertion in Paragraph 53 that the executive order in question "seemed to protect the defendant from the immediate effects of the related Chinese module trade case," Trina Ltd. states that that assertion is a legal conclusion or argument not subject to admission or denial and, to the extent it does require a response, Trina Ltd. denies it. In response to the remainder of Paragraph 53, Trina Ltd. admits that such email was sent. Further responding, Trina Ltd. states that the referenced email speaks for itself and denies any allegations inconsistent therewith.

54.     In response to Paragraph 54, Trina Ltd. admits that the referenced email was sent. Further responding, Trina Ltd. states that the referenced email speaks for itself and denies any allegations inconsistent therewith. Further responding, Defendants offered replacement product projected for delivery in Q2 of 2023, or a credit in lieu of replacement product. Plaintiff refused both alternative offers and filed a lawsuit. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 54.

55.     In response to Paragraph 55, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial. To the extent Paragraph 55 requires a response, Trina Ltd. denies the allegations.

56.     In response to Paragraph 56, Trina Ltd. admits only that Trina Ltd. offered a monetary credit as an alternative to module replacement in respect of the warranty claims at issue in this litigation, which Plaintiff rejected. Other than as specifically admitted herein, Trina Ltd. denies the allegations in Paragraph 56.

57.     In response to Paragraph 57, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

58.     In response to Paragraph 58, Trina Ltd. denies Plaintiff's contention that "the defendants have refused to consider the cost of new racking material." In response to the remaining allegations in Paragraph 58, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

## COUNT I – BREACH OF CONTRACT

59.     In response to Paragraph 59, Trina Ltd. incorporates by reference its responses to Paragraphs 1 through 58 of the Complaint.

60.     In response to Paragraph 60, Trina Ltd. states that the referenced agreement and any warranty applicable to the product speak for themselves, and Trina Ltd. denies any allegations inconsistent therewith.

61.     Trina Ltd. denies the allegations in Paragraph 61.

62.     Trina Ltd. denies the allegations in Paragraph 62.

63.     In response to Paragraph 63, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

## DEMAND – COUNT I

Trina Ltd. states that the allegations contained in this paragraph are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them. Trina Ltd. denies that Plaintiff is entitled to a judgment against either Defendant, costs of its suit, or any legal costs or equitable relief.

## COUNT II – NEGLIGENCE

64. In response to Paragraph 64, Trina Ltd. incorporates by reference its responses to Paragraphs 1 through 63 of the Complaint.

65. In response to Paragraph 65, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

66. Trina Ltd. denies the allegations in Paragraph 66.

67. In response to Paragraph 67, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

## DEMAND – COUNT II

Trina Ltd. states that the allegations contained in this paragraph are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them. Trina Ltd. denies that Plaintiff is entitled to a judgment against either Defendant, costs of its suit, or any legal costs or equitable relief.

## COUNT III – BREACH OF GOOD FAITH AND FAIR DEALING

68. In response to Paragraph 68, Trina Ltd. incorporates by reference its responses to Paragraphs 1 through 67 of the Complaint.

69.     In response to Paragraph 69, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

70.     In response to Paragraph 70, Trina Ltd. states that the allegations contained therein are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them.

71.     In response to Paragraph 71, Trina Ltd. states that none of the allegations pertain to Defendants and a response is therefore not required. To the extent a response is required, Trina Ltd. lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies them.

## DEMAND – COUNT III

Trina Ltd. states that the allegations contained in this paragraph are legal conclusions or arguments not subject to admission or denial and, to the extent they do require a response, Trina Ltd. denies them. Trina Ltd. denies that Plaintiff is entitled to a judgment against either Defendant, costs of its suit, or any legal costs or equitable relief.

## SPECIAL DEFENSES

Without assuming the burden of proof on any matters where the burden rests on Plaintiff, and without admitting any fact or facts alleged by Plaintiff other than as previously set forth herein, Trina Ltd. asserts the following special defenses with respect to the claims that Plaintiff purports to assert in the Complaint:

### *First Special Defense*

Plaintiff fails to allege facts sufficient to state any claim against Trina Ltd. upon which relief can be granted.

### Second Special Defense

Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

### Third Special Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Fourth Special Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### Fifth Special Defense

Plaintiff is barred from recovery by its failure to mitigate or minimize injury and damages, if any, including, but not limited to, by Plaintiff's failure to cover and rejection of contractual remedies offered to it by Defendants.

### Sixth Special Defense

Plaintiff's claims are barred, in whole or in part, because all of Trina Ltd.'s actions challenged by Plaintiff were permitted under and complied with the applicable warranty agreement and other relevant contractual agreements between the parties.

### Seventh Special Defense

Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

### Eighth Special Defense

The claims asserted in the Complaint are or will be barred to the extent that they have been settled, compromised, released, or otherwise discharged.

### Ninth Special Defense

Plaintiff's claims are barred, in whole or in part, because one or both of Defendants is or are not the proper parties in interest against whom Plaintiff's claims should be brought.

### Tenth Special Defense

Plaintiff lacks standing to assert claims for breach of the applicable warranty, and cannot otherwise maintain its claims, because Plaintiff is not the "first customer installing (for its own use)," the "Buyer" (as such term is defined in the relevant warranty documents), or otherwise the end user of the solar modules at issue and thus cannot properly assert claims under the applicable warranty agreement and other relevant contractual agreements between the parties.

17

*Eleventh Special Defense*

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to fulfill a condition or conditions precedent to obtaining relief under the applicable warranty agreement or otherwise failed to fully abide by the terms of the applicable warranty agreement.

*Twelfth Special Defense*

Plaintiff's claims are barred, in whole or in part, because Plaintiff seeks relief which it expressly waived under the applicable warranty agreement and other relevant contractual documents, or to which Plaintiff is otherwise not entitled.

*Thirteenth Special Defense*

Plaintiff's claims are barred, in whole or in part, by the failure to provide adequate and timely notice of claims.

*Reservation of Right to Assert Additional Defenses*

Trina Ltd. has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other affirmative defenses as may become available, apparent or appropriate during discovery. Trina Ltd. further reserves the right to amend its answer and affirmative defenses, and to delete affirmative defenses that it determines during the course of discovery are not applicable.

Dated: January 13, 2023

Respectfully submitted,

**TRINA SOLAR CO., LTD. f/k/a CHANGZHOU TRINA SOLAR ENERGY CO., LTD.**

_____

Ruofei Xiang
**MAZZOLA LINDSTROM LLP**
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
ruofei@mazzolalindstrom.com
347.280.8432

-and-

**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Richard J. Grabowski (admitted _pro hac vice_)
949.553.7514
rgrabowski@jonesday.com

555 South Flower Street, 50th Floor
Los Angeles, California 90071-2300
David A. Ciarlo (admitted _pro hac vice_)
213.243.2769
dciarlo@jonesday.com

100 High Street, 21st Floor
Boston, Massachusetts 02110-1781
Ryan D. Class (admitted _pro hac vice_)
617.449.6804
rclass@jonesday.com

_Attorneys for Defendant Trina Solar Co., Ltd. f/k/a Changzhou Trina Solar Energy Co., Ltd._

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### (TRENTON VICINAGE)

| | |
|---|---|
| **1985 RUTGERS SOLAR, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No: 22-cv-6689-MAS-TJB** |
| ) | |
| **v.** ) | |
| ) | **CERTIFICATE OF SERVICE** |
| ) | |
| ) | |
| ) | |
| ) | |
| **TRINA SOLAR (U.S.), INC. and TRINA** ) | |
| **SOLAR CO., LTD. f/k/a CHANGZHOU** ) | |
| **TRINA SOLAR ENERGY CO., LTD.,** ) | |
| ) | |
| **Defendants.** ) | |

I hereby certify that on January 13, 2023, I electronically filed the foregoing Answer of Defendant Trina Solar Co., Ltd. f/k/a Changzhou Trina Solar Energy Co., Ltd. with the Clerk of the District Court using the CM/ECF system, and served the foregoing documents on the following counsel for plaintiff via ECF service and via electronic mail:

> Jeffrey R. Resnick, Esq.
> Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
> 308 Harper Drive, Suite 200
> Moorestown, NJ 08057
> Telephone: (856) 662-0700
> jresnick@shermansilverstein.com

Dated: January 13, 2023

MAZZOLA LINDSTROM, LLP

By: */s/ Ruofei Xiang*
Ruofei Xiang, Esq.
1350 Avenue of the Americas, 2d Floor
New York New York 10019
D: 646.216.8300
ruofei@mazzolalindstrom.com
*Attorneys for Defendants*