**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)**

| | | |
|---|---|---|
| **LONGMEADOW ONE SOLAR LLC,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No: 3:24-cv-03223-GC-JBD** |
| **v.** | ) ) | |
| **TRINA SOLAR CO., LTD.** *et al.*, | ) ) | |
| **Defendants.** | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT TRINA SOLAR CO.  LTD.'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ..................................................................................1

FACTUAL BACKGROUND .....................................................................................2

    I.    TUS AND TSL ARE SEPARATE AND DISTINCT ENTITIES....................................2

    II.    PLAINTIFFS IMPROPERLY ATTEMPT TO SERVE TSL THROUGH TUS'S REGISTERED AGENT IN THE UNITED STATES. ....................................................3

    III.    PLAINTIFFS ALLEGE THAT A THIRD PARTY CONTRACTED WITH TUS TO PURCHASE PRODUCT ....................................................................................4

    IV.    PLAINTIFFS' ALLEGATIONS ARE CONTRARY TO THE LIMITED WARRANTY UPON WHICH THEY RELY. ...............................................................4

ARGUMENT ...........................................................................................................7

    I.    THE COURT SHOULD GRANT TRINA LTD.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(5)........................................................................7

        A.    LEGAL STANDARD..........................................................................7

        B.    PLAINTIFFS FAIL TO PLEAD, MUCH LESS PROVE, THAT TUS IS EITHER TSL'S ALTER EGO OR AGENT FOR SERVICE OF PROCESS. ..........................................................................................8

    II.    THE SAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. ...................................................................................11

        A.    LEGAL STANDARD........................................................................11

        B.    PLAINTIFFS IMPROPERLY RELY ON "GROUP PLEADING" TO ASSERT CLAIMS AGAINST DEFENDANTS.........................................11

        C.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENCE, BECAUSE THEY SEEK ONLY ECONOMIC LOSSES................................13

        D.    PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING. ........................16

            1.    Plaintiffs Did Not Contract With TUS Or TSL. ...................................16

            2.    Plaintiffs' Claims for Breach of the Implied Covenant Duplicate Their Claims for Breach of Warranty. ..................................................17

        E.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES ...............................................................19

    III.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE. .........................................20

CONCLUSION........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*,
No. CA 11-720(JAP), 2011 WL 6756973 (D.N.J. Dec. 23, 2011)................................................... 2, 15

*Alloway v. Gen. Marine Indus., L.P.*,
695 A.2d 264 (N.J. 1997) ....................................................................................................... 14, 16

*Alpine E. Elec., LLC v. Mod. Grp. Ltd.*,
No. 17-5726-FLW-DEA, 2018 WL 3159881 (D.N.J. Mar. 19, 2018)................................................ 20

*Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*,
No. CV-2:11-0403-SRC-JSA, 2022 WL 683084 (D.N.J. Mar. 8, 2022) ........................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................................... 11

*Cephalon, Inc. v. Sun Pharm. Indus., Inc.*,
No. CIV.A. 11-5474, 2011 WL 6130416, at *2-3 (D.N.J. Dec. 7, 2011). ..................................... 9, 10

*Charles Gendler & Co. v. Nippon Elec. Co.*,
488 A.2d 1091 (N.J. Super. Ct. App. Div. 1985) ............................................................................... 8

*Craig v. Lake Asbestos of Quebec, Ltd.*,
843 F.2d 145 (3d Cir. 1988) ............................................................................................................... 9

*Crespi v. Zeppy*,
No. A-2044-20, 2022 WL 815429 (N.J. Super. Ct. App. Div. Mar. 18, 2022)............................ 1, 9, 10

*Feldman v. Mercedes-Benz USA, LLC*,
No. 2:11-CV-00984 WJM, 2012 WL 6596830 (D.N.J. Dec. 18, 2012)............................................. 18

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ............................................................................................................. 11

*Gapanovich v. Komori Corp.*,
605 A.2d 1120 (N.J. Super. Ct. App. Div. 1992) ............................................................................... 8

*George v. Jaguar Land Rover N. Am. LLC*,
No. 2:20-CV-17561 (WJM), 2021 WL 5195788 (D.N.J. Nov. 8, 2021) .................................. 2, 17, 18

*Grand Entm't Group v. Star Media Sales*,
 988 F.2d 476 (3d Cir. 1993) ........................................................................... 7, 10

*Greene v. BMW of North America*,
 No. CIV. 2:11-04220 WJM, 2013 WL 5287314, at *4 (D.N.J. Sept. 17, 2013 ............................ 17, 20

*Hahn v. OnBoard LLC*,
 No. 09-3639, 2009 WL 4508580 (D.N.J. Nov.16, 2009) ................................................... 17

*Johnson v. State Farm Fire & Cas. Co.*,
 No. 18-15209-RBK-KMW, 2019 WL 2285491 (D.N.J. May 29, 2019) ........................................... 20

*Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*,
 No. 22-06530-KM-MAH, 2023 WL 6141237 (D.N.J. Sept. 20, 2023) ........................................ 19, 20

*Levari Enterprises, LLC v. Kenworth Truck Co., Paccar Inc.*,
 No. 1:20-CV-06210-NLH-AMD, 2022 WL 4445404, at *3 (D.N.J. Sept. 23, 2022) .......................... 15

*Mason v. Roman Catholic Archdiocese of Trenton*,
 No. 18-10733, 2019 WL 1320299 (D.N.J. Mar. 22, 2019) .................................................. 18

*MHA, LLC v. Amerigroup Corp.*,
 539 F. Supp. 3d 349 (D.N.J. May 17, 2021) ......................................................... 2, 11, 12

*Mills v. Ethicon, Inc.*,
 406 F. Supp. 3d 363 (D.N.J. 2019) ............................................................... 7, 8, 9, 12

*Omni Cap. Int'l v. Rudolph Wolff & Co.*,
 484 U.S. 97 (1987) ................................................................................... 7

*Pat. Incentives, Inc. v. Seiko Epson Corp.*,
 No. CIV.A. 88-1407, 1988 WL 92460 (D.N.J. Sept. 6, 1988) ............................................. 9

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
 998 F.2d 1192 (3d Cir. 1993) ........................................................................ 11

*Power v. Bayonne Bd. of Educ.*,
 No. 16-5091 (KM), 2017 WL 1536221 (D.N.J. Apr. 26, 2017) ........................................... 16

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
 71 F. Supp. 3d 492, 507 (D.N.J. 2014) .......................................................... 13, 14, 20

*Reddy v. MedQuist, Inc.*,
 No. 06-4410, 2009 WL 2413673 (D.N.J. Aug., 4 2009) .................................................. 7

*RJ Brands, LLC v. Hangdong Trading Ltd.*,
 No. 21-CV-04747-JXN-ESK, 2021 WL 3206813 (D.N.J. July 28, 2021) .................................... 8

*Sheeran v. Blyth Shipholding S.A.*,
    No. CV 14-5482, 2015 WL 9048979 (D.N.J. Dec. 16, 2015) .......................................................... 13

*Spring Motors Distributors, Inc. v. Ford Motor Co.*,
    489 A.2d 660 (N.J. 1985) .................................................................................................................... 2, 13

*State, Dep't of Envtl. Prot. v. Ventron Corp.*,
    468 A.2d 150 (N.J. 1983) ......................................................................................................................... 9

*T.J. McDermott Transp. Co. v. Cummins, Inc.*,
    No. CIV. 14-04209 WHW, 2015 WL 1119475 (D.N.J. Mar. 11, 2015) .............................................. 18

*Travelers Indem. Co. v. Dammann & Co.*,
    592 F. Supp. 2d 752 (D.N.J. 2008) ..................................................................................................... 15

*Wade v. Kessler Inst.*,
    798 A.2d 1251 (N.J. 2002) ................................................................................................................... 18

Plaintiffs bring claims for breach of express warranty, negligence, and breach of the implied covenant of good faith and fair dealing against both Trina Solar Co., Ltd. (f/k/a Changzhou Trina Solar Energy Co. Ltd.) ("TSL"), and Trina Solar (U.S.), Inc. ("TUS"). Plaintiffs' claims all arise from purportedly defective photovoltaic solar modules manufactured by TSL, a foreign entity, which Plaintiffs purchased from a non-party downstream distributor through their managing member. Because Plaintiffs failed to properly serve TSL with the First Amended Complaint ("FAC"), later amended with the Second Amended Complaint ("SAC"), and they fail to state any claim for which relief may be granted, the Court should dismiss the Second Amended Complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

## SUMMARY OF ARGUMENT

As Plaintiffs acknowledge in the SAC, TSL and TUS are two distinct entities. *See* Declaration of Ruofei Xiang ("Xiang Decl."), Exhibit B, SAC ¶¶ 10-11. TSL is a Chinese entity, with its place of business in China. SAC ¶ 10. It does not have any address in California or the United States; nor does it have any registered agents in the United States. SAC ¶ 12. Nevertheless, Plaintiffs improperly attempted to serve TSL through *TUS's* registered agent in New Jersey and California. SAC at 3 n.1; Xiang Decl., Exhibit A, Affidavit of Service "To properly serve a foreign corporation through its subsidiary, New Jersey law requires that the plaintiff prove the subsidiary is an alter ego or agent of the parent." *Crespi v. Zeppy*, No. A-2044-20, 2022 WL 815429, at *3–5 (N.J. Super. Ct. App. Div. Mar. 18, 2022). Plaintiffs wholly ignore these requirements and fail to plead *any* facts about the relationship between TSL and TUS, much less any facts suggesting that TUS is TSL's alter ego or agent for service of process (nor can they do so). Accordingly, Plaintiffs failed to properly serve TSL, and the Motion should be granted.

Even if they had properly served TSL, Plaintiffs' SAC would still fail as a matter of law. Plaintiffs improperly lump TSL and TUS together, and generally assert the same allegations and causes of action against them collectively as "Defendants." As courts routinely hold, such "group pleadings" fail to provide notice of claims against *each* Defendant as required under Rule 8 of the

1

Federal Rules of Civil Procedure. *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 365 (D.N.J. May 17, 2021). For this separate reason, the SAC should be dismissed under Rule 12(b)(6) for failure to state a claim for relief.

Plaintiffs also fall woefully short of pleading a claim for negligence against any Defendant. Under New Jersey law, Plaintiffs cannot pursue claims and damages sounding in tort based only on economic losses that do not involve harm to persons or property other than the solar modules and solar systems into which the modules were integrated. *Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, No. CA 11-720(JAP), 2011 WL 6756973, at *4 (D.N.J. Dec. 23, 2011); *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985). Rather, as New Jersey courts uniformly hold, a plaintiff's sole recourse to recover economic losses based on a purportedly defective product is to make a valid warranty claim under the Uniform Commercial Code ("U.C.C"). *E.g.*, *Spring Motors*, 489 A.2d at 663. Because Plaintiffs seek only economic losses—for alleged contracting costs, replacement costs, and diminution of the product's value—they cannot state a claim for negligence against TSL (or any Defendant).

Finally, Plaintiffs fail to state a claim for breach of the covenant of good faith and fair dealing. By their own admission, Plaintiffs did not enter into any contracts with TSL (or TUS). Accordingly, there is no implied covenant under which they can assert claims. *George v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-17561 (WJM), 2021 WL 5195788, at *9 (D.N.J. Nov. 8, 2021). Moreover, Plaintiffs' claims for breach of the duty of good faith and fair dealing are entirely duplicative of their claims for breach of warranty, which separately defeats their implied covenant claims. *Id.*

For these reasons, and the reasons set forth herein, the Court should respectfully grant TSL's Motion.

## **FACTUAL BACKGROUND**

## I.     **TUS AND TSL ARE SEPARATE AND DISTINCT ENTITIES.**

TSL is a Chinese manufacturer of photovoltaic solar modules and parts.  TSL operates as a

corporate entity established under the laws of China, and it maintains its place of business in China. Declaration of Mike Nelson ("Nelson Decl.") ¶ 5. TSL lacks any presence in the United States: it does not distribute or market solar modules in the United States, and it has no place of business in the United States. *Id.* ¶ 6. TSL does not own or lease any real property in United States, and it does not have any offices, facilities, or bank accounts in the United States. *Id.* ¶ 7. Nor does TSL have any employees based in the United States. *Id.* ¶ 8. TSL is not registered to do business in any state, and it does not maintain any agents for service of process in the United States. *Id.* ¶ 9.

For its part, TUS is a Delaware corporation with a principal place of business in California. *Id.* ¶ 10. TUS is a wholly owned subsidiary of Trina Solar (U.S.) Holding, Inc., which is wholly owned by Trina Solar (Schwiez) AG ("Trina Switzerland"). *Id.*. TUS enters contracts, markets, and distributes solar modules in the United States. *Id.* ¶ 11.

TSL and TUS are affiliated, but separate entities. *Id.* ¶ 12. Each is adequately capitalized and independently observes corporate formalities. *Id.* ¶ 13. TUS and TSL maintain separate bank accounts and independent corporate and financial records. *Id.* ¶ 14. TUS and TSL do not commingle finances or assets. *Id.* TUS and its affiliate, Trina Solar (U.S.) Holding, Inc., file a consolidated tax return and they pay any necessary taxes in their own names. *Id.* ¶ 15. TUS and Trina Solar (U.S.) Holding, Inc. do not include TSL on their consolidated tax returns, because TSL does not operate in the United States. *Id.* TSL does not control TUS's day-to-day business operations; nor does TUS control TSL's daily business operations. *Id.* ¶ 16.

## II. PLAINTIFFS IMPROPERLY ATTEMPT TO SERVE TSL THROUGH TUS'S REGISTERED AGENT IN THE UNITED STATES.

While Plaintiffs correctly allege that TSL is "a foreign corporate entity" distinct from TUS, they evaded the requirements to properly serve a foreign entity by attempting to serve TSL through TUS's registered agent in New Jersey and California on February 14, 2024. SAC at 3, ¶10-12 & n.1. But TSL does not have an address in the care of TUS in California—or anywhere else in the United States—and TUS is not authorized to accept service of process on TSL's behalf. Nelson Decl. ¶¶ 6, 17.

3

Specifically, on February 15 and 22, 2024, Plaintiffs filed Affidavits of Service for "Trina Solar Co., Ltd, f/k/a Changzhou Trina Solar Energy Co., Ltd." ECF No. 1-1 at 62, 150. Plaintiffs claim they served TSL via its purported registered agent, CT Corporation Systems, in New Jersey and California. *Id.* Plaintiffs did not attempt to serve TSL in any other manner. But CT Corporation Systems is not TSL's registered agent in New Jersey, California, or any other state. Nelson Decl. ¶ 9. Rather, CT Corporation Systems is *TUS's* registered agent in New Jersey and California. *Id.* ¶ 18.  Neither CT Corporation Systems nor TUS is authorized to accept service on TSL's behalf. *Id. Id.* ¶¶ 9, 17.

## III.    PLAINTIFFS ALLEGE THAT A THIRD PARTY CONTRACTED WITH TUS TO PURCHASE PRODUCT.

Plaintiffs allege that in April of 2014 and March of 2015, G&S Solar Installers, LLC ("G&S")—a non-party to this suit—contracted with TUS to purchase solar modules that were manufactured by TSL. SAC ¶ 18. Plaintiffs attach to the SAC a sales order issued to G&S by TUS for solar modules for the total price of $2.9 million. SAC, Ex. A. Plaintiffs also attach an invoice issued by still another third party, Hudson Renewables LLC, to G&S for a total of $1.079 million. *Id.* Plaintiffs allege that G&S paid TUS $1.6 million for the modules at issue in the litigation. SAC ¶ 18. According to Plaintiffs, their managing member, SunRay Power, LLC ("SunRay"), procured the modules from G&S, which Plaintiffs allegedly used as "primary components of a solar array system," which includes "the modules, inverters, and racking system." SAC ¶¶ 17-18, 22.

What Plaintiffs do not (and cannot) allege is the existence of a contract between TSL (or TUS), on the one hand, and any of the Plaintiffs, on the other hand. Nor do any of the contract documents attached to the SAC mention any Plaintiff. *See* SAC ¶¶ 18-20, Exs. A-B. Based on Plaintiffs' allegations, and the documents they attach to the SAC, Plaintiffs are at least three parties removed from G&S, the party that allegedly contracted with TUS to purchase the modules. *Id.*

## IV.    PLAINTIFFS' ALLEGATIONS ARE CONTRARY TO THE LIMITED WARRANTY UPON WHICH THEY RELY.

According to Plaintiffs, on or about August 12, 2022, "SunRay received an alert that

production of power to one of the Systems (DY HS), rapidly declined." SAC ¶ 23. Later in August 2022, "SunRay received further notifications that power had rapidly declined" for four other solar systems. SAC ¶¶ 24. Plaintiffs further allege that in November 2024, SunRay received notification that power had declined for four remaining systems. SAC ¶ 25. Plaintiffs allege that, sometime later, "SunRay discovered that the cause of the rapid declines in power to the Initial Systems were defects in the Modules that were purchased from Defendants in April of 2014 and March of 2015." SAC ¶ 26. Plaintiffs claim that the alerts as to the remaining solar systems resulted from "similar issues." SAC ¶ 26. Plaintiffs allege that "SunRay submitted warranty claims" at an unspecified later date. SAC ¶ 28.

Plaintiffs further allege that the modules were covered by a 25-year power output warranty, and a 10-year workmanship warranty. SAC ¶¶ 19-20. Plaintiffs attach as Exhibit B to the SAC a manufacturer's limited warranty ("Limited Warranty") under which they purport to assert claims. *Id.* ¶¶ 19-20, Ex. B. In the SAC, Plaintiffs allege that Trina Solar Co., Ltd. (TSL) issued the Limited Warranty. *Id.* Indeed, the first sentence of the Limited Warranty makes clear that it is issued only by TSL: "Changzhou Trina Solar Energy Co. Ltd [now known as Trina Solar Co. Ltd.] ('Trina Solar') hereby grants the following Limited Warranty to the first customer installing (for its own use) (the 'Buyer') . . . ." *Id.*, Ex. B at 1. The heading of the Limited Warranty provides, in bold and capitalized letters: "**CHANGZHOU TRINA SOLAR ENERGY CO., LTD LIMITED WARRANTY FOR TRINA SOLAR BRAND CRYSTALLINE SOLAR PHOTOVOLTAIC MODULES PS-M-0020 REV. M Nov. 29th, 2011**." *Id.*, Ex. B.

TUS is mentioned only once in the Limited Warranty, and only as a customer support provider for warranty claims. *Id.*, Ex. B at 4-6 ¶ 7 (stating "Buyer shall notify Trina Solar immediately after discovery of any claim under this Limited Warranty by letter, facsimile or e-mail to the customer support center in your region," and identifying TUS as the North America Customer Support provider). Paragraph 11 of the Limited Warranty further provides that there is "No other Warranty" for the products, and that "the Limited Warranty set forth herein is the only express

warranty (whether written or oral) by Trina Solar [defined as TSL] applicable to the Products and no one is authorized to restrict, expand or otherwise modify this Limited Warranty." *Id.*, Ex. B, at ¶ 11.

The Limited Warranty further provides that TSL has "sole discretion" to issue a partial refund, repair, or replace any defective modules with product that is new or remanufactured and equivalent to new. SAC ¶ 31, Ex. B, ¶ 5. This is a Buyer's "sole and exclusive remedy" under the Limited Warranty. *Id.* Moreover, the Limited Warranty expressly places all "costs and expenses for [product] removal, installation, or reinstallation" solely with the Buyer. SAC, Ex. B ¶ 5(a)(iii). The Limited Warranty further provides that "[a]ll other claims under this Limited Warranty against Trina Solar shall be excluded," and expressly disclaims any "special incidental or consequential damages (including loss of profits, harm to goodwill or business reputation, or delay damages) whether such claims are based in contract, warranty, negligence, or strict tort." *Id.* ¶ 5(c). The Limited Warranty's disclaimer "applies to the extent permissible by law, and even if the remedies set forth below herein are deemed to have failed of their essential purpose." *Id.*

As Plaintiffs admit in the SAC, they rejected TSL's attempts to provide replacement modules or a partial refund under terms of the Limited Warranty, and now seek damages to which they are not entitled. SAC ¶¶ 32-39. As the sole reason for rejecting replacement modules, Plaintiffs claim that it would cost them money to deinstall the original modules and install the replacement modules and that the partial refund offered under the Limited Warranty is not enough. SAC ¶¶ 33-34.

Specifically, notwithstanding the Limited Warranty's clear bar on such damages, Plaintiffs allege that they "have sustained a total loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules." SAC ¶ 57. For each of the claims for breach of warranty, breach of the covenant of good faith, and negligence, Plaintiffs seek the same judgment against both Defendants, including a finding that "Defendants have breached a contract," damages of $1.6 million "in relation to this

breach," damages for "costs expended to contractors for the Modules," and damages for "costs for redesigning the existing racking to accommodate replacement modules." SAC at 13, 14, 17. Plaintiffs do not allege any damages resulting from injuries to persons or other property, and they seek only consequential economic losses. *See* SAC at 13, 14, 17, 19.

## ARGUMENT

## I.   THE COURT SHOULD GRANT TRINA LTD.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(5).

### A.   LEGAL STANDARD

Proper service of process is a "prerequisite[ ]" to a court's "exercise of in personam jurisdiction." *Omni Cap. Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 98, (1987); *see also Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 391-92 (D.N.J. 2019). "Courts cannot exercise jurisdiction over a party that has not been properly served in conformity with Rule 4 of the Federal Rules of Civil Procedure." *Reddy v. MedQuist, Inc.*, No. 06-4410, 2009 WL 2413673, at *2 (D.N.J. Aug., 4 2009). The burden of proof of service lies on "the party asserting the validity of service." *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993).

Federal Rule of Civil Procedure 4(h)(1)(B) provides, in relevant part, that foreign corporations may be served through "an officer, a managing or general agent, or any other agent authorized by appointment or by law to *receive service of process*." (emphasis added). Rule 4(h)(2) provides that a foreign corporation may be served "at a place not within any judicial district of the United States" according to Rule 4(f). Rule 4(f), in turn, provides that parties may serve a foreign individual as follows:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; . . .

> (3) by other means not prohibited by international agreement, as the court orders.

"China is a signatory to the Hague Convention." *RJ Brands, LLC v. Hangdong Trading Ltd.*, No. 21-CV-04747-JXN-ESK, 2021 WL 3206813, at *3 (D.N.J. July 28, 2021); *see also* Request for

Judicial Notice ¶ 1, Ex. 1. Accordingly, the Hague Convention is generally "the supreme law of the land . . . overrid[ing] state methods of service that are objectionable to the nation in which the process is served." *Gapanovich v. Komori Corp.*, 605 A.2d 1120, 1122 (N.J. Super. Ct. App. Div. 1992). "However, if local law permits local service obviating the need for foreign service, the Hague Convention is inapplicable." *Id.* at 1123.

As relevant here, New Jersey's local rules mimic Federal Rule of Civil Procedure 4(h)(1)(B), and provide that a foreign corporation may be properly served by "serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law *to receive service of process on behalf of the corporation*." N.J. Ct. R. 4:4-4(a)(6) (emphasis added).

As discussed below, Plaintiffs failed to properly serve TSL under either Federal Rule of Civil Procedure 4 or New Jersey Court Rule 4:4-4(a)(6).

## B.    PLAINTIFFS FAIL TO PLEAD, MUCH LESS PROVE, THAT TUS IS EITHER TSL'S ALTER EGO OR AGENT FOR SERVICE OF PROCESS.

Plaintiffs made no effort to serve TSL under the Hague Convention or otherwise comply with the Federal or Local Rules to effectuate service of process on TSL, a foreign entity. Plaintiffs instead made an ill-conceived effort to serve TSL through TUS's registered agent in the United States. This will not do.

Generally "[s]ervice of a summons and complaint upon a subsidiary is not sufficient service on a parent corporation." *Charles Gendler & Co. v. Nippon Elec. Co.*, 488 A.2d 1091, 1098 (N.J. Super. Ct. App. Div. 1985), *rev'd on other grounds sub nom. Charles Gendler & Co. v. Telecom Equip. Corp.,* 508 A.2d 1127 (N.J. 1986). "Under New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent . . . [if and] only if the subsidiary is an alter ego or agent of the parent." *Mills*, 406 F. Supp. 3d at 393 (quoting *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

Courts will deem a subsidiary to be the alter ego of its parent company only if plaintiff demonstrates that the parent "so dominated the subsidiary that it had no separate existence but was

merely a conduit for the parent." *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983); *Pat. Incentives, Inc. v. Seiko Epson Corp.*, No. CIV.A. 88-1407, 1988 WL 92460, at *6 (D.N.J. Sept. 6, 1988). "[E]ven the exercise of significant control by the parent over the subsidiary will not suffice to pierce the corporate veil." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988). Rather, the parent must have "abused the privilege of incorporation by using the subsidiary to perpetuate a fraud or injustice, or otherwise to circumvent the law." *Id.*

To determine whether a subsidiary is the parent's managing agent, such that it is subject to service of process for the parent, courts consider four factors: "(1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; . . . (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Mills*, 406 F. Supp. 3d at 393 (quoting *Dewey*, 558 F. Supp. 2d at 513).

Case law is instructive. In *Crespi*, the trial judge committed reversible error in ruling that service on a U.S. subsidiary constituted service on its foreign parent entity. 2022 WL 815429, at *3–4. The trial court held that the subsidiary was the parent's alter ego and agent, because the subsidiary "served as a conduit for the activities of [the parent's] major products within the [United States]." *Id.* The appellate court reversed, finding the trial court's ruling "devoid of any finding that [the parent] 'so dominated' [the subsidiary] that the [subsidiary] had 'no separate existence.'" *Id.* The court further reasoned that the "judge's description of [the subsidiary] matches that of practically any corporate subsidiary, but simply being a subsidiary is not enough to establish proper service on the parent." *Id.* (citing authorities).

Likewise, in *Cephalon, Inc. v. Sun Pharm. Indus., Inc.*, the court denied plaintiff's attempt to bypass the Hague Convention by serving an Indian parent company through a U.S. subsidiary, and rejected plaintiff's argument that there were "blurred distinctions" between the entities that

allowed service on the U.S. subsidiary. No. CIV.A. 11-5474, 2011 WL 6130416, at *2-3 (D.N.J. Dec. 7, 2011). The plaintiff was required to serve the Indian parent company in accordance with the Hague Convention. *Id.* at *3 (quoting briefs); *see also Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*, No. CV-2:11-0403-SRC-JSA, 2022 WL 683084, at *4-5 (D.N.J. Mar. 8, 2022) (holding parent's and subsidiary's use of same website, customer-service email address, consolidated financials, trademark logos, and domain name merely reflected standard collaboration between affiliated entities, rather than abuse of corporate form warranting piercing the corporate veil).

Here, Plaintiffs have made no effort to plead *any* facts, much less prove, that TUS is TSL's alter ego and managing agent for service of process. Nor could they. TSL is a Chinese entity, organized under Chinese laws, and maintains its business in China. TSL does not market or sell solar modules in the United States; nor does it have any offices, banks, or employees based in the United States. TSL is not registered to do business in the United States, and it does not have any agents for service of process in the United States.

Nor are TUS or CT Corporation Systems (TUS's registered agent) authorized to accept service for TSL. TUS is a separate entity from TSL. TUS enters its own contracts, and markets and distributes solar modules in the United States on its own behalf. TUS is a wholly owned subsidiary of Trina Solar (U.S.) Holding, Inc., which, in turn, is wholly owned by Trina Switzerland. TSL and TUS are independent entities, each is adequately capitalized, observes corporate formalities, and maintains separate bank accounts and records. Neither TSL nor TUS control each other's day-to-day business operations.

At bottom, Plaintiff utterly fails to allege any facts suggesting that TUS is a managing agent or authorized to accept service of process for TSL. Plaintiffs thus fail to meet their burden of proof. *Grand Entm't Group*, 988 F.2d at 488 (burden of proof of service lies with "the party asserting the validity of service"). Accordingly, the Court should grant the Motion.[1]

---

[1] In the SAC, to support that they should just be able to serve TSL through TUS, Plaintiffs cite unrelated cases involving different facts and parties from the claims they assert here. SAC at 3, n.1. It should be clear that whether or not TSL

10

## II.    THE SAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

### A.    LEGAL STANDARD.

Even if the Plaintiffs could properly serve TSL, the SAC fails to state a claim for which relief may be granted. In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court will "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A "complaint must do more than allege the plaintiff's entitlement to relief." *Id.* Plaintiffs' "obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). After stripping away the legal conclusions, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.    PLAINTIFFS IMPROPERLY RELY ON "GROUP PLEADING" TO ASSERT CLAIMS AGAINST DEFENDANTS.

While Plaintiffs correctly identify TSL and TUS as two distinct entities (SAC ¶¶ 10-11), Plaintiffs indiscriminately lump both Defendants together and plead virtually every allegation and the first three causes of action for breach of warranty, negligence, and breach of the duty of good faith and fair dealing against them collectively. *See generally* SAC. This will not do. "[C]ourts in this District generally do not allow 'group pleading,' because the complaint must allege 'sufficient facts to identify each defendant's role.'" *MHA, LLC*, 539 F. Supp. 3d at 365 (quoting *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020)). Group pleadings thus fail to meet the standards required under Federal Rule of Civil Procedure 8, which

---

opted move to dismiss in another case against another entity has no bearing on the Motion here, and its rationale is protected by the attorney-client privilege.

requires fair notice of the claims against *each* defendant. *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386 (D.N.J. Aug. 27, 2019).

In *MHA, LLC*, for example, the court held that "claims against [a] parent corporation (Amerigroup Corp.) should be dismissed because MHA only dealt and contracted with the subsidiary entity (Amerigroup New Jersey, Inc.)." 539 F. Supp. 3d at 364-65. Although the defendants were two separate affiliated entities, the "Complaint lump[ed] Amerigroup Corp. and Amerigroup New Jersey together and attribute[d] all the conduct alleged in the Complaint to them both." *Id.*

The court found that such pleadings are deficient for at least two reasons. "For one, separate corporate forms must be respected and will not be disregarded to impose liability on an entity for the acts of a related entity except in limited circumstances." *Id.* "Second, the Rule 12(b)(6) standard requires the plaintiff to plausibly allege that each 'defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Putting those principles together, courts dismiss claims alleged indiscriminately against multiple corporate defendants without factual allegations warranting an inference that each could be liable." *Id.* (citing *Glob. Fresh Produce, Inc. v. Epicure Trading, Inc.*, Civ. No. 11-01270, 2012 WL 924326, at *6 (D.N.J. Mar. 16, 2012)). Thus, in *MHA, LLC*, because only one entity, the subsidiary, had contracted with plaintiff, the complaint failed to "allege any facts to permit an inference that Amerigroup Corp. should equally be liable" for its subsidiary's contractual or quasi-contractual relationships. *Id.*

The same is true here. In the SAC, Plaintiffs fail to distinguish between TUS and TSL or their individual acts that purportedly give rise to claims. *E.g.*, SAC ¶ 16 ("This case is brought by virtue of *Defendants'* failure to fulfill its [sic] warranty obligations.'""); *id.* ¶ 26 ("SunRay discovered the cause of the rapid decline sin power to the Initial Systems were defects in the Modules that were purchased from *Defendants* . . . ."); *id.* ¶ 29 ("*Defendants* subjected SunRay to an overly detailed investigation into its warranty claims."); *id.* ¶¶ 58-72 (referring repeatedly to "*Defendants*" purported actions rather than TSL's or TUS's specific acts) (emphasis added). This deficiency plagues all of Plaintiffs' causes of action. *Id.* (alleging the same causes of action and prayer for relief

12

wholesale against both "Defendants").

For this reason alone, Plaintiffs fail to state a claim against either Defendant. *Sheeran v. Blyth Shipholding S.A.*, No. CV 14-5482 (JBS/AMD), 2015 WL 9048979, at *5 (D.N.J. Dec. 16, 2015) (dismissing complaint based on group pleadings because "it is not sufficient to fail to identify each defendant's role and function or say that each of the defendants is responsible for everything").

### C. PLAINTIFFS' FAIL TO STATE A CLAIM FOR NEGLIGENCE, BECAUSE THEY SEEK ONLY ECONOMIC LOSSES.

Plaintiffs' negligence claims fare no better and are barred by the economic loss rule. It is well-settled that "a seller's duty of care generally stops short of creating a right in a commercial buyer to recover a purely economic loss." *Spring Motors Distributors, Inc.*, 489 A.2d at 663. Rather, "economic losses inflicted by a seller of goods are better resolved under principles of contract law." *Id.* Thus, "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., *but not in strict liability or negligence*." *Id.* (emphasis added); *id.* at 673 (recognizing the U.C.C. as the "exclusive source" for "damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself") (citation and internal quotation marks omitted).

"Economic loss can take the form of either direct or consequential damages." *Id.* A "direct economic loss includes the loss of the benefit of the bargain, i.e., the difference between the value of the product as represented and its value in its defective condition." *Id.* "Consequential economic loss includes such indirect losses as lost profits." *Id.* Economic losses also include "actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits" as well as "the diminution of value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264 (N.J. 1997). Thus, in *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, the court dismissed negligence claims under the economic loss rule where plaintiffs alleged damages in the form of "repeated delays and lost production time, costly

replacement, and a repeated inability to meet delivery schedules and an attendant loss of customers." 71 F. Supp. 3d 492, 507 (D.N.J. 2014) (quoting complaint).

Here, all of Plaintiffs' alleged damages constitute economic losses related to the purportedly defective solar modules and "solar systems," rather than any injury to persons or "other property." Tellingly, Plaintiffs simply incorporate by reference their prior allegations supporting their breach of warranty claims. SAC ¶ 67. Plaintiffs then allege that both Defendants had "a duty to provide functional solar panel systems," and the solar panels "did not work as intended"—issues that are squarely addressed in TSL's Limited Warranty. SAC ¶¶ 68-69. Plaintiffs then claim that they experienced a "loss of the Modules, a loss of significant revenue, and must expend significant costs to redesign the existing racking to accommodate any replacement modules." SAC ¶¶ 72.

Plaintiffs make no effort to disguise their negligence claims as anything other than a recast claim for breach of warranty. For example, to support their *negligence* claims, Plaintiffs request a judgment that "Defendants have *breached a contract* with Plaintiffs," and seek damages "*in relation to this breach*" in the amount of costs to pay "contractors for the Modules," and "costs for redesigning the existing racking." SAC at 14 (emphasis added). These are precisely the same remedies Plaintiffs seek for their breach of warranty claims, and constitute economic losses that Plaintiffs cannot recover in tort as a matter of law.

In the SAC, Plaintiffs now allege for the first time that the "declines in power to the Systems caused by the defects in the Modules resulted in physical damage to products other than the Modules, including corrosion, loss of function, and damage to the Systems' inverters, and racking system." SAC ¶ 27. However, in their cause of action for negligence, Plaintiffs still seek only economic damages for the solar modules and racking redesign, rather than purported damage to "other property." SAC at 14.

Moreover, notwithstanding Plaintiff's nebulous claims of damage to other parts of their solar systems, the economic loss rule still bars Plaintiffs' negligence claims under the "integrated product doctrine." That doctrine expands the economic loss rule to "preclud[e] strict liability and negligence

14

remedies when a defective product is incorporated into another product that is then damaged." *Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, No. CIV.A. 11-720 JAP, 2011 WL 6756973, at *4 (D.N.J. Dec. 23, 2011). Courts limit such claims to the Commercial Code, particularly where, as here, the injuries are commercial and the parties are sophisticated:

> Although the economic loss rule generally does not apply where other property damage is proven, courts have tended to focus on the circumstances and context giving rise to the injury in determining whether alleged losses qualify as "other property" damage. Specifically, in the context of a commercial transaction between sophisticated parties, injury to other property is not actionable in tort if the injury was or should have been reasonably contemplated by the parties to the contract. In such cases the failure of the product to perform as expected will necessarily cause damage to other property, rendering the other property damage inseparable from the defect in the product itself.

*Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 760–763 (D.N.J. 2008), *aff'd*, 594 F.3d 238 (3d Cir. 2010) (quoting *Palmetto Linen Service, Inc. v. U.N.X., Inc.*, 205 F.3d 126, 129-30 (4th Cir. 2000)).

Thus, in *Levari Enterprises, LLC v. Kenworth Truck Co., Paccar Inc.*, plaintiff brought negligence claims for damage to their trucks when suspension systems failed in the trucks. No. 1:20-CV-06210-NLH-AMD, 2022 WL 4445404, at *3 (D.N.J. Sept. 23, 2022). The court had little trouble holding that the suspension systems were products integrated into the trucks themselves, such that the trucks were not "other property" that "would allow for the exception of the economic loss doctrine." *Id.* The truck owners were thus confined to claims under the Commercial Code rather than tort law. *Id.*

The integrated product doctrine bars Plaintiffs' negligence claims. Plaintiffs allege that "the Modules were a *significant part of the Systems* as the primary components of a solar array system are the *modules, inverters, and racking system*." SAC ¶ 22 (emphasis added). Plaintiffs also allege that Defendants had a "duty to provide functional *solar panel system* to Plaintiffs." SAC ¶ 68

15

(emphasis added). And again, Plaintiffs do not seek damages based on any alleged harm caused to other solar system components. But even if they did, the alleged damage to other parts of the solar system, including the modules, inverters, and racking, remain subject to the economic loss rule for this separate reason.

In short, Plaintiffs' negligence claims are hopelessly defective. Neither the purported "duty" to provide operable solar modules, nor the alleged economic losses Plaintiffs seek, plausibly supports a negligence claim. As the New Jersey Supreme Court has repeatedly held, Plaintiffs' "tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive." *E.g.*, *Alloway*, 695 A.2d at 275. The Court should so hold and should dismiss Plaintiffs' negligence claims with prejudice.

### D.    PLAINTIFFS CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING.

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing suffer from at least two fatal afflictions: First, there is no contract between any Plaintiff and TSL (or TUS), which means that there is no attendant implied duty of good faith and fair dealing. Second, Plaintiffs' implied covenant claims are entirely duplicative of the breach of warranty claims, which separately requires dismissal. Each of these defects is addressed in turn below.

### 1.    Plaintiffs Did Not Contract With TUS Or TSL.

"The implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*." *Power v. Bayonne Bd. of Educ.*, No. 16-5091 (KM), 2017 WL 1536221, at *8 (D.N.J. Apr. 26, 2017) (emphasis in original). Thus, absent a direct contract between Plaintiffs and Defendants, "there can be no breach of an implied covenant of good faith and fair dealing." *Id.* (quoting *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990)). Likewise, without a direct sales contract between plaintiffs and defendants, a standalone express warranty does not give rise to an implied duty of good faith and fair dealing. *George*, 2021 WL 5195788, at *9.

In *George*, for example, plaintiff alleged that an auto manufacturer violated the implied

covenant attending the manufacturer's warranty, which was provided to plaintiff at the point of sale by the manufacturer's affiliate and authorized dealer. *Id.* The court dismissed plaintiff's implied covenant claims because "the Complaint contains no allegations from which the Court can infer that Defendant, as the manufacturer, was a party to the sale and lease agreements between Plaintiffs and the authorized dealers." *Id.*

Similarly, in *Greene v. BMW of North America*, the court dismissed claims against BMW, because plaintiff had contracted solely with BMW's affiliated dealership, Paul Miller BMW, "and Paul Miller BMW assigned the lease to BMW Financial, not BMW." No. CIV. 2:11-04220 WJM, 2013 WL 5287314, at *4 (D.N.J. Sept. 17, 2013). Accordingly, "[b]ecause BMW is a not party to Greene's lease, Greene has not stated a claim for breach of contract. For the same reason, Greene has not stated a claim for breach of the implied covenant of good faith and fair dealing." *Id.*

The principles underlying *George* and *Greene* apply with even greater force here. As Plaintiffs admit, they did not contract with *either* TUS, the distributor, or TSL, the manufacturer. This is clear from Plaintiffs' own allegations. Rather, Plaintiffs allege that a non-party, G&S Solar Installers, LLC, purchased the solar modules from TUS. SAC ¶ 18 & Ex. A. Plaintiffs attach to the SAC a sales order between G&S and TUS for the purchase of product. SAC, Ex. A. Plaintiffs also attach an invoice between G&S and yet another non-party, Hudson Renewables LLC. *Id.* Critically, none of these agreements are between any Plaintiff and any Defendant; nor do the agreements so much as reference any Plaintiff. Plaintiffs' claims under the implied covenant thus fail, because they do not (and cannot) allege that any Plaintiff contracted with TLS (or TUS).

### 2.    Plaintiffs' Claims for Breach of the Implied Covenant Duplicate Their Claims for Breach of Warranty.

A "[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Hahn v. OnBoard LLC,* No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov.16, 2009); *Wade v. Kessler Inst.,* 798 A.2d 1251, 1262 (N.J. 2002). Nor may a plaintiff "maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an

express contract or the cause of action arises out of the same conduct underlying the breach of contract." *Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-10733, 2019 WL 1320299, at *8 (D.N.J. Mar. 22, 2019) (quoting *Elite Pers. Inc. v. PeopleLink, LLC*, No. 15-1173, 2015 WL 3409475, at *3 (D.N.J. May 27, 2015)). The same rule holds true for claims for breach of the implied covenant of good faith that duplicate claims for breach of warranty. *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. CIV. 14-04209 WHW, 2015 WL 1119475, at *12–13 (D.N.J. Mar. 11, 2015).

In *T.J. McDermott Transportation Co.*, for example, plaintiffs alleged that defendants breached the covenant of good faith and fair dealing by "fail[ing] to repair defects in Plaintiff's tractors," concealing problems with the tractors, and replacing bad parts with similar bad parts. 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015). The court dismissed the implied covenant claims, because "Plaintiff does not allege any basis for breach of the implied covenant of good faith and fair dealing that is different from the bases for its breach of express warranty claims." *Id.* ("Because Plaintiff's breach of implied covenant claims are duplicative of their breach of express warranty claims, allowing them to move forward would improperly provide Plaintiffs with two paths to recovery for breach of warranty.").

Likewise, in *George*, the court dismissed plaintiffs' good faith claims because they were duplicative of the express warranty claims: "To the extent that Plaintiffs' argument is that the implied covenant is attached to or arises from Defendant's express warranty, such argument renders Plaintiffs' breach of the implied covenant claim duplicative of their breach of express warranty claim, as both claims are premised on Defendant's alleged failure to fully and properly repair the InControl Defect." *George*, 2021 WL 5195788, at *9; *see also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("Plaintiffs' good faith and fair dealing claim is based on precisely the same conduct alleged to support their other contract claims and fails for the same reasons [and] Plaintiffs fail to allege any contractual relationship with Daimler.").

So, too, here. To support their defective claim for breach of the implied covenant, Plaintiffs

simply incorporate by reference all of their allegations supporting their breach of warranty claims, as well as "Defendants' actions and inactions listed above." SAC ¶¶ 73. They also seek the same damages verbatim as their breach of warranty and negligence claims. *Compare* SAC at 13-14, *with* SAC at 17.

Plaintiffs' allegations that TSL's required proof of Plaintiffs' claims under the Limited Warranty, and that Defendants offered replacement modules that Defendants allege were not "equivalents" also fail to distinguish the claims from a *breach of warranty* claim. SAC ¶¶ 75-80. TSL's Limited Warranty both specifies a process through which Plaintiffs must submit claim, and sets forth TSL's options to provide a partial refund, replace the modules with "new or remanufactured equivalent," or repair the modules at its sole discretion. SAC ¶ 31, Ex. B at 4 ¶ 7 (specifying notice procedures and requiring "evidence of the claims and the serial numbers of the Product(s) at issue"). Plaintiffs cannot rest bad faith claims on conduct expressly governed by the terms of the Limited Warranty.

Plaintiffs' implied covenant claims are thus doomed because they are entirely duplicative of Plaintiffs' breach of warranty claims. The Court should so hold, and dismiss Plaintiffs' implied covenant claims for this separate reason.

### E.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR ATTORNEY'S FEES

Even if the Court does not dismiss Plaintiffs' SAC in its entirety, it should at a minimum dismiss Plaintiffs' claims for attorney's fees for each cause of action. "It is well-settled that New Jersey courts, long adhering to the so-called 'American Rule', do not generally award attorneys' fees to prevailing litigants." *Kousis v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 22-06530-KM-MAH, 2023 WL 6141237, at \*5 (D.N.J. Sept. 20, 2023). "Thus, counsel may be awarded fees only in certain circumstances; most commonly where expressly authorized by contract, rule or statute." *Id.* Courts in this district commonly dismiss claims for attorney's fees where a plaintiff fails to adequately allege any basis under which they are entitled to such fees. *See, e.g.*, *id.* (dismissing plaintiffs' request for attorney's fees where "[t]he source of plaintiffs' claimed entitlement to attorneys' fees [was]

unclear"); *Alpine E. Elec., LLC v. Mod. Grp. Ltd.*, No. 17-5726-FLW-DEA, 2018 WL 3159881, at *1 (D.N.J. Mar. 19, 2018) (dismissing plaintiff's request for attorney's fees when plaintiff failed to "assert any cause of action under which a statutory basis for attorneys' fees exists," "cite[] any court rule permitting the recovery of attorneys' fees," or "identif[y] any provision in the Contract authorizing an award of attorneys' fees"); *Johnson v. State Farm Fire & Cas. Co.*, No. 18-15209-RBK-KMW, 2019 WL 2285491, at *2 (D.N.J. May 29, 2019) (same).

Although Plaintiffs request attorney's fees in connection with all of their causes of action, (SAC at 13, 14, 17, 19), they provide no basis under which they are entitled to attorney's fees. Indeed, they have not identified any statute, rule, or contract provision that would entitle them to attorney's fees. Nor can they, as attorney's fees are not recoverable in connection with Plaintiffs' common law claims, and no contractual provision exists that would entitle them to attorney's fees. Accordingly, the Court should dismiss all Plaintiffs' requests for attorney's fees with prejudice.

## III.   LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.

Even if they had properly served TSL, Plaintiffs cannot alter the pleadings to change the basic facts that undermine their claims for negligence and breach of the implied covenant as to TSL. Plaintiffs cannot plead negligence claims, because they admit that all of their purported damages constitute economic losses, as opposed to injuries to persons or other property. *Rapid Models & Prototypes, Inc.*, 71 F. Supp. 3d at 507 (dismissing negligence claims *with prejudice* "[b]ecause Plaintiffs seeks to recover in tort for an allegedly defective product and their economic consequences, not for damage to persons or to other property"). Nor can Plaintiffs salvage their claims for breach of good faith and fair dealing. No amended pleading can change the fact that TSL did not contract with any Plaintiff, or that Plaintiffs' implied covenant claims wholly duplicate their breach of warranty claims. *Greene*, 2013 WL 5287314, at *4 (dismissing implied covenant claims with prejudice).

## CONCLUSION

For the foregoing reasons, TSL respectfully requests that this Court dismiss TSL pursuant to

Rule 12(b)(5) for failure to effectuate service of process. Alternatively, TSL requests that the Court dismiss Plaintiffs' SAC pursuant to Rule 12(b)(6), because Plaintiffs improperly rely on "group pleadings," which fails to provide notice of claims against each Defendant. Finally, Plaintiffs' claims for negligence and violation of the implied covenant of good faith and fair dealing should be dismissed with prejudice, and without leave to amend, because any amendment would be futile.

Dated: February 17, 2025

Respectfully submitted,

_____s/Ruofei Xiang_____

MAZZOLA LINDSTROM LLP
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
Ruofei Xiang
ruofei@mazzolalindstrom.com
347.280.8432

-and-

JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Richard J. Grabowski (admitted *pro hac vice*)
949.553.7514
rgrabowski@jonesday.com

555 South Flower Street, 50th Floor
Los Angeles, California 90071-2300
David A. Ciarlo (admitted *pro hac vice*)
213.243.2769
dciarlo@jonesday.com

100 High Street, 21st Floor
Boston, Massachusetts 02110-1781
Ryan D. Class (admitted *pro hac vice*)
617.449.6804
rclass@jonesday.com

*Attorneys for TRINA SOLAR (U.S.), INC. and TRINA SOLAR CO., LTD. f/k/a CHANGZHOU TRINA SOLAR ENERGY CO., LTD.*