**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LONGMEADOW ONE SOLAR LLC, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> TRINA SOLAR CO., LTD., *et al*, <br><br> Defendants. | Civil Action No. 24-03223 (GC) (JBD) <br><br> **OPINION** |

**CASTNER, District Judge**

 **THIS MATTER** comes before the Court upon Defendants Trina Solar Co., Ltd. (TSL) and Trina Solar (U.S.), Inc.'s (TUS) Motions to Dismiss Plaintiffs'[1] Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).[2]  (ECF Nos. 35 & 36.) Plaintiffs opposed, and Defendants replied (ECF Nos. 37, 39, 40.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motions are **GRANTED in part** and **DENIED in part**.

---

[1] Plaintiffs are Longmeadow One Solar LLC (Longmeadow 1), Longmeadow Two Solar LLC (Longmeadow 2), Bway Plymouth Solar LLC (Plymouth North), Bway DY HS Solar LLC (DY HS), Self Storage Solar 22 LLC (Self Storage 22), Self Storage Solar 24 LLC (Self Storage 24), SR Solar 1 LLC (SR 1), SR Solar 2 LLC (SR 2), and SR Solar 3 LLC (SR 3).  (*See generally* ECF No. 31.)

[2] TSL also moved to dismiss for insufficient service of process under Rule 12(b)(5), but this argument is moot in light of TSL subsequently agreeing to accept service.  (*See* ECF No. 40 at 6 n.1.)

I.    **BACKGROUND**

A.    **Factual Background[3]**

Plaintiffs are nine Delaware limited liability companies located in New Jersey and Massachusetts that own solar array systems, all of which are managed by SunRay Power LLC. (ECF No. 31 ¶¶ 1-9.)  Defendants TUS and TSL are involved in the manufacturing and sale of the solar modules at issue.[4]  (*Id*. ¶ 16.)  TSL is a foreign corporate entity based in Jiangsu Province, China, whereas TUS is based in Fremont, California.[5]  (*Id*. ¶¶ 10-11.)  While Defendants are related corporate entities, Plaintiffs have not determined the exact nature of their relationship.  (*See* ECF No. 37 at 14[6] ("Though the exact relationship between [TUS] and [TSL] is not easily ascertainable by Plaintiffs at this juncture, it can be explored in discovery.").)  Plaintiffs allege that TUS "acts on behalf of [TSL]" in handling warranty claims.  (ECF No. 31 ¶ 29.)

In April 2014 and March 2015, SunRay's contractor, G&S Solar Installers, LLC, procured solar modules for Plaintiffs from TUS for a total cost of $1,697,404.  (*Id*. ¶ 18.)  These modules were covered by a 25-year warranty against power loss exceeding certain levels, along with a ten-year warranty against "defects in design, material, workmanship or manufacture."  (*Id*. ¶¶ 19-20.)  The warranty was issued by TSL, but it required that any warranty claims be directed to TUS.

---

[3]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[4]    According to Plaintiffs, "modules" are a primary component of any solar array system. (ECF No. 31 ¶¶ 17, 22.)

[5]    The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

[6]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

(ECF No. 31 ¶ 21; *see also* ECF No. 31-2 at 6[7] (listing TUS as "North America Customer Support" for any warranty claims).)

On August 12, 2022, SunRay received an alert that production of power to one of Plaintiff's solar array systems rapidly declined. (ECF No. 31 ¶ 23.) From August 2022 to November 2024, SunRay received notifications that a total of eight more systems experienced similar power declines. (*Id.* ¶¶ 24-25.) After an investigation, SunRay discovered that the power declines were caused by defects in the modules, specifically "fine-type and linear-type cracking" caused by "(i) Backsheet Cracking; and (ii) Busbar Corrosion." (*Id.* ¶ 26.) These defects resulted in physical damage to other system components, including "corrosion, loss of function, and damage to the [s]ystems' inverters, and racking system." (*Id.* ¶ 27.)

Plaintiffs allege that Defendants subjected SunRay to "an overly detailed investigation into its warranty claims" that "caused an unreasonable delay and expense in the disposition of [the] claims" including requiring "hundreds of unnecessary photographs." (*Id.* ¶¶ 29-30.) Pursuant to TSL's warranty, Plaintiffs submitted nine claims to TUS. (*Id.* ¶ 28.) Under the warranty terms, TSL was obligated to elect one of three remedies: (1) refund the historical purchase price, annually reduced by a linear depreciation; (2) repair the defective products at no charge; or (3) replace the defective products "by a new or remanufactured equivalent at no charge." (*Id.* ¶ 31; *see also* ECF No. 31-2 at 4.) Under the terms of the warranty, TSL has the "sole discretion" to select a remedy. (ECF No. 31 ¶ 31.) The warranty disclaims that "[t]he costs and expenses for the[] removal,

---

[7]     The warranty is attached as an exhibit to the SAC, (*see* ECF No. 31-2), and therefore may properly be considered by the Court. *See Colony Ins. Co. v. Aspen Specialty Ins. Co.*, Civ. No. 20-09446, 2021 WL 1589355, at *3 (D.N.J. Apr. 23, 2021) ("Courts are permitted to consider exhibits attached to a complaint when deciding a motion to dismiss.") (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

installation or reinstallation [of replacement or repaired products] shall remain with [Plaintiffs]." (ECF No. 31-2 at 4.)

Plaintiffs allege that after significant delay, Defendants responded to Plaintiffs' warranty claims on June 19, 2023, and proposed to replace the faulty modules with DD09M5C modules or 410W DE15M(II) modules.  (ECF No. 31 ¶ 32.)  Plaintiffs contend that Defendants failed to indicate that they were making a remedy election pursuant to the terms of the warranty in their response.  (*Id*.)  On July 11, 2023, SunRay advised Defendants that neither proposed replacement constituted a "new or remanufactured equivalent" of the original modules.  (*Id*. ¶ 33.)  The DD09M5C module, Plaintiffs allege, was "completely different" and "incompatible with the existing system," requiring "complete reconstruction of the system" at an estimated cost of $1,049,887 for one system alone.  (*Id*. ¶ 33; *see also* ECF No. 31-4 (engineering quote for estimated cost of DY HS module replacement).)  Additionally, the DE15M(II) module would require "extensive work to the racking system" with estimated costs of up to $250,000, with added costs for electrical permitting and component replacement.  (ECF No. 31 ¶ 34.)

On July 31, 2023, SunRay sent a letter to Defendants, stating that the proposed replacements were inadequate to resolve the claims, and further demanding that Defendants provide alternative options.  (*Id*. ¶ 35.)  On August 14, 2023, Defendants responded that the proposed replacements were sufficient to satisfy the warranty's "replace[ment] [of] the defective Product(s)" remedy.  (*Id*. ¶ 36; ECF No. 31-6 at 2.)  Defendants also noted that they "offered an alternate remedy refund, which [Plaintiffs] rejected."  (ECF No. 31-6 at 2.)  On August 23, 2023, SunRay sent a letter to Defendants disputing Defendant's determination and reiterating that the modules were not equivalent and that cash compensation was inadequate.  (ECF No. 31 ¶ 37.)

4

Plaintiffs allege that Defendants persisted in offering the incompatible DD09M5C module, despite knowing it was "incompatible and non-equivalent." (*Id*. ¶ 39.)

Additionally, Plaintiffs allege that they inquired about the repair option "early in the claims process but in late May 2023," David Rowland, TUS's Technical Service Manager for North America, "represented that the modules could not be repaired." (*Id*. ¶ 43.) Plaintiffs claim that they relied on this representation and "delayed . . . seeking a vendor to . . . address this issue for more than thirteen months." (*Id*. ¶ 44.) Plaintiffs are currently exploring completing the repairs themselves, contending that if they move forward, Defendants "will be responsible for the full cost of all repair work done. . . ." (*Id*. ¶ 45.)

Plaintiffs state that because of the defective modules and Defendants' failure to perform under the warranty, Plaintiffs have experienced continuous revenue losses for over two years. (*Id*. ¶¶ 47-49.) The solar array systems, Plaintiffs allege, "do not fully function, do not fully generate power" and "continue to operate far below the expected production." (*Id*. ¶¶ 47, 49.) Nor have Defendants presented Plaintiffs with a "a workable solution." (*Id*. ¶ 56.) Plaintiffs allege that this has left them in the position of having to expend "significant costs to redesign the existing racking to accommodate any replacement modules." (*Id*. ¶ 57)

### B.    Procedural Background

On August 11, 2023, Plaintiffs filed their initial Complaint in the Superior Court of New Jersey, Law Division, Mercer County. (ECF No. 1-1.) On February 14, 2024, prior to service of the Complaint, Plaintiffs filed a First Amended Complaint (FAC) in state court. (ECF No. 1-2.) Defendants thereafter removed the matter to this Court. (ECF No. 1.) Following an unsuccessful mediation, the parties stipulated to Plaintiffs filing the SAC. (ECF Nos. 26, 30.) On January 6, 2025, Plaintiffs filed their SAC, which is now the operative pleading. (ECF No. 31.) In the four-count SAC, Plaintiffs assert three claims against both Defendants: breach of warranty (Count One);

negligence (Count Two); and breach of good faith and fair dealing (Count Three).  Plaintiffs also bring a claim for negligent misrepresentation against TUS (Count Four).  (*Id.* ¶¶ 58-91.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  A court may also consider any document "integral to or explicitly

relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. Rule 8

Rule 8(a) does not require a complaint to contain detailed factual allegations. Still, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("Rule 8 requires a 'showing,' rather than a blanket assertion, of entitlement to relief." (citation and some quotation marks omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see, e.g.*, *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Though "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. <u>DISCUSSION</u>[8]

### A. Group Pleading

Defendants argue that the SAC should be dismissed because the allegations constitute impermissible "group pleading," and fail to place Defendants on notice of the claims against them.

---

[8]    The parties do not appear to dispute that New Jersey law applies. The parties rely almost exclusively on New Jersey law in their briefing, and no party argues that another state's law should apply. (*See* ECF Nos. 35, 36, 37, 39, 40.) Accordingly, the Court applies New Jersey law to resolve the instant Motions. *See Boddie v. Comcast (CC) of Willow Grove*, Civ. No. 21-20740,

(ECF No. 35-1 at 12; ECF No. 36-1 at 16.)  Plaintiffs argue that although "the exact relationship between [TUS] and [TSL] is not easily ascertainable by Plaintiffs at this juncture, it can be explored in discovery."  (ECF No. 37 at 14.)  The Court agrees with Plaintiffs and declines to dismiss the SAC based on group pleading.

Under Rule 8, a complaint generally may not indiscriminately attribute wrongdoing to a group of defendants, "leaving [the defendants] to guess as to who allegedly did what[.]"  *Yu-Chin Chang v. Upright Fin. Corp.*, Civ. No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020).  Defendants argue that Plaintiffs "fail to distinguish between TUS and TSL or their individual acts that purportedly give rise to their claims."  (ECF No. 35-1 at 13; ECF No. 36-1 at 17.)  However, the SAC alleges that G&S bought modules from TUS, that these modules were covered by a warranty issued by TSL, and that the warranty required any claims to be directed to TUS.  (ECF No. 31 ¶ 18-21.)  Thus, Plaintiffs allege that TUS and TSL are both liable for the claims at issue here.  (*See id.* ¶ 29 ("Pursuant to the terms of [TSL's] warranty, [TUS] acts on behalf of [TSL] in handling the subject warranty claims.").)

Plaintiffs' allegations against "Trina" and "Defendants" are sufficient at the pleading stage when information about the precise role of each Defendant is in the exclusive control of Defendants.  *See Shapiro v. Aetna, Inc.*, Civ. No. 22-1958, 2023 WL 4348601, at *10 (D.N.J. June 5, 2023); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. No. 16-2765, 2017 WL 1902160, at *9-10 (D.N.J. May 8, 2017).  In fact, some form of group pleading may be necessary

_____

2023 WL 2158881, at *3 (D.N.J. Feb. 22, 2023) ("The parties have not raised any question as to choice of law.  Both [parties] rely on New Jersey law in their briefing, and thus seem to represent that New Jersey law applies."); *Hydropath USA, Inc. v. Hydropath Holdings, Ltd.*, Civ. No. 10-4563, 2013 WL 775725, at *3 (D.N.J. Feb. 27, 2013) ("Both parties cite exclusively to New Jersey law, and thus the Court will be guided by New Jersey law."); *Russo v. Thor Indus., Inc.*, Civ. No. 20-10062, 2020 WL 5868801, at *1 (D.N.J. Oct. 1, 2020) ("Because the parties base their arguments on New Jersey law, so shall this Court.").

in cases involving multiple corporate affiliates "whose processes are heavily intermingled." *Shapiro*, 2023 WL 4348601, at \*10.

At this stage of the litigation, Plaintiffs "cannot be expected to know the exact corporate structure and degree of each [d]efendant's involvement . . . prior to discovery." *In re Volkswagen*, 2017 WL 1902160, at \*9; *see also Kong v. Johnson & Johnson*, Civ. No. 23-3091, 2024 WL 1640996, at \*5 (D.N.J. Apr. 15, 2024) ("This type of group pleading is sufficient when a plaintiff has not yet had the benefit of discovery to parse out which corporate entity may be responsible for which behavior[.]").

Moreover, Plaintiffs do not allege that both Defendants are "responsible for everything," as Defendants argue. (ECF Nos. 35-1 at 13 & 36-1 at 18 (quoting *Sheeran v. Blyth Shipholding S.A.*, Civ. No. 14-5482, 2015 WL 9048979, at \*3 (D.N.J. Dec. 16, 2015).) Plaintiffs have alleged the ways in which Defendants were working together while noting that each Defendant's specific role will be further ascertained through discovery. (*See* ECF No. 37 at 14.) Therefore, drawing all reasonable inferences in Plaintiffs' favor, the Court finds that the SAC's allegations adequately put Defendants on notice of the claims against them. *See Shapiro*, 2023 WL 4348601, at \*10 (stating that "allegations that each defendant's role will be discerned through discovery . . . may be sufficient"); *see also Richardson v. EzriCare, LLC*, Civ. No. 23-03498, 2024 WL 4349687, at \*5 (D.N.J. Sept. 30, 2024) ("[T]he [c]omplaint, while not perfect, does not constitute a group pleading and provides [the defendant] fair notice of the claims against it.").

Accordingly, the Court will not dismiss Plaintiffs' claims as improperly pled under Rule 8.

## B.     Breach of Warranty (Count One)

Plaintiffs bring a breach of warranty claim based on allegations that the solar modules provided by TUS experienced a loss in power production, and that Defendants subsequently failed to perform under the warranty because they offered replacement modules that were not equivalent

to what was currently installed. (*See* ECF No. 31 ¶¶ 58-66.) TUS and TSL make separate arguments for dismissal. The Court will address each in turn.[9]

TUS argues that Plaintiffs' claim fails because TSL—not TUS—issued the warranty, and that "non-parties to a contract cannot be held liable for a breach of that agreement." (ECF No. 35-1 at 13 (quoting *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 882 (D.N.J. 2020).) In support, TUS cites three class actions involving automobile defects. (ECF No. 35-1 at 13-15 (citing *Bullard v. Jaguar Land Rover Auto. PLC*, Civ. No. 20-14464, 2023 WL 4841610 (D.N.J. July 28, 2023); *Powell*, 502 F. Supp. 3d 856; *Luppino v. Mercedes-Benz USA, LLC*, Civ. No. 09-5582, 2013 WL 6047556 (D.N.J. Nov. 12, 2013).) These cases all involve breach of warranty claims brought against both a U.S.-based distributor and a foreign manufacturer, even though the warranty was issued by the distributor alone. In each case, the court rejected an attempt to hold a foreign manufacturer liable for a warranty issued only by its affiliated American distributor. *See Bullard*, 2023 WL 4841610, at *7-8; *Powell*, 502 F. Supp. 3d at 882; *Luppino,* 2013 WL 6047556, at *6. These cases, TUS contends, are "on all fours" with the instant case, and therefore require dismissal of Plaintiffs' breach of warranty claim against TUS. (ECF No. 35-1 at 15.)

The Court disagrees that these cases are directly analogous to warrant dismissal based on the allegations in the SAC. The courts in *Bullard*, *Luppino*, and *Powell* dismissed the parent company defendants not only because the warranties were not issued by the parent companies, but

---

[9]    To state a claim for breach of warranty under New Jersey law, a plaintiff must show: "(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Because Defendants make no arguments as to whether the SAC successfully alleges each of these elements, the Court will not address it here. *Millner v. Bayada Nurses, Inc.*, Civ. No. 05-3164, 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2016) (stating that the Court is under no obligation to consider arguments not raised by the parties) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 441 (1990)).

also because the warranties themselves made no reference to the parent company, nor imposed any obligations on them.  *See Bullard*, 2023 WL 4841610, at *7-8; *Powell*, 502 F. Supp. 3d at 882; *Luppino,* 2013 WL 6047556, at *6.  Here, the warranty not only references TUS, but TUS is listed as the entity through which a buyer in North America could "notify [TSL]" in the case of a claim. (ECF No. 31-2 at 5-6.)  Put differently, the plain text of the warranty makes clear that TUS had an obligation, at the very least, to notify TSL when it received a warranty claim.

Additionally, both TUS and TSL argue that because it was G&S Solar Installers, a non-party, that purchased the solar modules—not Plaintiffs—there was no contract between Plaintiffs and Defendants, and therefore there can be no plausible breach of warranty claim.  (ECF No. 35-1 at 19-20; ECF No. 36-1 at 22.)  The Court disagrees.  Plaintiffs allege that G&S purchased the solar panels on Plaintiffs' behalf, and state that their breach of warranty claim relies in part on the existence of an agency relationship with G&S.  (ECF No. 31 ¶ 18.)  *See Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993) ("An agency relationship is created when one party consents to have another act on its behalf, with the principle controlling and directing the acts of the agent."). Accepting all the allegations as true, and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have pled sufficient facts demonstrating the plausibility of an agency relationship with G&S.  *See Jannarone v. Sunpower Corp*, Civ. No. 18-9612, 2019 WL 4058981 (D.N.J. Aug. 28, 2019) (denying motion to dismiss as to breach of warranty claim premised on an agency relationship between the defendant and a third party).

Defendants make no other arguments regarding the merits of Plaintiffs' breach of warranty claim.  Accordingly, the Court denies Defendants' Motions to Dismiss with respect to this claim.

### C.    Breach of Good Faith and Fair Dealing (Count Three)

Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing, alleging that Defendants subjected Plaintiffs to "an unnecessarily long claims process"

with a "potential resolution[ ] that [was] not viable for the Systems" and that they "attempted to rewrite the warranty's terms and wrongly exercise[e] discretion grant[ed] to them under the warranty" by offering modules that they underst[ood]were not equivalents, as required by the warranty. (ECF No. 31 ¶¶ 75-76.) Defendants argue that "a [p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." (ECF No. 35-1 at 20 & ECF No. 36-1 at 22 (both quoting *Hahn v. OnBoard LLC*, Civ. No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009).) The Court finds that dismissal is not appropriate at this early stage.

"Every contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). Under such a covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (internal quotation marks omitted). A breach of an implied covenant claim differs from a breach of contract claim; the former "arises when [a] party has acted consistent with the contract's literal terms, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Id.* (quoting *Bak–A–Lum Corp. of Am. v. Alcoa Bldg. Prods. Inc.*, 351 A.2d 349, 352 (N.J. 1976)). In other words, "in an implied-covenant case, a party has not violated a literal term of the agreement—which would give rise to a breach of contract claim—but has violated the spirit and purpose of the agreement." *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020); *see also Fields v. Thompson Printing Co.*, 363 F.3d 259, 271-72 (3d Cir. 2004) ("[W]here the terms of a contract are not specific, the implied covenant of good faith and fair dealing may fill in the gaps where necessary to give efficacy to the contract as written.

But where the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language.").

Defendants correctly assert that a plaintiff cannot bring an implied covenant of good faith and fair dealing claim alongside a breach of contract claim when "the two asserted breaches basically rest on the same conduct." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 389 (D.N.J. 2015) (quoting *Wade*, 798 N.J. at 1261); *see also Beaman v. Bank of Am., N.A.*, Civ. No. 21-2056, 2023 WL 4784254, at *16 (D.N.J. July 27, 2023) (dismissing the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing as duplicative of their breach of contract claims where the implied covenant claims were "alleged as breaches of the parties' express contract"). Defendants contend that both the breach of warranty and breach of good faith and fair dealing claims rely on allegations that Defendants subjected Plaintiffs to a lengthy warranty process, and that Defendants insisted that Plaintiffs accept modules that were not equivalents to what was already installed. (ECF No. 35-1 at 20; ECF No. 36-1 at 22.)

At this preliminary stage, the Court will not dismiss Plaintiffs' implied covenant of good faith and fair dealing claim as duplicative of their breach of warranty claim. When viewed in the light most favorable to Plaintiffs, their breach of the implied covenant of good faith and fair dealing claim plausibly alleges that Defendants unfairly exercised their discretion under the warranty by, for example, unreasonably delaying their response to Plaintiffs' claims. (*See* ECF No. 31 ¶ 46 ("[I]t has been over two years since SunRay first experienced a decline in power related to issues with the Modules as to the Initial Systems. This delay is directly attributable to Defendants' slow response to the claims process [and] failure to timely elect a remedy pursuant to the terms of the warranty in Trina's discretion[.]").) Indeed, "[a] breach of the implied covenant of good faith and fair dealing cause of action exists in part to 'rectify an unfair exercise of discretion regarding [a

party's] contract performance.'" *Barton v. RCI, LLC*, Civ. No. 10-3657, 2011 WL 3022238, at *7 (D.N.J. July 22, 2011) (quoting *Barrows v. Chase Manhattan Mort. Corp.*, 465 F.Supp.2d 347, 365 (D.N.J.2006)); *see also Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001) ("[A] party exercising its right to use discretion . . . under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.").

Here, even if Plaintiffs do not establish that Defendants violated an express term of the warranty (*e.g.*, by failing to offer Plaintiffs one of the three permissible resolutions under the terms of the warranty), Defendants may nevertheless be liable for breaching the implied covenant of good faith and fair dealing (*e.g.*, by taking too long to offer a remedy and by making the claims process unnecessarily difficult for Plaintiffs). Such alternative pleading is permissible. *See Com. Ins. Servs., Inc. v. Szczurek*, Civ. No. 05-3536, 2006 WL 8457151, at *6 (D.N.J. Jan. 6, 2006) (declining to dismiss breach of the implied covenant of good faith and fair dealing claim where "the facts alleged . . . could support either (or both) the claim for breach of contract or that for breach of the implied covenant of good faith and fair dealing").

Accordingly, Plaintiffs' claim for breach of good faith and fair dealing (Count Three) may proceed.

## D.    Tort Claims

Defendants argue that Plaintiffs' tort claims—for negligence (Count Two) and negligent misrepresentation (Count Four)—are barred by the economic loss doctrine. The Court agrees and will dismiss these claims.

"New Jersey's economic loss doctrine precludes tort liability when the relationship between the parties is based solely on a contract." *Kemp v. Est. of Brandau*, 2022 WL 1179741,

at *8 (N.J. Super. Ct. App. Div. Apr. 21, 2022).  The doctrine "functions to eliminate recovery on a contract claim in tort claim clothing."  *Id.* (quoting *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014)); *see also Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) ("[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").  Relevant here, the economic loss doctrine "bars tort claims for harm sustained to the product alone, as opposed to harm to persons or other property damage." *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010); *see also Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 270 (N.J. 1997) ("When the harm suffered is to the product itself, unaccompanied by personal injury or property damage, we concluded that principles of contract, rather than of tort law, were better suited to resolve the purchaser's claim.").

And even where damage extends beyond the product itself, recovery for such harm may be barred under the "integrated product doctrine," which is an expansion of the economic loss doctrine that "preclude[es] strict liability and negligence remedies when a defective product is incorporated into another product that is then damaged." *Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, Civ. No. 11-720, 2011 WL 6756973, at *4 (D.N.J. Dec. 23, 2011).  The integrated product doctrine has been applied to limit what may constitute "other property," under the economic loss doctrine, particularly in commercial transactions.  *See Int'l Flavors & Fragrances, Inc. v. McCormick & Co.*, 575 F. Supp. 2d 654, 661 (D.N.J. 2008) ("[I]n the context of a commercial transaction between sophisticated parties, injury to other property is not actionable in tort if the injury was or should have been reasonably contemplated by the parties to the contract." (quoting *Palmetto Linen Serv., Inc. v. U.N.X., Inc.*, 205 F.3d 126, 128-30 (4th Cir. 2000))).

### 1.    *Negligence (Count Two)*

"There are four elements to a New Jersey common law negligence claim: (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation, and (4) damages." *Stile v. United States*, Civ. No. 16-3832, 2019 WL 287072, at *7 (D.N.J. Jan. 22, 2019) (citing *Jersey Cent. Power & Light Co. v. Melar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013)). The crux of Plaintiffs' negligence claim is that "Defendants had a duty to provide functional solar panel systems to Plaintiffs" but "[t]he solar panel systems provided by Defendants did not work as intended due to a manufacturing or other defect that resulted in, among other problems, backsheet cracking." (ECF No. 31 ¶¶ 68-69.) Among other relief, Plaintiffs seek a "finding that Defendants have *breached a contract* with Plaintiffs" and "the entry of a judgment in the amount of $1,697,404, plus fees and costs expended to contractors for the [m]odules, and fees and costs for redesigning the existing racking of replacement modules." (*Id.* ¶ 72 (emphasis added).)

Defendants submit that Plaintiffs' negligence claim is barred by the economic loss doctrine because "all of Plaintiffs' alleged damages constitute economic losses related to the purportedly defective solar modules and 'solar systems,' rather than any injury to persons or 'other property.'" (ECF No. 36-1 at 19) (arguing that "[t]hese are precisely the same remedies Plaintiffs seek for their breach of warranty claims, and constitute economic losses that Plaintiffs cannot recover in tort as a matter of law"). Defendants further submit that Plaintiffs' "nebulous claims of damage to other parts of their solar systems" are barred by the integrated product doctrine (*Id.*; *see also* ECF No. 31 ¶ 27 (alleging that "[t]he declines in power to the [s]ystems caused by defects in the [m]odules resulted in physical damage to products other than the [m]odules, including corrosion, loss of function, and damage to the [s]ystems' inverters, and racking system").) Thus, Defendants assert that Plaintiffs' allegations that the defective modules were a "significant part of the [solar] [s]ystems" forecloses their claims. (ECF No. 36-1 at 20.)

In opposition, Plaintiffs argue that the economic loss doctrine does not bar their negligence claim because "the [m]odules did not work as intended and Plaintiffs' [s]ystems sustained actual physical damage as there was both fine-type and linear-type cracking in the [m]odules caused by (i) Backsheet Cracking; and (ii) Busbar Corrosion" and because "[p]hysical damage from corrosion extended beyond the defective modules and affected other areas of the [s]ystems." (ECF No. 37 at 22.) Plaintiffs do not address Defendants' argument that the only relief sought for the negligence claim is related to the defective modules themselves. Moreover, Plaintiffs ignore Defendants' arguments regarding the integrated product doctrine.

The Court is satisfied that the economic loss doctrine bars Plaintiffs' negligence claim. First, Plaintiffs cannot recover in tort for the damaged modules themselves or for consequential damages from those modules failing to perform. *See Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 150 (N.J. 2020) ("[U]nder the economic loss doctrine, . . . common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product.") (citation modified); *AgroLabs, Inc. v. Innovative Molding, Inc.*, Civ. No. 13-6169, 2014 WL 3535560, at *4 (D.N.J. July 16, 2014) ("Ample case law establishes that the economic loss doctrine also bars claims for indirect, consequential damages, such as lost profits and loss of customer goodwill."); *Duffy v. Stellantis*, Civ. No. 22-06038, 2023 WL 4601034, at *3 (D.N.J. July 18, 2023) ("Because [the p]laintiffs have alleged no harm other than economic loss that may be recovered under contract or, perhaps, warranty law, [the p]laintiffs' claim for gross negligence must be dismissed.").

Second, to the extent Plaintiffs allege harm to other parts of their systems, the Court finds that the integrated product doctrine applies because it is apparent from the SAC that the integration of Defendants' modules into Plaintiffs' system was foreseeable. (*See* ECF No. 31 ¶ 22 ("The

Modules were a significant part of the Systems as the primary components of a solar array system are the modules, inverters, and racking system.").) *See Adams Extract & Spice, LLC v. Van de Vries Spice Corp.*, Civ. No. 11-720, 2011 WL 6756973, at *5 (D.N.J. Dec. 23, 2011) (holding that the integrated product doctrine barred tort claim related to contaminated red pepper that was incorporated into various spices where "the potential for damage to spice blends that incorporate the contaminated red pepper was foreseeable by all parties to the transaction."). Put differently, Plaintiffs' systems are not "other property" which would fall outside of the scope of the economic loss doctrine. *See Int'l Flavors*, 575 F. Supp. 2d at 662 ("Several other courts have been faced with facts similar to those at bar, and each has concluded that the damage done to a final product by a defective component or ingredient does not constitute damage to property 'other than the product itself.'"). Indeed, such a finding is particularly appropriate here, where all parties are sophisticated commercial entities. *See Adams Extract & Spice*, 2011 WL 6756973, at *5 ("Where the damages occur 'at the core of a commercial transaction,' they are compensable only in contract. . . . This is because the parties take potential consequential damages into account when they negotiate prices, warranties, and other elements of a contract for the purchase of goods." (citing *Int'l Flavors*, 575 F.Supp.2d at 660)). Thus, to the extent Plaintiffs claim that the defective modules caused damage to their systems beyond the modules themselves, that harm is not redressable in tort.

Accordingly, Plaintiffs' negligence claim (Count Two) will be dismissed without prejudice.[10]

---

[10]    Plaintiffs also waived their right to contest the application of the integrated product doctrine by failing to address it in their opposition brief. *See Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 506 & n.8 (D.N.J. 2014) ("[The d]efendants raise the economic loss doctrine in their moving briefs, yet [the p]laintiffs fail to address the argument or demonstrate that

### 2. *Negligent Misrepresentation (Count Four Against TUS Only)*

"Under New Jersey law, to plead a claim of negligent misrepresentation, a plaintiff must allege '[a]n incorrect statement, negligently made and justifiably relied upon' and economic loss sustained as a consequence of that reliance." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505 (D.N.J. 2014) (internal citation and quotations omitted).  Plaintiffs contend that they "inquired with [TUS] about the repair option under the warranty early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for [TUS's] North America region, represented that the [m]odules installed could not be repaired."  (ECF No. 37 at 25.)  However, Plaintiffs argue that this was false because they have "identified and utilized a vendor whose business model is to repair the [m]odules."  (*Id.*)  Plaintiffs claim that they "reasonably relied on [TUS's] representation that the [m]odules were not repairable as [TUS] is the warranty servicer and, had Plaintiffs known that a repair of the [s]ystems was even plausible, they would have inquired further with [TUS] about accepting cash compensation and pursuing repairs utilizing that cash."  (*Id.* at 25-26.)

Plaintiffs' negligent misrepresentation claim also fails because "[t]he economic loss doctrine applies with equal force to misrepresentation claims." *Reiff v. GAF Materials Corp.*, Civ. No. 10-1142, 2010 WL 3081789, at *3 (E.D. Pa. Aug. 6, 2010) (citing *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 550-51 (D.N.J. 1998)).  Indeed, "a claim for negligent misrepresentation is barred where a plaintiff has not identified a duty owed independent of the contractual relationship." *Heyman v. Citimortgage, Inc.*, Civ. No. 14-1680, 2019 WL 2642655, at *31 (D.N.J. June 27, 2019).

---

their claims are not barred by this doctrine. . . .  Thus, on this basis alone the [c]ourt could accept [the d]efendants' argument and dismiss the negligent misrepresentation claim.").

TUS argues that Plaintiffs' negligent misrepresentation claim fails because Plaintiffs do not allege that TUS owed them a duty other than under the warranty. (*See* ECF No. 35-1 at 24 ("TUS's and TSL's only duty to Plaintiffs, if any, arises from the terms of the Limited Warranty issued by TSL.").) In opposition to TUS's assertion that the economic loss doctrine bars Plaintiffs' negligent misrepresentation claim, Plaintiffs solely incorporate their arguments in support of the viability of their negligence claim, (*see* ECF No. 37 at 26), which the Court previously rejected. Based on its review of the SAC, the Court can discern no allegation of any obligation owed by TUS to Plaintiffs other than those flowing from the contract. And Plaintiffs seek to recover based on conduct squarely addressed by the contract. (*See, e.g.*, ECF No. 31 ¶ 85 ("Plaintiffs inquired about the repair option [under the warranty] early in the claims process, but in late May of 2023, David Rowland, the Technical Service Manager for Trina U.S.'s North America region, represented that repairing the [m]odules was not feasible.").) For the same reasons as discussed above, the Court finds that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine. *See Smith v. Citimortgage, Inc.*, Civ. No. 15-7629, 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) ("[T]he [c]ourt agrees with [the d]efendant that [the p]laintiffs have alleged no independent duty of care separate and apart from the alleged contractual relationship. Therefore, the [c]ourt also dismisses [the p]laintiffs' negligent misrepresentation claim[.]"); *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, Civ. No. 17-2055, 2018 WL 2441768, at *8 (D.N.J. May 31, 2018) (dismissing negligent misrepresentation claim based on the economic loss doctrine where "the alleged misrepresentation [was] not extraneous to the [contract]; rather, [the p]laintiff specifically point[ed] to the [contracts] as forming the basis of its negligent misrepresentation claim").

Accordingly, Plaintiffs' claim for negligent misrepresentation against TUS (Count Four) will be dismissed without prejudice.[11]

## IV.    **CONCLUSION**

For the foregoing reasons, and other good cause shown, Defendants' Motions (ECF Nos. 35 & 36) are **GRANTED in part** and **DENIED in part**. Plaintiffs' claims for breach of warranty (Count One) and breach of good faith and fair dealing (Count Three) may proceed as to both Defendants. All other claims will be **DISMISSED** without prejudice. An appropriate Order follows.

Dated: August 28, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[11]    Since the Court dismisses Plaintiffs' negligent misrepresentation claim based on the economic loss doctrine, it does not reach the issue of whether Plaintiffs adequately plead a prima facie case of negligent misrepresentation. The Court also declines to strike Plaintiffs' request for attorneys' fees at this time. Defendants may reassert their arguments regarding attorneys' fees at the summary judgment stage. The Court questions, however, whether Plaintiffs' claims as currently pled would entitle them to attorneys' fees. *See First Atl. Fed. Credit Union v. Perez*, 918 A.2d 666, 672 (N.J. Super. Ct. App. Div. 2007) ("Our view is shared by the Third Circuit which concluded that under New Jersey law, attorney's fees are not recoverable for breach of UCC warranties.") (citing *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 (3d Cir.1990)).